UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL J. MOCKERIDGE and
SUSAN J. MOCKERIDGE,

                Plaintiffs,                        Case No. 1:21-cv-12896

v.                                          Honorable Thomas L. Ludington
                                              United States District Judge

ALCONA COUNTY, by its
BOARD OF COMMISSIONERS, CAROLYN
BRUMMUND, ADAM BREGE,
CALEDONIA TOWNSHIP,
DAN GAUTHIER, KENNETH GIBSON,
in his personal capacity, HARRY HARVEY,
in his individual and personal capacities,
KEITH KRENTZ, TERRY SMALL, DAVID
SCHMIDT, and WILLIAM THOMPSON,

                Defendants.

_____/

**OPINION AND ORDER (1) DENYING PLAINTIFFS' FIRST MOTION TO STRIKE, (2) GRANTING AND DENYING IN PART PLAINTIFFS' SECOND MOTION TO STRIKE, (3) DENYING DEFENDANT'S MOTION TO DISMISS, (4) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND (5) COMPELLING DISCLOSURE**

In September 2020, Plaintiffs Michael and Susan Mockeridge purchased approximately 40 acres of real estate in Caledonia Township, Alcona County. They intended to develop the property for "outdoor recreational pursuits" involving five "small off-side-fabricated cabins, i.e. being 200 square feet or less, from a producer of such specialized buildings."

This case arises from Plaintiffs' frustrations with completing the project. The immediate questions are framed by the parties' four motions. First, Plaintiffs contest various affirmative defenses under Federal Rule of Civil Procedure 12(f), some of which will be stricken. Second, Defendant Krentz challenges Plaintiffs' § 1983 conspiracy claim as not cognizable under § 1985. That argument is without merit. Third, Defendant Krentz challenges this Court's exercise of

supplemental jurisdiction over Plaintiffs' trespass claim. That challenge is also without merit. Finally, Plaintiffs seek a preliminary injunction under Michigan's Open Meetings Act to compel disclosure of meeting minutes taken during a closed session of the Alcona County Board of Commissioners on August 11, 2021, which will be granted.

## I.

Plaintiffs allege that, before and after they purchased the 40 acres of land ("Skylar Trail"), Building Inspector Harry Harvey explained during "several conversations" that Alcona County does not require building permits for buildings that are 200 square feet or less in size—which is consistent with Rule 105.2(a)(i) of the Michigan Residential Building Code. ECF No. 1 at PageID.4.

Armed with their understanding of Defendant Harvey's legal clearance, in October 2020, Plaintiffs ordered five cabins customized to the information that Defendant Harvey provided. *Id.* at PageID.5. Six months later, Plaintiffs installed the foundations for the custom cabins, which arrived the next month. *Id.*

Plaintiffs contend that neighbors who owned the property adjacent to Skylar Trail "submitted a laundry list of frivolous and patently absurd complaints" to Caledonia Township; Plaintiffs believe the complaints originated from unsuccessful attempts to purchase Skylar Trail. *Id.* Caledonia Township forwarded the complaints to Defendant David Schmidt, a health inspector at the Alcona County Health Department. *Id.* at PageID.6; ECF No. 40 at PageID.567.

Defendant Schmidt directed the neighbors to supplement their complaint with additional allegations. ECF No. 1 at PageID.28. He sent the following email directly to Plaintiffs' neighbors:

> Just a thought—I cannot do anything about the noise, fire hazard[,] and disregard to the neighbors. Neither complaint mentions the possible establishment of an unlicensed campground. The forms should mention that issue along with the sanitation issue. Please add that to the forms if you would. Thanks, Dave.

ECF No. 1-2 at PageID.28. At Defendant Schmidt's direction, Plaintiffs' neighbors filed two more complaints, identifying themselves as Brad and Brian Wendling. ECF No. 1 at PageID.6. Brian Wendling is the elected Drain Commissioner of Saginaw County. *Id.* at PageID.6 n.1.

