UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MICHAEL J. MOCKERIDGE and
SUSAN J. MOCKERIDGE,

     Plaintiffs,

v.

HARRY HARVEY, COUNTY OF
ALCONA, KENNETH GIBSON in
his personal capacity, DAVID
SCHMIDT in his personal and
official capacities KEITH KRENTZ,
and TOWNSHIP OF CALEDONIA,

     Defendants.

Case No. 21-CV-12896

HON. THOMAS L. LUDINGTON
MAG. PATRICIA T. MORRIS

_____

OUTSIDE LEGAL COUNSEL PLC
Philip L. Ellison (P74117)
P.O. Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Thomas R. Meagher (P32959)
Daniel S. Zick (P77950)
Foster, Swift, Collins & Smith, PC
Attorneys for Defendants Gibson
and Caledonia Township
313 S. Washington Square
Lansing, MI 48933-2193
(517) 371-8100
tmeagher@fosterswift.com
dzick@fosterswift.com

Allan C. Vander Laan (P33893)
Kristen L. Rewa (P73043)
Meigs M. Day (P36929)
Cummings, McClorey, Davis &Acho
Attorneys for Def Alcona County
Dr., S.E. - Suite 203
Grand Rapids MI  49546
(616) 975-7470
avanderlaan@cmda-law.com
krewa@cmda-law.com
mday@cmda-law.com

Sean Michael Freel (P81158)
Freel Professional Corp
Attorney for Defendants Harvey
and Schmidt
540 W Lake St Ste. 2
Tawas City, MI 48763
(989) 362-3444
sean@freelpc.com

William Paul Slough (P70489)
Kirkpatrick DuBois & Slough, PLC
Attorney for Keith Krentz
145 N Otsego Ave
Gaylord, MI 49735-1443
(989) 732-2912
paul@gaylordlaw.com

W. Jay Brown (P58858)
Brown Law, PLC
Co-Counsel for Keith Krentz
414 Townsend, Suite 201
Midland, MI 48640
(989) 486-3676
brown@brownlawplc.com

Matthew T. Nelson (P64768)
Katelyn D. Crysler (P83718)
Warner Norcross & Judd
Co-Counsel for Def Harvey,
Schmidt
150 Ottawa Ave NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
mnelson@wnj.com
kcrysler@wnj.com

_____

## MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ALCONA COUNTY

### *ORAL ARGUMENT REQUESTED*

NOW COMES Defendant, Alcona County, by and through their attorneys, Cummings, McClorey, Davis & Acho, P.L.C., and for his Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 states:

1.     Plaintiffs Michael Mockeridge and Susan Mockeridge seek to recover damages, declaratory and injunctive relief asserting Fourth Amendment, Fourteenth Amendment, and state law claims against Defendant Alcona County for actions concerning their Alcona County property.

{01723736-1}2

2.      Defendant Alcona County is entitled to summary judgment because Plaintiffs have failed to establish a genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

3.      On January 6, 2023, the undersigned counsel sought concurrence in the relief requested in this motion through written correspondence to Plaintiffs' counsel.  In a written reply, Plaintiffs' counsel indicated they will oppose the motion.

WHEREFORE, Defendant Alcona County requests that this Honorable Court grant its Motion for Summary Judgment for the reasons stated in the accompanying brief.

Respectfully submitted,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

Dated: January 9, 2023      /s/_Kristen Rewa_____
                            Allan C. Vander Laan (P33893)
                            Kristen L. Rewa (P73043)
                            Attorneys for Defendan

## BRIEF IN SUPPORT OF DEFENDANT ALCONA COUNTY'S MOTION FOR SUMMARY JUDGMENT

*Oral Argument Requested*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ ii

INDEX OF AUTHORITIES ................................................................. iii

INDEX OF EXHIBITS ........................................................................ vi

ISSUES PRESENTED ...................................................................... vii

MOST CONTROLLING AUTHORITY ..................................................viii

STATEMENT OF FACTS ..................................................................... 1

STANDARD OF REVIEW.................................................................... 9

LAW AND ARGUMENT ..................................................................... 10

   I.   Federal Claims ....................................................................... 10

      A.   Fourth Amendment ..................................................... 10

      B.   Fourteenth Amendment Procedural Due Process................. 14

   II.  State Law Claims ................................................................ 18

      A.   Trespass ................................................................. 18

      B.   Equitable Estoppel.................................................... 22

   CONCLUSION AND RELIEF REQUESTED ........................................ 24

## INDEX OF AUTHORITIES

<u>**Cases**</u>

***Anderson v. Liberty Lobby, Inc.*,**
   477 U.S. 242 (1986) .................................................................9

***Antkiewicz v. Motorists Mut. Ins. Co.*,**
   91 Mich.App. 389, 283 N.W.2d 749, *vacated in part on other
   grounds*, 407 Mich. 936, 285 N.W.2d 659 (1979) ...................19

***Ashcroft v. Mattis*,**
   431 U.S. 171 (1977).............................................................20

***Braun v. Ann Arbor Charter Twp.*,**
   519 F.3d 564 (6th Cir. 2008) ...............................................15

***Bright v. Gallia Cty., Ohio*,**
   753 F.3d 639 (6th Cir. 2014) ...............................................10

***Chandler v. Vill. of Chagrin Falls*,**
   296 F. App'x 463 (6th Cir. 2008) .........................................15