On June 2, 2021, for reasons yet unclear, Defendant Schmidt entered Skylar Trail—allegedly without permission or legal authority—to inspect Plaintiffs' property. *Id.* at PageID.7. Defendants Schmidt, Harvey, and Caledonia Township Zoning Officer Kenneth Gibson purposely trespassed because they did not "want [Plaintiffs] to know we are coming." *Id.* (quoting ECF No. 1-4 at PageID.35); ECF No. 40 at PageID.567.

Confirming the inspection, Defendant Schmidt completed a report providing that he "[o]bserved 5 new camping cabins and one camper on [Skylar Trail] along with an existing cabin and a platform for possibly a sixth camping cabin." ECF No. 1-3 at PageID.29. Defendant Schmidt's report also acknowledged that he trespassed on Skylar Trail with "representatives from Alcona Co. Bldg. Dept. & Caledonia Twp." *Id.* Plaintiffs believe that those "representatives" were Defendants Harvey and Gibson because they were captured in photographs taken during the June 2, 2021 inspection by Defendant Keith Krentz, who owns a parcel adjacent to Skylar Trail. *See, e.g.*, ECF Nos. 1 at PageID.8; 40 at PageID.567.

Twelve days after the inspection, with no prior notice or hearing, Defendant Harvey revoked his prior clearance and served Plaintiffs with a "Stop Work Order" under Rules 105.1[1]

---

[1] Rule 105.1 of the 2015 Michigan Residential Code provides in full:

> Any owner or owner's authorized agent who intends to construct, enlarge, alter, repair, move, demolish or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be performed, shall first make application to the building official and obtain the required permit.

MRC R 105.1.

and 114.1[2] of the 2015 Michigan Residential Code. *See* ECF Nos. 1 at PageID.9–10; 1-5 at PageID.40. Plaintiffs allege that Defendants Harvey and Alcona County issued the Stop Work Order in violation of the Fourteenth Amendment to the United States Constitution and Michigan Compiled Laws § 125.1512(3). ECF No. 1 at PageID.10. Plaintiffs also contend that the Stop Work Order violated their "legally obtained and enjoyed" property right vested under Michigan law. *See id.* (citing *City of Lansing v. Dawley*, 225 N.W. 500 (Mich. 1929) (en banc) and its progeny).

Roughly two months after the inspection, Defendant Alcona County's Board of Commissioners convened a special meeting with Defendant Harvey but without any notice to Plaintiffs. *See id.* at PageID.10–11 (citing ECF No. 1-6 at PageID.41). At that meeting, Defendant Harvey, who was not a member of the Board, requested that the Board go "into closed session to discuss Building Department matters." ECF No. 1-6 at PageID.41. Then Board Member Carolyn Brummund made a motion, seconded by Board Member Terry Small, to move the meeting "into closed session to discuss Building Department matters," which was approved by Board Members Adam Brege, Carolyn Brummund, Dan Gauthier, Terry Small, and William Thompson. *Id.*

Plaintiffs contend that discussing "Building Department matters" is not a valid reason to justify a closed session under Michigan law, which requires that discussions on such matters be undertaken at a public meeting and that the meeting minutes be available to the public for inspection. ECF No. 1 at PageID.11. Plaintiffs also contend that, during the 38-minute closed session, Defendants discussed Plaintiffs' building permit and the Stop Work Order. *Id.* Their proof,

---

[2] Rule 114.1 of the 2015 Michigan Building Code provides in full:

> It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment regulated by this code, or cause same to be done, in conflict with or in violation of any of the provisions of this code.