***City of Lansing v. Dawley*,**
   247 Mich 394, 225 NW 500 (1929).......................................22

***City of Los Angeles v. Lyons*,**
   461 U.S. 95 (1983).............................................................21

***Connick v. Thompson*,**
   563 U.S. 51 (2011).............................................................10

***Dalley v. Dykema Gossett*,**
   287 Mich.App. 296, 788 N.W.2d 679 (2010) .........................19

***Difronzo v. Vill. of Port Sanilac*,**
   166 Mich.App. 148, 419 N.W.2d 756 (1988) .........................18

***Dingeman Advert., Inc. v. Algoma Twp., Kent Cnty.*,**
   393 Mich. 89, 223 N.W.2d 689 (1974)..................................23

***E.E.O.C. v. New Breed Logistics*,**
   783 F.3d 1057 (6th Cir. 2015) ...............................................9

***Florida v. Jardines*,**
   569 U.S. 1 (2013).............................................................11

*Hollingsworth v. Tennessee Wildlife Res. Agency*,
  423 F.Supp.3d 521 (W.D. Tenn. 2019) ................................................ 11

*Howard Twp. Bd. of Trustees v. Waldo*,
  168 Mich. App. 565; 425 N.W.2d 180 (1988) ...................................... 22

*Kalkman v. City of Vill. of Douglas*,
  No. 306051, 2012 WL 4215834 (Mich. Ct. App. Sept. 20, 2012) ........... 23

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ............................................................................ 15

*Monell v. Dept. of Soc. Servs.*,
  436 U.S. 658 (1978) ............................................................................ 10

*Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter
  Twp.*,
  947 F.Supp.2d 752 (E.D. Mich. 2013) .................................................. 16

*Oliver v. United States*,
  466 U.S. 170 (1984) .................................................................. 11, 12, 13

*Paeth v Worth Tp*,
  483 Fed.Appx. 956 (6th Cir. 2012) .......................................... 15, 16, 17

*People v. Frederick*,
  500 Mich. 228, 895 N.W.2d 541 (2017).......................................... 12, 20

*People v. Ring*,
  267 Mich. 657, 255 N.W. 373 (1934)................................................... 20

*Pittsfield Twp. v. Malcolm*,
  375 Mich. 135, 134 N.W.2d 166 (1965)................................................ 23

*Rogers v. Board of Rd Comm'rs*,
  319 Mich. 661, 30 N.W.2d 358 (1948).................................................. 19

*Sherman v. Michigan Dep't of Nat. Res.*,
  799 F.Appx. 318 (6th Cir. 2020) .......................................................... 11

*Shreve v. Franklin County, Ohio*,
  743 F.2d 126 (6th Cir. 2014) ................................................................. 9

*Taylor v. Mich. Dep't of Natural Res.*,
  502 F.3d 452 (6th Cir. 2007) ............................................................... 21

***U.S. v. Dunn***,
  480 U.S. 294 (1987) ........................................................................ 12, 13

***U.S. v. Jones***,
  565 U.S. 400 (2012) ............................................................................ 12

***Vereecke v. Huron Valley School Dist.***,
  609 F.3d 392 (6th Cir. 2010) .............................................................. 10

***Werner v. Primax Recoveries, Inc***.,
  365 Fed.Appx. 664 (6th Cir. 2010) ...................................................... 21

***Widgren v. Maple Grove Twp.***,
  429 F.3d 575 (6th Cir. 2005) .............................................................. 11

## <u>Statutes</u>

Mich.Comp.Laws § 125.1512............................................................ 14, 19

Mich.Res.Bldg Code § R104.6.............................................................. 19

## <u>Court Rules</u>

Fed. R. Civ. P. 56(a) ............................................................................ 9

# INDEX OF EXHIBITS

Exhibit A   Michael Mockeridge Deposition

Exhibit B   Brian Mockeridge Deposition

Exhibit C   Harry Harvey Deposition

Exhibit D   David Schmidt Deposition

Exhibit E   Susan Mockeridge Deposition

Exhibit F   Kenneth Gibson Deposition

Exhibit G   Kerry Scott Declaration

## ISSUES PRESENTED

I.     IS DEFENDANT ALCONA COUNTY ENTITLED TO SUMMARY
       JUDGMENT ON PLAINTIFFS' FOURTH AMENDMENT CLAIM
       BECAUSE THE JUNE 2, 2021 SITE VISIT OCCURRED IN AN
       OPEN FIELD?

> Plaintiffs answer "no."

> Defendant Alcona County answers "yes."

II.    IS DEFENDANT ALCONA COUNTY ENTITLED TO SUMMARY
       JUDGMENT ON PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM
       BECAUSE THEY DID NOT HAVE A PROTECTED PROPERTY
       INTEREST AND THE PROCESS THEY RECEIVED WAS
       ADEQUATE?

> Plaintiffs answer "no."

> Defendant Alcona County answers "yes."

III.   IS DEFENDANT ALCONA COUNTY ENTITLED TO SUMMARY
       JUDGMENT ON PLAINTIFFS' TRESPASS CLAIM BECAUSE THE
       ENTRY WAS AUTHORIZED BY LAW?

> Plaintiffs answer "no."

> Defendant Alcona County answers "yes."

IV.    IS DEFENDANT ALCONA COUNTY ENTITLED TO SUMMARY
       JUDGMENT ON PLAINTIFFS' EQUITABLE ESTOPPEL CLAIM?

> Plaintiffs answer "no."

> Defendant Alcona County answers "yes."