MRC R 114.1.

they say, is the meeting minutes, which demonstrate not only that the closed session comprised roughly 75% of the entire meeting, but also that, after returning from the closed session, the Board made and approved motions "to deny the request of [Plaintiffs] to waive the building permit fees and, by directive of the Board, to have the Building Department follow the policies and procedures as written." *See* ECF No. 1 at PageID.12 (citing ECF No. 1-6 at PageID.41). Since the special meeting, Defendant Alcona is "apparently willing to issue a building permit but has imposed fines for not [previously] obtaining a building permit." *Id.*

Plaintiffs' Amended Complaint includes seven counts: (Count I) violation of procedural due process under 42 U.S.C. § 1983 and (Count II) equitable estoppel against Defendants Alcona and Harvey; (Count III) illegal search under 42 U.S.C. § 1983 against Defendants Alcona, Caledonia, Gibson, Harvey, and Schmidt; (Count IV) common-law trespass against Defendants Alcona, Caledonia, Gibson, Harvey, Krentz, and Schmidt; (Count V) private-party conspiracy under 42 U.S.C. § 1983 against Defendant Krentz; (Count VI) violation of Michigan's Open Meetings Act, MICH. COMP. LAWS § 15.261 *et seq.* against Defendants Brege, Brummund, Gauthier, Small, and Thompson; and (Count VII) violation of the Open Meetings Act against Defendant Alcona. ECF No. 23. Defendants have answered the Complaint. ECF Nos. 31; 32; 34.

Plaintiffs have filed a motion to strike the answers of Defendants Schmidt and Harvey, ECF No. 33, which have both since been amended, ECF Nos. 36; 37. Plaintiffs also filed a motion to strike the answer of Defendants Alcona, Brege, Brummund, Gauthier, Small, and Thompson, ECF No. 35. Plaintiffs' Motions to Strike will be discussed in Part II.

Defendant Krentz has filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim, ECF No. 40, to which Plaintiffs have responded, ECF No. 44. Defendant Krentz's Motion to Dismiss will be discussed in Part III.

Plaintiffs have also filed a motion for a preliminary injunction to compel Defendants to disclose the meeting minutes from Defendants' August 11, 2021 closed session, ECF No. 25, to which Defendants have responded, ECF No. 39. Plaintiffs' Motion for a Preliminary Injunctions will be discussed in Part IV.

**II.**

Plaintiffs have filed two motions to strike various affirmative defenses.

**A.**

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED R. CIV. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). "The function of the motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." *Id.* (internal quotation marks omitted).

"Although [m]otions to strike are viewed with disfavor, such motions are properly granted when plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 697 (6th Cir. 2017) (internal quotation marks omitted). "However, a motion to strike is not intended to furnish an opportunity for the determination of disputed and substantial questions of law." *Adams v. Hyman Lippitt, P.C.*, No. 05-72171, 2005 WL 3556196, at *21 (E.D. Mich. Dec. 29, 2005) (internal quotation marks omitted), *vacated in part on other grounds*, No. 05-72171, 2006 WL 901703 (E.D. Mich. Apr. 3, 2006).

**B.**

Plaintiffs first argue that 28 of the affirmative defenses pleaded by Defendants Harvey and Schmidt fail to meet the heightened pleading standard of *Twombly* and *Iqbal* and must therefore be stricken. *See generally* ECF No. 33. Defendants have since filed amended answers curing all but two of Plaintiffs' challenges by removing or amending the challenged defenses. *See* ECF Nos. 36; 37. Accordingly, Plaintiffs' Motion to Strike, ECF No. 33, will be denied as moot.

### C.

Plaintiffs also challenge the 26 affirmative defenses pleaded by Defendants Alcona, Brege, Brummond, Gauthier, Small, and Thompson. *See generally* ECF No. 35.

### 1.

Plaintiffs first challenge the 26 affirmative defenses as not meeting the heightened pleading standard of *Twombly–Iqbal*. *Id.* at PageID.499.

The *Twombly–Iqbal* standard is ordinarily applied when testing the sufficiency of a complaint under Rule 12(b)(6). In essence, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Thus, the burden set by *Twombly–Iqbal* exceeds the usual "fair notice" standard imposed on affirmative defenses. *See Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (unpublished) ("An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense.") quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274 (3d ed.))).