V.     DO PLAINTIFFS LACK STANDING TO SEEK EQUITABLE RELIEF
       ON THEIR TRESPASS AND ILLEGAL SEARCH CLAIMS?

> Plaintiffs answer "no."

> Defendant Alcona County answers "yes."

# MOST CONTROLLING AUTHORITY

### _Fourth Amendment Claim_

**_Sherman v. Michigan Dep't of Nat. Res._**,
   799 F.Appx. 318 (6th Cir. 2020) ............................................................. 11

**_U.S. v. Dunn_**,
   480 U.S. 294 (1987) ........................................................................ 12, 13


### _Fourteenth Amendment Claim_

**_Paeth v Worth Tp_**,
   483 Fed.Appx. 956 (6th Cir. 2012) ........................................... 15, 16, 17


### _Equitable Estoppel Claim_

**_Dingeman Advert., Inc. v. Algoma Twp., Kent Cnty._**,
   393 Mich. 89, 223 N.W.2d 689 (1974) .................................................... 23


### _Trespass Claim_

**_Dalley v. Dykema Gossett_**,
   287 Mich.App. 296, 788 N.W.2d 679 (2010) ......................................... 19


### _Standing_

**_City of Los Angeles v. Lyons_**,
   461 U.S. 95 (1983) ............................................................................... 21

## STATEMENT OF FACTS

Plaintiffs Susan and Michael Mockeridge own a 40-acre parcel of land in Caledonia Township, Alcona County. **(Exhibit A, Michael Mockeridge Dep, pp. 13-15, 56-60)**. It is not their residence. **(Ex. A, p.16)**. They do not receive mail there. **(Ex. A, p.235)**. The property was intended for family vacations. **(Ex. A, p.43)**.

The Property is not accessible by public road. A two-mile long, private, "two-track" dirt road (Skylar Trail) runs through adjoining parcels, providing access to the properties. **(Ex. A, pp.78, 274, 281; Krentz Dep, pp.16-17, ECF 79-39, PageID.895-896; Property Diagram, ECF 79-2 at PageID.811)**.

When the Plaintiffs first acquired the Property, it had two sheds and a pre-existing residential structure ("original cabin") located 300 feet from the western property line. **(Ex. A, pp.59-64; ECF 79-2 at PageID.811)**. A driveway runs 900 feet from the easement trail to approximately 100 feet from the original cabin. **(Ex. A, p.76; ECF 79-2 at PageID.811)**. The property is not fenced. **(A, p.67; Exhibit B, Brian Mockeridge Dep, pp.11-12; Ex. Exhibit D, David Schmidt Dep, pp.67-68; Photos, ECF 79-5, PageID.817; ECF 79-4, PageID.826-828)**.

In October 2020, Plaintiffs and their adult children purchased five pre-fabricated "mini-cabins" for the Property. **(Ex. A, pp.97-111)**. They intended to use the structures as sleeping quarters. **(Ex. A, p.176)**. The mini-cabins are one-story structures with a loft, measuring no more than 200 square feet. **(Ex. A, p.104)**. Each contains an electrical circuit breaker box and electrical outlets. **(Ex. A, pp.99-101; 119-120)**. The mini-cabins do not have plumbing, heat, a kitchen, or a bathroom. **(Ex. A, pp.120, 133, 134)**. The owner of each mini-cabin is "whoever paid for it." **(Ex. A, p.111; Receipts, ECF 79-4, PageID.816)**. However, Plaintiffs also assert they own the structures, as owners of the realty. **(Ex. A, p.189)**.

In April 2021 Plaintiffs built foundations for the mini-cabins. **(Ex. A, pp.117-118)**. The mini-cabins were delivered on May 13 or 14, 2021. **(Ex. A, p.65)**.  The roofs were constructed onsite. **(Ex. A, pp.118, 125-129)**. The mini-cabins are located in the northwest corner of the property, with the closest cabin standing sixteen feet from the northern property line. **(Ex. A, p.66; Diagram, ECF 79-2, PageID.811)**. Plaintiffs connected each mini-cabin to the existing electricity on the Property. **(Ex. A, p.129)**. The family began sleeping in the cabins in June 2021. **(Ex. A, p.133; Exhibit E, Susan Mockeridge Dep, p.11)**. They continue to use the Property and the mini-cabins. **(Ex. E, p.11; Ex. A, p.135, Ex. B, p.45)**.

Plaintiffs did not apply for any building permits, electrical permits, or zoning approval from the relevant government entities. **(Ex. A, pp.142-143, 264; Ex. B, p.51; Exhibit C, Harry Harvey Dep, p.28; Exhibit E, Kenneth Gibson Dep, pp.43-44;)**. Plaintiffs assert they were told by the Alcona County Building Department that they did not need a building permit. **(Ex. A, p.142)**.

Plaintiff Susan Mockeridge never spoke to the Building Department. **(Ex. E, pp.13, 26)**. Plaintiff Michael Mockeridge "spoke to someone" at the Building Department in August 2020; he believes Kerry Scott. **(Ex. A, pp.148, 198)**. Scott is the Building Department's Office Manager. **(Exhibit G, Kerry Scott Declaration, at ¶2)**. She is not a building inspector or the building official. **(Id., at ¶3)**.