- 7 -

To support the application of a heightened pleading standard, Plaintiffs rely on *Taylor v. City of Saginaw*, No. 17-CV-11067, 2020 WL 376453 (E.D. Mich. Jan. 23, 2020), which applied *Twombly–Iqbal* to strike several affirmative defenses. *Taylor* should not be extended here. The affirmative defenses at issue in *Taylor* were filed more than two years after the case began—after threshold legal questions had been briefed, the case had been dismissed, and the matter had been returned to this Court on remand from the Sixth Circuit. *Id.* at *1–2. By contrast, the suggestion to impose a "reciprocal standard" of pleading is dubious when, as in this case, the Complaint's legal sufficiency has yet to be tested, and the case has been pending for barely four months. *Cf. id.* at *4. Accordingly, Defendants' affirmative defenses are better judged under the fair-notice standard. *See, e.g.*, *Pitt v. Twp. of Lee*, No. 20-CV-13021, 2021 WL 352000 (E.D. Mich., Feb. 2, 2021) (holding the same against Plaintiffs' counsel from this case making the same argument); *Bambach v. Lapeer Cnty.*, No. 18-14039, 2020 WL 2812758, at *12–13 (E.D. Mich. May 29, 2020) (declining to apply *Twombly–Iqbal* and finding fair notice pleading standard "most appropriate").

Even so, though not directly challenged, Affirmative Defense No. 26 states that "Defendants reserve the right to amend affirmative defenses to include such further facts as shall become known through the course of pretrial discovery and litigation." *Id.* But "a reservation of right seeking to preserve unknown affirmative defenses subverts Federal Rule of Procedure 15." *Paducah River Painting, Inc. v. McNational Inc.*, No. 5:11-CV-00135-R, 2011 WL 5525938, at *5 (W.D. Ky. Nov. 14, 2011). Thus, Affirmative Defense No. 26 is impertinent or redundant. *Pitt*, 2021 WL 352000, at *4. Therefore, Affirmative Defense No. 26 will be stricken. Fed. R. Civ. P. 12(f).

**2.**

Plaintiffs next argue that "[m]ost of the affirmative defenses pled by Defendants are mere denials [of factual allegations] and not actually affirmative defenses." ECF No. 35 at PageID.502. Plaintiffs specifically challenge Affirmative Defense Nos. "2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 16, 17, 19, and 21." *Id.* Rather than address each defense individually, Plaintiffs suggest that those defenses all fail to "raise[] matters  outside the scope of plaintiff's prima facie case which, if proven, would defeat or mitigate the legal consequences of the defendant's conduct for which the defendant would have the burden of proof." *Id.* Plaintiffs' characterization is inaccurate.

Even if pled in a boilerplate manner, those defenses raise questions of law or fact that are reasonably pertinent to some or all of Plaintiffs' claims. Such questions should not be resolved on a motion to strike. *See M&C Holdings Del., P'ship v. Great Am. Ins.*, No. 1:20-CV-121, 2021 WL 21447, at *5 (S.D. Ohio Jan. 4, 2021) ("[E]ven when the defense seems to present a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as best determined only after further development . . . ." (quoting WRIGHT & MILLER, *supra*, at § 1381)).

For those reasons, Plaintiffs' second argument fails.

### 3.

Plaintiffs also argue that Affirmative Defense Nos. 1, 7, 13, 14, 15, 18, and 24 fail as a matter of law. ECF No. 35 at PageID.503–06.

Affirmative Defense No. 1 states that "Defendants are entitled to absolute, qualified, good faith and/or governmental immunity." ECF No. 34 at PageID.487. Plaintiffs correctly argue that "absolute" immunity does not apply in this case because Plaintiffs are not contesting any prosecutorial functions, judicial functions, legislative acts, or the conduct of any jurors or witnesses. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (grand jurors); *Briscoe v. LaHue*, 460

U.S. 325, 345 (1983) (witnesses); *Imbler v. Pachtman*, 424 U.S. 409, 424–25 (1976) (prosecutors); *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) (judges); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (legislators). Plaintiffs are also correct that Defendants' pleading of "good faith" immunity should be stricken because, as Defendants have demonstrated, it duplicates their "qualified immunity" defense. *See* ECF No. 46 at PageID.629. But Plaintiffs' claim to "governmental" immunity fails because, as Defendants note, "Plaintiffs have stated tort claims sounding in trespass." *Id.* For these reasons, Defendants' Affirmative Defenses of "good faith" immunity and "absolute" immunity will be stricken. FED. R. CIV. P. 12(f).