Mr. Mockeridge told Scott that Plaintiffs intended to place five cabins on the property. **(Ex. A, p.151)**. She told him they did not need a building permit unless the structure was over 200 square feet. **(Ex. A, pp.149-150)**. He "assumed" no permit was required regardless of the use. **(Ex. A, pp.197-198)**. Scott denies that she "confirmed" the mini-cabins did not require a permit. **(Ex. G, at ¶7)**. Mr. Mockeridge did not speak to the Alcona County Building Official, Harry Harvey, before purchasing or erecting the mini-cabins. **(Ex. A, pp.152-153; Ex. C, p.39)**.

Plaintiffs' adult son, Brian Mockeridge, called the Building Department in August and September 2020. **(Ex. B, pp.15-21, 33-35)**. He told Harvey that Plaintiffs were interested in purchasing and placing small Amish cabins on the property as sleeping quarters. **(Ex. B, pp.19-21, 70-71)**. He does not recall if they spoke about electricity. **(Ex. B, p.19)**. Harvey told him that no building permit was required if the building is an accessory structure under 200 square feet. **(Ex. B, p.20; Ex. C, pp.42-44)**. Brian had similar conversations with Scott. **(Ex. B, pp.22-23)**. Harvey denies that he told anyone that sleeping quarters did not require a permit. **(Ex. C, pp.33, 42, 93)**. As does Scott. **(Ex. G, at ¶7)**.

Owners of neighboring properties took notice of the building activity. Defendant Keith Krentz owns property to the south and west of Plaintiff's Property. **(Krentz, p.12, PageID.894)**. He is also a licensed residential builder. **(Krentz, pp.10-11, PageID.893-894)**. Krentz saw a sign that Plaintiffs posted on their property, which reads: "Key West National Forest, Mockeridge Family Campground". **(ECF 80, PageID.929).**

He contacted Defendant David Schmidt, an official with the local health department, to lodge a complaint that the Plaintiffs' Property was being used as a public campground. **(Krentz, pp.23-24, 27-30, 35-37, 79-84, PageID.897-898, 900, 911-912; Complaint, ECF No.79-10;**

**PageID.822; Ex. D, pp.13-14, 55-59)**. Other neighbors submitted similar complaints. **(Krentz, pp.50-51, 55-56, PageID.903-904, 905; Ex. D, pp.13-14; Complaint, ECF No.79-11, PageID.823)**.    Krentz also contacted Harvey to inquire whether the County issued any building permits. **(Krentz, pp.47-48, PageID.903; Ex. C, p.15)**.

Krentz helped coordinate a meeting with officials to show them his concerns. **(Krentz, pp.57-60, 64-67 PageID.905-907)**. He drove Harvey, Schmidt, and Ken Gibson, the Caledonia Township Zoning Administrator, to the Skylar Trail Property on June 2, 2021. **(Krentz pp.58, 66-67, 71, PageID.905-909; Ex. D, p.60, 62; Ex. C, pp.15-16, 47-48, 96; Ex. F, p.19)**. The intent of the visit was not to enter onto Plaintiffs' land. **(Krentz, pp.68, 102-103; PageID.908, 916-917; Ex. D, p.55, Ex. C, p.99)**. They did not have Plaintiffs' consent or a warrant. **(Ex. D, p. 40; Ex. C, pp. 17, 30, 53)**.

The group first drove on the Skylar Trail easement to view the sign that appeared to mimic a national forest campground sign. **(Krentz, p.63, PageID.907; Ex. D, pp.14-15, 58)**. The group drove to adjoining property, from which they could see the mini-cabins while standing near the Plaintiffs' northern property line. **(Diagram, ECF No.79-2, PageID.811; Krentz, p.62-64, 71-72; PageID.906-907, 909; Ex. F, p.44; Ex. C, p.52; Ex. D, p.39; Ex. C, pp.97-98)**. The group spontaneously decided to enter onto Plaintiffs'

Property. **(Krentz, pp.68-69, 103; PageID.908, 917; Ex. C, p.97)**. The Property was unoccupied at the time. **(Ex. A, p.168; Ex. D, p.35)**.

Schmidt went to the front door of the original cabin, knocked, and returned to the neighboring property. **(Ex. D, pp.31-37, 43-45, 59-64)**. Harvey went with him. **(Ex. D, p.39)**. Harvey saw five finished mini-cabins with electrical power. **(Ex. C, p.27)**. He looked for but did not see smoke detectors in three of the mini-cabins. **(Ex. C, p.29)**. Gibson checked the setback of the closest mini-cabin to the property line with a tape measure. **(Ex. F, pp.21-22, 25, 44-45)**. One of the officials asked Krentz to take photographs. (**Krentz pp.70-71, 86-87, PageID.908-909, 912-913; Photos, ECF No.79-4, PageID.826-828; Krentz, pp.91-92, 104, PageID.914, 917)**.

Following the site visit, Harvey determined no permits were pulled by speaking with Building Department staff. He also obtained guidance from a fellow building inspector colleague. **(Ex. C, pp.36, 69, 92-93)**. On July 14, 2021, Harvey called Mr. Mockeridge to notify him that he was issuing a stop work order on the Property. **(Ex. A, pp.199-200)**. Mr. Mockeridge was not at the property but gave him permission to enter and speak to his sons. **(Ex. A, p.200; Ex. B, pp.46-47; Ex. C, pp.63-64)**. Harvey and Caledonia Township Supervisor and interim Zoning Administrator Cindy Aspey[1] visited

---

[1] Defendant Gibson had resigned.

the Property. **(Ex. A, pp.200-201; Ex. C, pp.52-55)**. Harvey handed the order to one of Plaintiffs' sons. **(Ex. C, p.57; Order, ECF 79-24, PageID.860)**. Mr. Mockeridge, via telephone, consented to Harvey entering one of the mini-cabins. **(Ex. A, pp.201-202; Ex. B, p.47; Ex. C, pp.74-76)**. By the time the stop work order was issued, construction of the min-cabins was complete. **(Ex. A, pp.203, 238-239)**.