Affirmative Defense No. 7 provides that "[t]o the extent to which any and all matters of affirmative defenses are otherwise set forth in the proceeding answers above, same are hereby incorporated by reference as though fully set forth at length herein." ECF No. 34 at PageID.488. That accusation is not an affirmative defense; it has little to no substance, and its meaning is less than clear. Even if Affirmative Defense No. 7 is comprehensible, any later defenses needing to incorporate facts can state such facts within the respective defense. The same is true of Affirmative Defense 18, which states that "Defendants adopt and incorporate Co-Defendants Affirmative Defenses." *Id.* at PageID.490. Affirmative Defense Nos. 7 and 18 will therefore be stricken. FED. R. CIV. P. 12(f).

Affirmative Defense No. 13 provides that "Plaintiffs' claims, in whole or in part, are barred by the applicable statute of limitations." ECF No. 34 at PageID.489. Plaintiffs filed their Complaint on December 10, 2021. ECF No. 1. Plaintiffs are correct that all their pleaded claims were filed within the applicable statutes of limitations, *see* ECF No. 35 at PageID.504, which Defendants do not contest. The same is true of Affirmative Defense No. 14, which Plaintiffs oppose for the same

reasons. *See id.*; *see also* ECF No. 34 at PageID.489. Accordingly, Affirmative Defense Nos. 13 and 14 will be stricken. FED. R. CIV. P. 12(f).

Affirmative Defense No. 15 provides that "Plaintiffs are barred from maintaining this action by the doctrine of laches, waiver, estoppel, res judicata and unclean hands." ECF No. 34 at PageID.489. Plaintiffs are correct that res judicata does not apply in this case because "[t]here has never been a prior lawsuit between these parties," ECF No. 35 at PageID.505, which Defendant does not contest, *see* ECF No. 46 at PageID.630. For that reason, Defendants' Affirmative Defense of "res judicata" will be stricken. FED. R. CIV. P. 12(f).

Affirmative Defense No. 24 provides that "Plaintiffs due process claims fail because they have adequate remedies at state law." ECF No. 34 at PageID.491. Plaintiffs are correct that there is no exhaustion requirement for claims brought under  42 U.S.C. § 1983. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 409 n.5 (6th Cir. 2019) (citing *Monroe v. Pape*, 365 U.S. 167, 183 (1961)). Defendants merely retort that there would be no prejudice from leaving Affirmative Defense No. 24 in the pleadings. *See* ECF No. 46 at PageID.630–31. Still, given the time and resources already invested on this issue and Defendants' lack of substantive rebuttal of Plaintiffs' claims, Plaintiffs have been prejudiced by Affirmative Defense No. 24. Consequently, Affirmative Defense No. 24 will be stricken.

### III.

Defendant Krentz has filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.

### A.

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) involves either a facial or factual attack. *Am. Telecom Co. v. Republic of Leb.*,

501 F.3d 534, 537 (6th Cir. 2007). A facial attack "merely questions the sufficiency of the pleading." *Ohio Nat'l Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Gentek Bldg. Prods. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The standard for 12(b)(1) facial attacks is, thus, the same as the standard for 12(b)(6) motions. *McCormick v. Mia. Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations supporting recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the nonmovant's favor and accepts its factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Nonmovants need not provide "detailed factual allegations" to survive dismissal, but they must provide "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept the complaint's legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

**B.**

Defendant Krentz first asserts that this Court lacks subject-matter jurisdiction over Plaintiff's Count V for private-party conspiracy under 42 U.S.C. § 1983 against Defendant Krentz. To that end, Defendant Krentz argues that a § 1983 "[c]onspiracy to violate constitutional rights is codified at § 1985." ECF No. 40 at PageID.569. As Plaintiff notes, that argument has no merit. *See* ECF No. 44 at PageID.605.