Harvey did not give 24-hour notice (as required by state law) prior to issuing the stop work order. **(Ex. C, pp. 56-57)**.

The reason for the order was no smoke detectors, no electrical permits and no permits on the cabins. **(Ex. C, pp.55-56, 66; Order, PageID.860)**. The order was followed by a letter from Harvey to the Plaintiffs dated July 16, 2021 advising them that they needed to obtain a land use permit from Caledonia Township before the County could issue a building permit. **(Letter, ECF 79-25; PageID.861; Ex. A, p.204)**.

Plaintiffs obtained zoning approval from the Township after paying a fine in late July 2021. **(Ex. A, pp.204-205)**. Plaintiffs applied to the County for building and electrical permits in late July or early August 2021. **(Ex. A, pp.162-163; Ex. C, p.72)**. The permit fee was increased because Plaintiffs began construction before pulling permits. **(Ex. A, pp. 207, 252)**. Mr. Mockeridge petitioned the Alcona County Board of Commissioners to

contest the extra charges. **(Ex. A, p.241)**. The Board placed him on the agenda of its August 4, 2021 meeting to discuss "issues with the Building Department and requested the Board waive the building permit fees." **(Ex. A, p.240; 8/4 Minutes, ECF No.79-26, PageID.862).** The Board heard his petition but did not take any action at that meeting. **(Ex. A, pp.247-251; PageID.862)**.

The Board convened a special meeting on August 11, 2021 "to discuss Building Department matters." **(8/11 Minutes, ECF No.79-27; PageID.866; Ex. C, p.79)**.[2] The Board voted "to deny the request of Michael Mockeridge to waive the building permit fees and, by directive of the Board, have the Building Department follow the policies and procedures as written." **(PageID.866)**.

The stop work order remains in place for the cabins. **(Ex. C, pp.69-70)**. No permits have issued. **(Ex. C, pp.69-70; Ex. G**, ¶13). Plaintiffs refuse to pay the fees. **(Ex. A, pp.210, 252-254)**. However, Plaintiffs have obtained permits for other building activity commenced after the issuance of the stop work order, including construction of a lean-to structure and awnings on the original cabin. **(Ex. A, pp.208-209, 261)**.

---

[2] An Open Meetings Act claim surrounding these proceedings was resolved and dismissed by stipulated order. **(ECF No. 65, PageID.714)**. The minutes are public. **(PageID.715)**.

Plaintiffs filed this action on December 10, 2021. **(ECF No.1)**. An Amended Complaint was filed on January 21, 2022. **(ECF No. 23, PageID.270)**. Discovery closed on December 5, 2022. **(Order, ECF No.74, PageID.763)**.

## STANDARD OF REVIEW

A court must grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). No genuine issue of material fact exists if "reasonable minds could come but to one conclusion, in favor of the moving party." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although the court must draw all reasonable inferences in favor of the nonmoving party, "[a] dispute is genuine only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Shreve v. Franklin County, Ohio*, 743 F.2d 126, 132 (6th Cir. 2014).

## LAW AND ARGUMENT

### I.    Federal Claims

A municipal entity cannot be held liable under a "respondeat superior" theory for the actions of its officers. ***Monell v. Dept. of Soc. Servs.***, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation. ***Connick v. Thompson***, 563 U.S. 51, 60 (2011). A plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [the plaintiff's] particular injury was incurred due to the execution of that policy." ***Vereecke v. Huron Valley School Dist.***, 609 F.3d 392, 404 (6th Cir. 2010). If the record fails to demonstrate that any individual officer actually violated the plaintiff's rights, the municipality cannot be found liable, regardless of its policies. ***Id.***

The claims against Alcona County fail because the evidence fails to establish that a constitutional violation occurred. ***Bright v. Gallia Cty., Ohio***, 753 F.3d 639, 660 (6th Cir. 2014).

### A. Fourth Amendment

Plaintiffs allege that the June 2, 2021 site visit was an illegal search. However, the Fourth Amendment does not apply because the Property, a

40-acre uninhabited parcel, falls within the open-fields doctrine. See ***Oliver v. United States***, 466 U.S. 170 (1984).

The Sixth Circuit has consistently held that the Fourth Amendment does not apply open fields because property owners do not have a reasonable expectation of privacy in open fields. ***Sherman v. Michigan Dep't of Nat. Res.***, 799 F.Appx. 318, 321 (6th Cir. 2020) (neither Michigan law nor federal law prevents officers from jumping fences to search rural hunting grounds on reliable reports of illegal activity). ***Widgren v. Maple Grove Twp.***, 429 F.3d 575 (6th Cir. 2005) (Assessor and Zoning Administrator's naked-eye observations of exterior of owner's house from neighboring property and from owner's open fields for tax assessment and zoning enforcement were not searches); see also ***Hollingsworth v. Tennessee Wildlife Res. Agency***, 423 F.Supp.3d 521, 531 (W.D. Tenn. 2019) (collecting cases) (fish and wildlife inspection and installation of cameras on private hunting property did not violate Fourth Amendment).