Section 1983, in contrast to § 1985, governs conspiracy claims alleging that a private citizen has acted "under color of law" by conspiring with a state actor to violate a person's constitutional rights. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (quoting *Adickes v. S.H. Krezz & Co.*, 398 U.S. 144, 152 (1966)). Section 1985 does not "duplicate the coverage of [§1983]." *Griffin v. Breckenridge*, 403 U.S. 88, 98–99 (1971).

Defendant Krentz's arguments all address the standard of review applicable to § 1985 conspiracy claims, which Plaintiff has not pled. *Compare* ECF No. 23, *with* ECF No. 40. Further, Defendant Krentz has provided no argument with respect to whether Plaintiffs have sufficiently pled their § 1983 claim. *See generally* ECF No. 40. For those reasons, Krentz's first argument has no merit.

**C.**

Defendant Krentz also asserts that there is no "common nucleus of operative facts" between Plaintiffs' federal claims and their Count IV trespass claim against Krentz. ECF No. 40 at PageID.572. Plaintiffs counter that this Court has supplemental jurisdiction over their trespass claim because "this lawsuit—as it relates to Defendant Krentz—involves the exact same incident with many of the other defendants leading [to] and including the warrantless search and trespass upon [ Skylar Trail] on June 2, 2021." ECF No. 44 at PageID.608.

This Court may exercise supplemental jurisdiction only if the federal and state claims "derive from a common nucleus of operative fact" and the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *accord Blakely v. United States*, 276 F3d 853, 861 (6th Cir. 2002) ("[I]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." (citation omitted)); *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 999 (E.D. Mich. 1996) ("[T]he facts that are relevant to the resolution of Plaintiff's [federal] claim [must not be] completely separate and distinct from the facts that bear upon Plaintiff's state claims.").

Plaintiffs have alleged three federal claims: (1–2) two counts of §1983 civil-rights violations for unreasonable search under the Fourth Amendment, and (3) one violation of procedural due process under the Fourteenth Amendment. ECF No. 23 at PageID.282, 286, 291.

Plaintiff's state-law trespass claim derives from a common nucleus of the operative facts underlying their § 1983 claims. The two § 1983 claims, though brought against different defendants, stem from identical conduct. Count III of Plaintiffs' Complaint alleges that Defendants Alcona, Caledonia, Gibson, Harvey, and Schmidt conducted an illegal search of Skylar Trail to "obtain[] information for purposes of alleged enforcement of local and state laws." ECF No. 23 at PageID.287. Count V alleges that Defendant Krentz "was a willful participant" in Defendants' illegal search because he "helped prepare and execute a plan" for Defendants to trespass onto Skylar Trail and did, too, enter Skylar Trail with Defendants. *Id.* at 291–92. Krentz has included numerous factual assertions that are not common to Plaintiffs' state and federal claims. ECF No. 40 at PageID.573. But the § 1983 claims, like Plaintiffs' trespass claim, involve the plan leading to Defendants' illegal search of Skylar Trail. To that end, Plaintiffs have also submitted not only

photographs that Defendant Krentz took of the other Defendants while they were all located on Plaintiffs' property, but also texts between Defendants Krentz and Schmidt that apparently reveal that Krentz was among the conspiracy's leadership. *See* ECF Nos. 23 at PageID.277; 23-4 at PageID.304–11.

Therefore, this Court has supplemental jurisdiction over Plaintiffs' state-law trespass claim. Because both of Defendant Krentz's arguments fail, his Motion to Dismiss, ECF No. 40, will be denied.

## IV.

Plaintiffs have filed a motion for a preliminary injunction to compel disclosure of meeting minutes from a closed session of a public body.

## A.

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Four factors determine whether a court should grant a preliminary injunction:

(1) whether the movant will suffer irreparable harm absent the injunction;
(2) the movant's likelihood of success on the merits;
(3) whether the balance of hardships favors the movant; and
(4) whether the injunction would be adverse to the public interest.

*Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018) (per curiam); *accord Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006).