Plaintiffs argue that the site visit was done within the "curtilage" of the cabins, and therefore, violates the Fourth Amendment under a theory of physical trespass as stated in ***Florida v. Jardines***, 569 U.S. 1, 7 (2013). ***Jardines*** concerned the Fourth Amendment protections afforded to a home and the scope of the implied invitation extended to visitors to enter the

curtilage to call upon a home's occupants. *Jardines* is inapplicable to this case because technical trespass in an open field does not equate to a Fourth Amendment violation. *People v. Frederick*, 500 Mich. 228, 236 n.3, 895 N.W.2d 541, 545 (2017) ("police may trespass and search in open fields without violating the Fourth Amendment because an open field ... is not one of those protected areas enumerated in the Fourth Amendment.") (citing *Oliver*, 466 U.S. at 180; *U.S. v. Jones*, 565 U.S. 400, 411 (2012)).

The curtilage is the outside area immediately surrounding a home for which the Fourth Amendment applies because the location functions as an extension of the home. *U.S. v. Dunn*, 480 U.S. 294, 300 (1987). By contrast, the "open field" is a concept recognized at common law as separate and distinct from the home and curtilage. See *Oliver*, 466 US at 180. As stated in *Dunn*, "an open field is neither a 'house' nor an 'effect'" and thus, not entitled to Fourth Amendment protection. *Dunn*, 480 U.S. at 303. "[T]he term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Id.,* at 304.

Open fields can have structures on them, as they did in *Dunn* (a fenced barn) and *Sherman* (a cottage/hunting cabin). As such, the common law discussion in *Jardines* regarding the implied invitation extended to invitees in a residential setting does not apply to the rural open field. Notably, *Sherman* was decided several years after the U.S. Supreme Court decided *Jardines*. In short, if there is no home, there is no curtilage.

Alcona County has several rural areas where landowners are not present for months. **(Ex D, p.29)**. The evidence in this case establishes that the Skylar Trail Property was recreational vacation and hunting property, not Plaintiffs' home. No one was staying at the Property at the time of the site visit. **(Ex. A, p.168; Ex. D, p.35)**. Moreover, Plaintiffs did not take steps to protect the "original cabin" and mini-cabins from observation by those standing nearby. *Dunn*, 480 U.S. at 303. There was no fencing. The structures were placed near, and visible from, the property line. Testimony regarding posting the property is unclear. **(Ex. A, p.69; Ex. B, p.12, 53; Ex. C, p.100)**. Even so, the Supreme Court noted that posting does not change an open field into a protected space. *Oliver*, 466 U.S. at 179. ("[i]t is not generally true that fences or "No Trespassing" signs effectively bar the public from viewing open fields in rural areas.")

13

There is no genuine issue of material fact: the Skylar Trail Property is an open field as a matter of law. As such, the June 2, 2021 site visit was not an illegal search because the Fourth Amendment did not apply. For these reasons, Defendant Alcona County requests summary judgment in its favor because Plaintiffs' Fourth Amendment rights were not violated.

## B. Fourteenth Amendment Procedural Due Process

Plaintiffs assert they have a vested property right in the buildings and improvements erected on the Property. They allege that the stop work order deprived them of their rights because it failed to follow state building code law, which requires the enforcing agency to give notice before issuing a stop work order. Mich.Comp.Laws § 125.1512(3). Further, they assert that they were not afforded "timely and adequate process", specifically, notice and opportunity for hearing before the stop work order was issued (a "pre-deprivation" hearing). Plaintiffs' claim is without merit.

The Fourteenth Amendment of the Constitution requires that the government provide an individual with due process when taking action against a property interest. The level of process due depends on the right at stake, the risk that the government may make a mistake, and the burdens imposed on the government in imposing a particular procedural

requirement. See **Paeth v Worth Tp**, 483 Fed.Appx. 956 (6th Cir. 2012) (citing **Mathews v. Eldridge**, 424 U.S. 319, 335 (1976)).

As a threshold matter, Plaintiffs do not have a protected property interest at state. In order to establish a property right an individual "must point to some policy, law, or mutually explicit understanding that both confers the benefit[] and limits the discretion of the [government entity] to rescind the benefit." **Braun v. Ann Arbor Charter Twp.**, 519 F.3d 564, 573 (6th Cir. 2008) (internal citations omitted). Only after Plaintiffs establish this right does the Court consider whether the deprivation violates due process. **Chandler v. Vill. of Chagrin Falls**, 296 F. App'x 463, 469 (6th Cir. 2008) (citation omitted). An interest must be concrete, that is, more than a plaintiff's unilateral expectation **Id.** (internal quotation omitted).

The Sixth Circuit held "*the holder of a building or zoning permit* has a constitutionally protected interest and is therefore entitled to proper proceedings prior to a final determination regarding revocation." **Chandler**, 296 F. App'x at 469 (internal citation omitted, emphasis added); **Paeth**, 483 Fed.Appx at 962 ("assuming [plaintiffs] had *a valid permit* and an attendant property interest in continuing construction on their home")(emphasis added). This right exists only when the permit is approved. Notably, this Court rejected the notion that *an application*, short of issuance of the

{01723736-1 }                                                                              15

permit, creates a vested right. ***Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.***, 947 F.Supp.2d 752, 763 (E.D. Mich. 2013) ("Plaintiff had no protected property interest in having its plan for the Property approved.")