These "are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)).

**B.**

Plaintiffs must show that irreparable harm is "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Harm "is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

The "denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington–Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); Joshua Kleppin, Note, *Making A Deliberate Difference: Creating A Constitutional Solution to Hepatitis C in Prisons*, 8 BELMONT L. REV. 265, 284 (2020) (noting that preliminary injunctions often require "evidence of ongoing or future violations" (citing *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1301 (N.D. Fla. 2017))).

To rebut the presumption of irreparable harm, Defendants have correctly asserted that a preliminary injunction would not maintain the status quo in this case because it would require them to disclose a document. *See* ECF No. 39 at PageID.558–59. In this way, Plaintiffs request a mandatory injunction, which requires a party to undo a harm that it has caused. *See* M Devon Moore, Note, *The Preliminary Injunction Standard: Understanding the Public Interest Factor*, 117 MICH. L. REV. 939, 943–44 (2019) (noting that "some courts [have] maintained that . . . prohibitory preliminary injunctions [are] favored over mandatory ones" ever since "[t]he courts of law and equity merged in 1934").

But in the Sixth Circuit, "the traditional preliminary injunctive standard—the balancing of equities—applies to motions for mandatory preliminary injunctive relief." *United Food & Com.*

- 16 -

*Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998); *accord Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 708 (E.D. Mich. 2010).

Apart from that oversight, Defendants have not attempted to explain why Plaintiffs would not experience irreparable harm from the denial of a preliminary injunction. According to the Michigan Court of Appeals, the Open Meetings Act implies "a real and imminent danger of irreparable injury." *Detroit News, Inc. v. City of Detroit*, 460 N.W.2d 312, 314 (Mich. Ct. App. 1990) (per curiam). As indicated, the first factor weighs in favor of granting Plaintiffs' request for injunctive relief.

## C.

Plaintiff's likelihood of success is more certain than not. Plaintiffs argue that their likelihood of success is "strong" because "the Board of Commissioners went into closed session without a valid and lawful basis for doing so." ECF No. 25 at PageID.330. Defendants note in response that one panel of the Michigan Court of Appeal has held that "defendants are strictly forbidden from releasing such minutes unless required by *a judgment* in a civil action filed under § 10, 11, or 13 of the [Open Meeting Act]." *See* ECF No. 39 at PageID.554 (quoting *Loc. Area Watch v. City of Grand Rapids*, 683 N.W.2d 745, 751 (Mich. Ct. App. 2004) (emphasis added)).

All Michigan courts do not construe the Open Meetings Act as narrowly as Defendants assert. *See, e.g., Titus v. Shelby Charter Twp.*, 574 N.W.2d 391, 393 (Mich. Ct. App. 1997) ("Applying these principles, we conclude that the transcript of the . . . closed session is part of the minutes of the session and therefore is exempt from disclosure absent *a court order*." (emphasis added)).

Contrary to Defendants' interpretation, the Michigan Supreme Court has noted that Michigan courts interpret the Open Meetings Act liberally in favor of openness. *Booth*

*Newspapers, Inc. v. Univ. of Mich. Bd. of Regents*, 507 N.W.2d 422, 428 & n.13 (Mich. 1993) (collecting cases). Indeed, some Michigan courts have issued mandatory preliminary injunctions compelling disclosure of closed-meeting minutes under the Open Meetings Act. *See, e.g.*, *Booth Newspapers, Inc. v. Wyoming City Council*, 425 N.W.2d 695, 697 (Mich. Ct. App. 1988) ("[T]he trial court issued a preliminary injunction prohibiting meetings in violation of the OMA, requiring certain documents to be turned over to the court for in-camera review, and requiring electronic recording of all future executive sessions of the city council."). For those reasons, Defendants' argument is without merit.

Under Michigan's Open Meetings Act, whether a public body holds a public meeting or enters a closed session, it must record the minutes of the meeting. *See* MICH. COMP. LAWS §§ 15.267(2), 15.269. "If a public body is not complying with this act, . . . a person may commence a civil action to compel compliance or to enjoin further noncompliance with this act." *Id.* § 15.271(1). The Open Meetings Act provides 12 exclusive reasons for a public body to enter a closed session. *See id.* § 15.268.