In this case, there was no "mutually explicit understating" or law that conferred a benefit on Plaintiffs. Plaintiffs held no permits. This is why Plaintiffs seek equitable relief to prevent the County from enforcing permitting requirements. But state estoppel law does not help Plaintiffs. As explained in section II(B), below, Michigan law applies equitable estoppel only when the property owner has obtained a permit and acted in reliance on that formal approval. As such, Plaintiffs have no recognized property interest in unpermitted construction. Their due process claim fails.

Even if Plaintiffs established a vested property interest in continuing construction on the mini-cabins, the process provided was adequate. Plaintiffs argue the process was constitutionally inadequate because it did not follow a state law requirement that landowners be given notice at least twenty-four hours before a stop work order is issued. What process is due under the Constitution is not equivalent to the procedures a state may require by statute. ***Paeth***, 483 Fed.Appx. at 961-962. For example, in ***Paeth v. Worth Tp***, homeowners challenged the imposition of a stop work

order that did not comply with statutory notice requirements under Michigan law. *Id.*, at 960. The Sixth Circuit found that the stop work order provided constitutionally adequate notice because the order came with instructions on how to apply for a new permit.

In this case, Plaintiffs' interest was "not an extremely weighty one" considering all construction had been completed by the time the order issued. See *Paeth*, 483 Fed.Appx. at 962 (determining that *part-time* construction performed pursuant to *a valid permit* was not an "extremely weighty" interest). Plaintiffs' minimal interest was outweighed by the County's interest in ensuring that permits and inspections are completed in light of the credible evidence that people may be sleeping in the unpermitted and uninspected mini-cabins, which had uninspected electrical wiring and no evidence of required smoke detectors.

The stop work order identified the violations and a phone number to contact the code official. Moreover, a letter issued two days later informed the Plaintiffs that they needed an Alcona County Building permit and zoning approval. This level of notice, which actually resulted Plaintiffs filing permit applications, was sufficient. Permits have not issued due to Plaintiffs' refusal to pay the fees. What is more, Plaintiffs appealed the fees, which were upheld by the County Board. Plaintiffs received constitutionally

adequate process commensurate with the interests at issue. As such, Defendant Alcona County is entitled to summary judgment.

## II.   State Law Claims

### A. Trespass

Plaintiffs bring a state law trespassing claim against the County, as well as co-defendants Krenz, Harvey, Gibson, Schmidt, and Caledonia Township based on the June 2, 2021 site visit. Plaintiffs do not seek money damages against Alcona County. Rather, they seek declaratory judgment and an injunction prohibiting the County and its agents from trespassing onto the Property in the future.   **(Amd Compl, ECF 23, PageID.290)**. Defendant Alcona County is entitled to summary judgment because Plaintiffs have failed to establish a trespass. Moreover, Plaintiffs lack standing to seek equitable relief.

Plaintiffs failed to establish that the County trespassed on their Property. An unauthorized entry upon the private property of another constitutes a trespass. ***Difronzo v. Vill. of Port Sanilac***, 166 Mich.App. 148, 155, 419 N.W.2d 756, 759 (1988). To prove a trespass, the plaintiff must show (1) that they had possession of or title to the land, (2) that there was a physical invasion of the land, (3) that the defendant intended the act

that resulted in the trespass, and (4) that the defendant was responsible for the invasion. ***Rogers v. Board of Rd Comm'rs***, 319 Mich. 661, 30 N.W.2d 358 (1948).

Normally, a public officer who is on the premises of another pursuant to legal authorization is not liable for trespass. ***Dalley v. Dykema Gossett***, 287 Mich.App. 296, 315, 788 N.W.2d 679, 691 (2010) (internal citation omitted). However, if a government agent exceeds the scope of his authority, he may be liable for trespass. ***Antkiewicz v. Motorists Mut. Ins. Co.***, 91 Mich.App. 389, 396, 283 N.W.2d 749, 753, <u>vacated in part on other grounds</u>, 407 Mich. 936, 285 N.W.2d 659 (1979).

In this case, state law authorizes building inspectors to enter onto any premises where a building or structure is being constructed during normal business hours to enforce state or local construction codes. See Mich.Comp.Laws § 125.1512; 2015 Mich.Res.Bldg Code § R104.6.[3] As such, Harvey, acting as the County's representative, was authorized to

---

[3] **104.6 Right of Entry**

"Where it is necessary to make an inspection to enforce the provisions of this code, or where the building official has reasonable cause to believe that there exists in a structure or upon a premises a condition that is contrary to or in violation of this code that makes the structure or premises unsafe, dangerous or hazardous, the building official is authorized to enter the structure or premises at reasonable times to inspect or to perform the duties imposed by this code, provided that if such structure or premises be occupied that credentials be presented to the occupant and entry requested. If such structure or premises is unoccupied, the building official shall first make a reasonable effort to locate the owner or other person having charge or control of the structure or premises and request entry. If entry is refused, the building official shall have recourse to the remedies provided by law to secure entry."

enter onto the property. That Harvey did not first obtain consent or a warrant to enter does not negate the authorization state law provided him to enter onto the property. This is particularly true where, as here, both federal and state law recognize that government officials may lawfully enter onto land that constitutes an open field. See *Frederick*, 500 Mich. at 236 n.3; *People v. Ring*, 267 Mich. 657, 660, 255 N.W. 373, 374 (1934) (upholding indecent exposure conviction, finding officers did not violate Fourth Amendment when entering onto rural, secluded lands of nudist camp, which constituted open field). As such, there is no genuine issue of material fact and the County is entitled to judgment from Plaintiffs' trespass claim as a matter of law.