Defendants assert that the Board properly went into a closed session "to hear a complaint brought against one [o]f its staff members, agents, or public officials pursuant to MCL 15.268(1)(a)." ECF No. 39 at PageID.552. Section 15.268(1)(a) provides that a public body may enter a closed session "[t]o consider the dismissal, suspension, or disciplining of, or to hear complaints or charges brought against, or to consider a periodic personnel evaluation of, a public officer, employee, staff member, or individual agent, if the named individual requests a closed hearing." MICH. COMP. LAWS § 15.268(1)(a).

But the meeting minutes do not indicate that the Board went into a closed session to address a complaint. A "technical violation" of the Open Meetings Act occurs when a public body

- 18 -

discusses a topic in a closed session that is not reflected in the public-meetings minutes. *See Wyoming City Council*, 425 N.W.2d at 698. The public meeting minutes reflect that the Board entered a closed session to discuss "Building Department matters" and Plaintiffs' request "to waive the building permit fees," not to discuss a complaint. ECF No. 23-6 at PageID.314. As indicated, the record available to this Court reflects that Plaintiffs will prevail on their Open Meetings Act claims.

For those reasons, this factor weighs in favor of granting injunctive relief.

**D.**

The public interest favors disclosure. "When the government opposes the issuance of a temporary restraining order, as [the County Defendant] do[es] here, the final two factors—the balance of equities and the public interest—merge, because 'the government's interest is the public interest.'" *Reed v. Presque Isle Cnty.*, No. 1:21-CV-11112, 2022 WL 892920, at *3 (E.D. Mich. Mar. 25, 2022) (quoting *Malam v. Adducci*, 452 F. Supp. 3d 643, 661–62 (E.D. Mich. 2020)).

Plaintiffs contend that "the public is best served when it has full transparency of government actions." ECF No. 25 at PageID.330. But the meeting minutes might not disclose illegal conduct. Thus, Defendants' concern that "[o]ne cannot 'un-ring the bell' once the minutes are unsealed and made public" is palpable. *See* ECF No. 39 at PageID.559. Yet "[w]hen a constitutional violation is likely, . . . the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) (quoting *Connection Distrib. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).

Defendant has not demonstrated an apparent injury to the public from compelling Defendant Alcona to disclose the meeting minutes. The only subject that Defendants seemingly

discussed during the closed session was Plaintiffs' building permit, which is a central issue in this case. And Defendants have not even whispered of any other topic worthy of secrecy. Therefore, the last two factors favor disclosure under the Open Meetings Act.

Because the factors score 4–0–0, Plaintiff's Motion for a Preliminary Injunction will be granted. Although this Court could instead direct *in camera* review, neither party has pursued that alternative remedy. Even so, given the County's interest in limiting the disclosure of such information, the minutes will only be disclosed under seal.

## V.

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Strike, ECF No. 33, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Plaintiffs' Motion to Strike, ECF No. 35, is **DENIED IN PART** and **GRANTED IN PART**. Plaintiffs' Motion is **GRANTED** with respect to Affirmative Defense Nos. 7, 13, 14, 18, 24, 26, 15's claim of "res judicata," and 1's claims of "good faith" immunity and "absolute" immunity as pled in Answer, ECF No. 34. Those Affirmative Defenses are **STRICKEN** from ECF No. 34. Plaintiffs' Motion is **DENIED** in all other regards.

Further, it is **ORDERED** that Defendant Krentz's Motion to Dismiss, ECF No. 40, is **DENIED**.

Further, it is **ORDERED** that Plaintiffs' Motion for Preliminary Injunction, ECF No. 25, is **GRANTED**. Defendant Alcona is **DIRECTED** to **FILE UNDER SEAL** the August 11, 2021 closed-session meeting minutes **on or before April 27, 2022**.


Dated: April 18, 2022                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

- 20 -