Even assuming Plaintiffs established that a trespass occurred, they lack standing to seek injunctive or declaratory relief, and therefore, the court lacks jurisdiction to entertain these requests.   "For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of a present right upon established facts. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (internal quotation omitted). Likewise, a party seeking an injunction in federal court must show "a non-speculative threat that he will again experience injury as a result of the alleged wrongdoing." *Werner v. Primax*

*Recoveries, Inc.*, 365 Fed.Appx. 664, 668 (6th Cir. 2010). That requires Plaintiffs to show a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct". *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Where the threat of repeated injury is speculative, there is no standing to seek injunctive relief. *Taylor v. Mich. Dep't of Natural Res.*, 502 F.3d 452, 464–465 (6th Cir. 2007).

Plaintiffs have failed to establish that they have standing to seek equitable relief for their trespass and their Fourth Amendment claim of illegal search. There is no evidence of repeated trespass or illegal search stemming from investigations for building code violations, much less evidence of a present or future threat of trespass. The record shows an Alcona County representative visited the Property on two occasions for building code related matters: June 2, 2021 and July 14, 2021. Yet Plaintiffs claim only the first visit was a trespass. On the second visit, Harvey called ahead and obtained Mr. Mockeridge's consent to enter the property to issue the stop work order and speak with Plaintiffs' sons. There are no allegations or evidence of a present threat of a trespass or illegal search. Nor did Plaintiffs plead or provide evidence that they face a non-speculative threat of a future illegal entry by Alcona County officials engaged in building code enforcement.

Plaintiffs lack standing to seek injunctive or declaratory relief for trespass or illegal search, and therefore, the Court lacks jurisdiction to entertain these requests for relief.  Defendant Alcona County is entitled to summary judgment on the trespass claim, as well as requests for equitable relief on the Fourth Amendment claim.

## B. Equitable Estoppel

Plaintiffs allege the County is "equitably estopped" from enforcing the building code as written against them because they relied on statements by county agents that a building permit was not required for buildings at or smaller than 200 square feet.

Equitable estoppel is appropriate when (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. See ***Howard Twp. Bd. of Trustees v. Waldo***, 168 Mich. App. 565, 575; 425 N.W.2d 180 (1988). Plaintiffs further assert they have "ripened vested rights" as articulated in ***City of Lansing v. Dawley***, 247 Mich. 394, 225 N.W. 500 (1929). Michigan Law does not support Plaintiffs' arguments.

Michigan courts have held that a property right exists once the local government *issues a permit* to an applicant *and* the permit holder has undertaken substantial burling action in reliance on the permit. ***Dingeman Advert., Inc. v. Algoma Twp., Kent Cnty.***, 393 Mich. 89, 98, 223 N.W.2d 689, 691 (1974). When applying equitable estoppel against enforcement of zoning or building codes, the "crucial" fact in ***Dingeman***, ***Dawley***, and other cases within this line of jurisprudence "is whether or not the [government entity] has ever issued a lawful permit to begin with, upon which the holder of the permit has substantially relied to his detriment." 393 Mich. at 98 (internal citations omitted). In short, Michigan law does not support the application of equitable estoppel where no permit has issued.

Notably, *every* Michigan case cited by Plaintiffs in their motion for partial summary judgment involved facts in which the property owner conducted substantial building activity *after obtaining a permit*. ***Dingman***, 393 Mich at 98; see also ***Kalkman v. City of Vill. of Douglas***, No. 306051, 2012 WL 4215834, at *1 (Mich. Ct. App. Sept. 20, 2012) (the zoning administrator approved permit providing owner a vested right to build under the permit.); ***Pittsfield Twp. v. Malcolm***, 375 Mich. 135, 137, 134 N.W.2d 166, 167 (1965) (kennel constructed after building permit issued; owner

entitled to rely on formal government approvals, despite fact that permit erroneously approved).

There is no genuine issue of material fact that Plaintiffs did not obtain permits prior to construction and placement of the mini-cabins. As such, Plaintiffs failed to establish that they are entitled to equitable relief under state law. Accordingly, Alcona County is entitled to summary judgment.

## CONCLUSION AND RELIEF REQUESTED

Plaintiffs' constitutional rights were not violated. The Fourth Amendment did not apply to the June 2, 2021 site inspection, which occurred in an open field. The stop work order did not implicate Plaintiffs' procedural due process rights because they did not have a vested interest. Moreover, the process was constitutionally adequate.

Plaintiffs' state law claims are equally unavailing.  Plaintiffs are not entitled to assert equitable estoppel under Michigan law because they never obtained a permit for the building activity at issue in this case. Moreover, the June 2, 2021 site inspection was authorized by law. Accordingly, Plaintiffs failed to establish their trespass claim against the County. Finally, Plaintiffs failed to plead or present any evidence that they suffer from a non-speculative present or future threat of trespass or illegal

search. As such, they lack standing to seek declaratory or injunctive relief for their trespass and Fourth Amendment claims.

For these reasons, Defendant Alcona County respectfully requests that this Court grant summary judgment in its favor and dismiss the claims against it with prejudice.

Respectfully Submitted,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

*/s/ Kristen Rewa*_____
Allan C. Vander Laan (P33893)
Kristen L. Rewa (P73043)
Attorneys for Defendants
Cummings, McClorey, Davis & Acho. P.L.C.
2851 Charlevoix Drive, SE, Ste. 203
Grand Rapids, MI 49546

Dated: January 9, 2023