UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL J. MOCKERIDGE and
SUSAN J. MOCKERIDGE

                Plaintiffs,              Case No. 1:21-cv-12896

v.                              Honorable Thomas L. Ludington
                                    United States District Judge

ALCONA COUNTY,
by its Board of Commissioners, et al.,

                                    Honorable Patricia T. Morris
                Defendants.         United States Magistrate Judge

_____/

**OPINION AND ORDER (1) OVERRULING AND SUSTAINING PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECCOMENDATION, (2) OVERRULING DEFENDANTS GIBSON AND CALEDONIA TOWNSHIP'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECCOMENDATION, (3) ADOPTING MAGISTRATE JUDGE'S ORDER IN PART, (4) GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART, (5) GRANTING DEFENDANT KRENTZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (6) GRANTING DEFENDANT ALCONA COUNTY'S MOTION FOR SUMMARY JUDGMENT, (7) GRANTING DEFENDANTS HARVEY AND SCHMIDT'S MOTION FOR SUMMARY JUDGMENT IN PART, (8) GRANTING DEFENDANTS GIBSON AND CALEDONIA TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT IN PART, AND (9) ADJOURNING SCHEDULING ORDER**

In 2020, Plaintiffs Michael and Susan Mockeridge began building five "mini-cabins" on their 40-acre wooded property in Northern Michigan to be used primarily as family sleeping quarters. Soon after construction began, neighbors, including Defendant Keith Krentz, started complaining to local government officials about Plaintiffs' property and mini-cabin construction. On June 2, 2021, Defendant Krentz, Defendant Harry Harvey, an Alcona County building official, Defendant David Schmidt, a local health department employee, and Defendant Kenneth Gibson, a Caledonia Township zoning official, entered Plaintiffs property to inspect the mini-cabins. The Defendants did not approach Plaintiffs' mini-cabins using a driveway or a publicly-accessible trail,

but instead used the property of Plaintiffs' northern neighbor. After the inspection, on July 14, 2022, Plaintiffs were served with a "Stop Work Order" which demanded they cease construction and operation because Plaintiffs lacked permits, despite Plaintiffs' allegation that they were told by Defendant Harvey years prior that no permits were necessary.

Plaintiffs responded with a twelve-count Complaint against Defendants Harvey, Gibson, Schmidt, Krentz, Alcona County, and Caledonia Township; not to mention three other Defendants who have since been dismissed. Plaintiffs allege violations of the Fourth Amendment, Fourteenth Amendment procedural due process, and Michigan trespass law, as well as a private party conspiracy to violate 42 U.S.C. § 1983 and an "equitable estoppel/vested rights" claim. In total, the Parties filed five motions for summary judgment, which were all referred to Magistrate Judge Patricia T. Morris. After Judge Morris issued a 47-page Report and Recommendation (R&R) addressing the motions, Plaintiffs filed twelve objections to it and Defendants Caledonia Township and Gibson filed an objection, too. The record now spans over 3,000 pages. This Opinion and Order adds another 74. But for the significant time and effort spent on this case by all the Parties and this Court, it is important to note that the central economic dispute concerns, at most, $2,980—the amount it would cost Plaintiffs to simply obtain the permits Defendants claim Plaintiffs need.

This Opinion and Order addresses Plaintiffs' Objections, ECF No. 126, and Defendants Caledonia Township and Gibson's Objection, ECF No. 127, to the Magistrate Judge's R&R, ECF No. 124. Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), this Court has reviewed *de novo* the portions of the R&R to which Plaintiffs and these Defendants have objected. For the reasons that follow, this Court finds clear error in the R&R. As a result, Plaintiffs are entitled to summary judgment on their Fourth Amendment claims against Defendants Gibson, Schmidt, and Harvey. Plaintiffs are also entitled to summary judgment on their Michigan trespass

claim as to Defendant Krentz. Plaintiffs' Fourth Amendment claim against Defendant Caledonia Township remains outstanding. All other claims will be dismissed, in favor of Defendants.

## I.

## A.

In September 2020, Plaintiffs, Michael J. Mockeridge and Susan J. Mockeridge, purchased the 40-acre "Skylar Trail Property," for "cabining, hunting, enjoying nature, and family gatherings." ECF Nos. 79 at PageID.778; 86 at PageID.1778. After purchasing the property, Plaintiffs decided to install "mini-cabins" on the site as "sleeping quarters for family members." ECF Nos. 79 at PageID.778–79; 83 at PageID.1033.

It is disputed whether Plaintiffs received verbal "preclearance" that no permits were required before installing their mini-cabins. Plaintiffs claim that Kerry Scott, Office Manager and Soil Erosion Inspector at the Alcona County Building Department, ECF No. 83-1 at PageID.1119, and Defendant Harry Harvey, Alcona County Building Department Building Official, advised that Alcona County did not require permits. ECF Nos. 79 at PageID.779; 83 at PageID.1034–35; 83-31 at PageID.1094. Indeed, Plaintiffs claim Defendant Harvey confirmed that no permits were necessary "at least twice" and that "Michigan Residential Building Code equally reflects the same."[1] ECF No. 79 at PageID.779

On the other hand, Scott and Defendant Harvey both deny advising Plaintiffs that permits were not required if the mini-cabins were intended to be used as sleeping quarters. ECF Nos. 83 at PageID.1035; 83-3 at PageID.1178; 83-7 at PageID.1247; 103 at PageID.2695; 85-8 at PageID.1640. Further, Defendants Alcona County and Harvey challenge Plaintiffs' assertion that

---

[1] Plaintiffs cite Section R105.2(a)(i) of the Michigan Residential Code which provides "permits are not required for . . . one-story detached accessory structures, if the floor area does not exceed 200 square feet (18.58m²)." *See* ECF No. 79-23 at PageID.856–57.

Michael Mockeridge spoke to Defendant Harvey *before* June 2022 about whether permits were required. ECF No. 83-1 at PageID.1096. Further, Defendant Harvey argues, instead, that Plaintiff Michael Mockeridge "admitted [during his deposition] that he never spoke directly with Harvey until June 2022, *after* all five cabins were constructed[.]" ECF No. 101 at PageID.2476 (emphasis in original).

Nevertheless, Plaintiffs ordered and erected five fabricated mini-cabins on their property, each less than 200 square feet, contending that they were permitted to do so. *See* ECF Nos. 23 at PageID.274; 79 at PageID.779–80. The Mockeridge family began sleeping in the mini-cabins in June 2021. ECF Nos. 83 at PageID.1033; 83-2 at PageID.1155. The family also erected a sign on their property which read "Key West National Forest, Mockeridge Family Campground." [2] ECF Nos. 79-15; 83 at PageID.1035.

Plaintiffs assert that the purchase and erection of their mini-cabins "irrationally irked" their neighbors, especially Defendant Keith Krentz. ECF No. 79 at PageID.780. Plaintiffs allege that Defendant Krentz "utilized his connections to local government officials" and "gathered together several other neighbors to make anonymous complaints to [the District] Health Department No[.] 2 about the Skylar Trail Property" to "sen[d] [Plaintiffs] packing." *Id.*

On May 18, 2021, Defendant David Schmidt, the Environmental Health Program Coordinator of the District Health Department No. 2., texted Defendant Krentz telling him to

---

[2] This sign sparked significant debate. Defendant Krentz claims this sign first triggered his concern that Plaintiffs were operating an unlicensed campground. *See* ECF No. 126 at PageID.2903–04 n.6. Plaintiffs, on the other hand, claim that the sign was merely a "joke" reflecting that there was a "family debate" about what vacation property to buy. *Id.* While Plaintiff Susan Mockeridge "wanted a place in Key West[,]" the adult Mockeridge children "wanted a place 'up north' in Michigan. The children won out" and bought this sign for Plaintiff Susan Mockeridge as a gift. *Id.* Further, Plaintiffs counter Defendant Krentz's assertion that the sign triggered concern by emphasizing that Defendant Krentz had already filed complaints before the sign's installation. *Id.*

"please get a complaint form filled out and to me ASAP regarding that campground." ECF No. 79-13 at PageID.825. The following day, after receiving Defendant Krentz's and other neighbors' complaints, Defendant Schmidt emailed Defendant Krentz:

> "I received the forms. Just a thought – I cannot do anything about the noise, fire hazard, and disregard to the neighbors. Neither complaint mentions the possible establishment of an unlicensed campground. The forms should mention that issue along with the sanitation issue. Please add that to the forms if you would."

ECF No. 79-9 at PageID.821; *see also* ECF No. 79 at PageID.781. In total, four complaints were submitted to the District Health Department by Plaintiffs' neighbors, including Defendant Krentz, reporting concerns about sanitation, fire hazards, and the operation of an unlicensed campground. *See* ECF Nos. 85 at PageID.1263; 85-8 at PageID.1654; 85-10 at PageID.1695.

After the complaints were filed, Defendant Krentz coordinated a meeting with Defendants (1) Harry Harvey, an Alcona County Building Department Building Official; (2) David Schmidt, the Environmental Health Program Coordinator of District Health Department No. 2; and (3) Kenneth Gibson, the Zoning Administrator of Caledonia Township,[3] (collectively, the "Government Officials") to escort them to the Skylar Trail Property site to observe the mini-cabins for themselves.[4] *See* ECF Nos. 79 at PageID.781–82; 79-13 at PageID.825; 79-36 at PageID.912; 83 at PageID.1036; 85-6 at PageID.1615–16.

On June 2, 2021, Defendant Krentz drove the Government Officials up Skylar Trail and Plaintiffs' driveway to show them the Mockeridge campground sign. ECF No. 85-6 at PageID.1616. But Defendant Krentz then turned around and drove the Government Officials to the property of Curtis Miller, one of Plaintiffs' neighbors and Defendant Krentz's godson. *See*

---

[3] Defendant Gibson resigned from his position as Caledonia Township Zoning Administrator on June 10, 2021. ECF No. 124 at PageID.2846 n. 4.
[4] Importantly, Defendant Alcona County argues that the intent of this site visit was "not to enter onto Plaintiffs' land." ECF No. 83 at PageID.1036.

ECF Nos. 79 at PageID.783; 79-36 at PageID.900. Miller's property shares a boundary line with Plaintiffs' property such that Miller's property is immediately north of Plaintiffs'. *See* ECF No. 79 at PageID.783. Importantly, "there is no regular access to the Skylar Trail Property from this northern side." *Id.* However, there is also no sign on the property prohibiting trespassing, no fence surrounding the mini-cabins, and the mini-cabins were visible from where Defendants were standing on the Miller property. *See* ECF Nos. 85-8 at PageID.1655; No. 85-9 at PageID.1685; 85-10 at PageID.1708. At the time of this site visit, the mini-cabins were unoccupied. *See* ECF No. 83 at PageID.1037.

Although Defendant Krentz asserts he had no intention to enter onto the Plaintiffs' property, ECF Nos. 85-6 at PageID.1617, 1619; 97 at PageID.2404, he did so, along with the Government Officials. *See* ECF Nos. 79-29; 79-30; 79-31. While standing on the Miller property, Defendant Gibson observed that one of the mini-cabins did not appear to adhere to Defendant Caledonia Township's setback requirements. ECF No. 102 at PageID.2500. This prompted Defendant Gibson to physically enter onto Plaintiffs' property and measure the setback from the closest mini-cabin to the property line between Plaintiffs' property and Miller's. ECF Nos. 85-9 at PageID.1686; 102 at PageID.2500. While measuring this setback, Defendant Gibson did not enter any of the mini-cabins nor look in their windows. ECF No. 102 at PageID.2500. Following Defendant Gibson's lead, Defendants Schmidt and Harvey then walked onto Plaintiffs' property to inspect the mini-cabins and the surrounding area. ECF Nos. 85 at PageID.1264; 85-10 at PageID.1695, 1701. Defendant Harvey looked through the windows of the mini-cabins using a small flashlight and observed that each were outfitted with electricity and contained bunk beds but no smoke detector. *See* ECF No. 85-8 at PageID.1636, 1655. At some point, one of the Government Officials asked Defendant Krentz to "come onto Plaintiffs' property and take photographs." ECF

No. 97 at PageID.2404. Defendant Krentz did so. *See* ECF No. 79 at PageID.783–84. Importantly, Defendants did not obtain a warrant authorizing this "site visit" and Plaintiffs did not consent. *See* ECF Nos. 23 at PageID.278; 79 at PageID.783; 85 at PageID.1264; 85-10 at PageID.1696; 97 at PageID.2405.

On June 16, 2021, Defendant Schmidt mailed a letter to Plaintiffs on behalf of District Health Department No. 2 stating "[b]etween May 19, 2021 and May 26, 2021, [District Health Department No. 2] received several complaints stating that [Plaintiffs were] operating an unpermitted and unlicensed campground at [the Skylar Trail Property]" and that "[o]n June 2, 2021, [Defendant Schmidt] visited the site (along with representatives from the Alcona County Building Department and Caledonia Township) to investigate the validity of these complaints." ECF No. 79-18 at PageID.835. The letter detailed Defendants' findings during the June 2 site visit, classified the Skylar Trail Property as a campground, and informed Plaintiffs that they were in violation of Section 12506(b)(1) of Part 125 of the Public Health Code, which states that a "person shall not operate a campground without a campground license issued by the department[.]" *See id.* The letter instructed Plaintiffs, "if you plan to continue operating a campground . . . , you are required to begin the licensing process . . . within 30 days[.]" *Id.* at PageID.836 (emphasis omitted). Plaintiffs dispute the assertions in this letter and contend that their mini-cabins are "not within the definition or legal scope of a campground under Michigan law." ECF No. 23 at PageID.275.

On July 14, 2021, Defendant Harvey once again visited the Skylar Trail Property with Defendant Harvey and Cyndi Aspey, the Zoning Official and Supervisor for Caledonia Township. ECF No. 79 at PageID.786. Although Plaintiffs were not present during this visit, some of their adult children were. *Id.* Defendant Harvey had "pre-drafted" a Stop Work Order and asked Plaintiffs' adult children if he could inspect the mini-cabins. *Id.* at PageID.786–87. Plaintiffs' son,

Michael, consented. *See id.*; ECF No. 85-8 at PageID.1649. After the inspection, Defendant Harvey served the Stop Work Order which alleged that the mini-cabins were in violation of Section R105.1 of "the Building Code," Section R.114.1 of "the Code," and "Article ?, Section ?" of "the Zoning Ordinance." ECF No. 23-5 at PageID.313 (question marks in original). Accordingly, the order stated "IT IS HEREBY ORDERED . . . that all persons, cease, desist from, and STOP WORK at once pertaining to the construction, alterations, or repairs on [the Skylar Trail Property]. *Id.* (emphasis in original). On July 16, 2021, Defendants served the Stop Work Order to Plaintiffs by U.S. mail. *See id.* at PageID.312; ECF No. 85 at PageID.1265

On July 30, 2021, Plaintiff Michael Mockeridge applied for the building permits. ECF No. 79 at PageID.788. Soon after, Plaintiffs claim they were called by an Alcona County Building Department representative who stated that the County "would issue the permits but would be imposing a penalty," doubling the permit price of $1,490 to $2,980 due to "work being started before permits were purchased."[5] *Id.* Plaintiff Michael Mockeridge "immediately complained to the Alcona County Board of Commissioners and called upon the Board members for help . . . to issue any possible permit with no fees." *Id.*

On August 11, 2021, the Alcona County Board of Commissioners conveyed a "special meeting to discuss the . . . Skylar Trail Property" without providing notice to Plaintiffs. *Id.* at PageID.789; *see also* ECF No. 23 at PageID.280. At the meeting, Defendant Harvey, who was not a member of the Alcona County Board of Commissioners, ECF No. 23 at PageID.280, "requested

---

[5] Plaintiffs claim "this doubling-penalty was done at the direction of [Defendant] Harvey." ECF No. 79 at PageID.788. But the Alcona County Building Permit Application form provides, at the very top, that "**PERMIT WILL DOUBLE IF WORK IS STARTED BEFORE PULLING A PERMIT.**" *Application for Building Permit*, ALCONA CNTY. BLDG. DEP'T, https://alconacountymi.com/wp/wp-content/uploads/2021/08/Building-permit-new-20211.pdf (last visited Aug. 29, 2023) [https://perma.cc/6YXN-BHP9] (emphasis in original).

the Board move into a closed session to discuss Building Department matters." ECF Nos. 79 at

PageID.789; 79-27 at PageID.866. The Board went into closed session at 3:06 PM and returned at

3:44 PM. ECF No. 79-27 at PageID.866. Immediately upon returning to the open session, the

Board approved a motion to "deny the request of [Plaintiff] Michael Mockeridge to waive the

building permit fees." *Id.*; *see also* ECF No. 79 at PageID.789.

### B.

On January 21, 2022, Plaintiffs filed their Amended Complaint, ECF No. 23, which

contained the following claims:

| Count | Defendant(s) | Claim |
|-------|--------------|-------|
| I | (1) Alcona County<br>(2) Harry Harvey | Deprivation of Fourteenth Amendment procedural due process by issuing the July 14, 2021 Stop Work Order without pre-deprivation notice nor hearing |
| II | (1) Alcona County<br>(2) Harry Harvey | Equitable estoppel because Plaintiffs relied on Defendant Harvey's representations that no permit was needed and were prejudiced as a result |
| III | (1) Harry Harvey<br>(2) Kenneth Gibson<br>(3) David Schmidt<br>(4) Alcona County<br>(5) Caledonia Township | Deprivation of Fourth Amendment rights under the color of law by searching the Skylar Trail Property on June 2, 2021 without a warrant or Plaintiffs' consent |
| IV | (1) Harry Harvey<br>(2) Kenneth Gibson<br>(3) David Schmidt<br>(4) Alcona County<br>(5) Caledonia Township<br>(6) Keith Krentz | Trespass under Michigan law by physically intruding on the Skylar Trail Property on June 2, 2021 without Plaintiffs' consent |
| V | (1) Keith Krentz | Private party conspiracy with Defendants Harvey, Gibson, Schmidt, Alcona County, and Caledonia Township to deprive Plaintiffs of rights, in violation of 42 U.S.C. § 1983 |
| VI | (1) Carolyn Brummund<br>(2) Terry Small<br>(3) Dan Gauthier<br>(4) William Thompson<br>(5) Adam Berge | Violating the Michigan Open Meetings Act by going into closed session on August 11, 2021 |
| VII | (1) Alcona County | Violating the Michigan Open Meetings Act by going into closed session on August 11, 2021 |

*See* ECF No. 23 at PageID.282–95. Importantly, on June 27, 2022, Counts VI and VII were dismissed with prejudice based on the Parties' stipulation. ECF No. 65.[6]

In January 2023, the Parties filed the following five motions for summary judgment:

| ECF No. | Motion | Relevant Claims |
|---|---|---|
| 79 | Plaintiffs' Motion for Partial Summary Judgment | (a) Count I—Procedural Due Process<br>(b) Count II—Equitable Estoppel/Vested Rights<br>(c) Count III—Fourth Amendment, as to the Government Official Defendants (Harvey, Gibson, and Schmidt)[7]<br>(d) Count IV—Michigan Trespass[8] |
| 80 | Defendant Krentz's Motion for Partial Summary Judgment | (a) Count V—Private Party § 1983 Conspiracy |
| 83 | Defendant Alcona County's Motion for Summary Judgment | (a) Count I—Procedural Due Process<br>(b) Count II—Equitable Estoppel/Vested Rights<br>(c) Count III—Fourth Amendment<br>(d) Count IV—Michigan Trespass |
| 85 | Defendants Harvey and Schmidt's Motion for Summary Judgment | (a) Count I—Procedural Due Process<br>(b) Count II—Equitable Estoppel/Vested Rights<br>(c) Count III—Fourth Amendment<br>(d) Count IV—Michigan Trespass |
| 86 | Defendants Gibson and Caledonia Township's Motion for Summary Judgment | (a) Count III—Fourth Amendment<br>(b) Count IV—Michigan Trespass |

On March 17, 2023, this Court referred all five summary judgment motions to Magistrate Judge Patricia T. Morris. *See* ECF No. 107.

On July 26, 2023, Judge Morris issued her R&R, ECF No. 124, recommending that Plaintiffs' Motion for Summary Judgment be denied and that all Defendants' Motions for Summary Judgment be granted. *Id*. at PageID.2843.

---

[6] The Stipulation and Order erroneously states that "Count V and VI of the Amended Complaint . . . will be dismissed with prejudice[.]" *See* ECF No. 65 at PageID.715.

[7] On this claim, Plaintiffs only sought summary judgment as to liability, reserving the issue of damages for trial. ECF No. 79 at PageID.791.

[8] On this claim, as to Defendant Krentz only, Plaintiffs seek summary judgment as to liability, reserving the issue of damages for trial. ECF No. 79 at PageID.794

First, Judge Morris recommended dismissing Plaintiffs' Procedural Due Process claims (Count I) because, even if Plaintiffs received verbal clearance from Defendant Harvey that no permit was needed—a genuine question of material fact—such "verbal clearance alone" would not create a vested property right to be deprived. *Id.* at PageID.2854–58. Thus, Judge Morris found it unnecessary to analyze the "second prong" of the due process test—whether the process provided by Defendants was constitutionally adequate. *Id.* at PageID.2858.

Second, Judge Morris recommended dismissing Plaintiffs' Equitable Estoppel claim (Count II) because (1) such claim is not cognizable under Michigan law; and (2) even if Plaintiffs' objective was to only advance the "theory" to allege an acquired vested property right, Plaintiffs cannot do so because there remain genuine questions of material fact as to whether Defendants ever advised Plaintiffs that no permits were needed, let alone whether Plaintiffs' reliance on such advice would be justified. *See id.* at PageID.2859–65.

Third, Judge Morris recommended dismissing Plaintiffs' Fourth Amendment Claims (Count III) against the Government Official Defendants (Harvey, Gibson, Schmidt) because (1) Plaintiffs' mini-cabins fall within "curtilage," subject to Fourth Amendment Protection, ECF No. 124 at PageID.2868; and (2) Plaintiffs had a reasonable expectation of privacy in their mini-cabins under the *Katz* framework, *see id.* at PageID.2876; but (3) such search did not violate the Fourth Amendment given the modest nature of the intrusion and Defendants' investigative purpose, *see id.* at PageID.2876–79; and (4) even if Defendants' search violated the Fourth Amendment, all of the Government Official Defendants would be entitled to qualified immunity. *Id.* at PageID.2879. Judge Morris also recommended dismissing Plaintiffs' Fourth Amendment Claims against the municipal Defendants (Alcona County and Caledonia Township) for the same reasons. *See id.* at PageID.2885–86.

Fourth, Judge Morris recommended dismissing Plaintiffs' Private Party § 1983 Conspiracy claim against Defendant Krentz (Count V) because Plaintiffs identify insufficient evidence to support their allegations that Defendant Krentz entered into an agreement with the Government Officials to specifically deprive Plaintiffs of their rights. *See id.* at PageID.2880–85.

Finally, as to the "only surviving cause of action"—Plaintiffs' Michigan trespass claim (Count IV)—Judge Morris recommended that this Court decline to exercise supplemental jurisdiction because no federal claims would remain if the R&R was fully adopted and no compelling reason exists to retain jurisdiction. *Id.* at PageID.2880.

On August 9, 2023, Plaintiffs filed twelve Objections to the R&R, ECF No. 126, and Defendants Gibson and Caledonia Township filed one joint Objection to the R&R, ECF No. 127.

## II.

### A.

Under Civil Rule 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Any objection which fails to identify specific portions of the R&R will not be reviewed. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review[.]"); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("A general objection . . . is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). Additionally, parties

cannot "raise at the district court stage new arguments or issues that were not presented" before the R&R was issued. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

If a party makes a timely, specific objection, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). When reviewing a report and recommendation *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, this Court is free to accept, reject, or modify the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

## B.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis omitted))).

In reviewing cross-motions for summary judgment, courts must apply the proper standard of review for each motion and may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)) (internal quotation marks omitted)).

## III.

The Parties raised a total of thirteen Objections to the R&R. Each will be addressed in turn, proceeding in order of the counts in Plaintiffs' Amended Complaint.

### A.  Procedural Due Process

Judge Morris concluded that Plaintiffs did not have a vested property right in the construction of their mini-cabins "as they were not issued a permit" and the Defendant's prior "verbal clearance" over the phone "cannot be afforded the same benefits and protections as those afforded to individuals who receive a building permit as the result of approval of a written application." *See* ECF No. 124 at PageID.2856–58. As Judge Morris found no property right, she did not analyze the "second prong" of the test—whether the process provided for any hypothetical deprivation was violative of the Fourteenth Amendment. *See* ECF No. 124 at PageID.2854–59.

Plaintiffs object and argue (1) they have a right to construct their mini-cabins because "building permits are not required under Michigan law;[]" or, alternatively (2) Plaintiffs "formed [a] vested right by the legal preclearance given by officials of Alcona County that building permits are not required, and then acted in direct reliance upon that legal clearance[.]" ECF No. 126 at PageID.2942. Plaintiffs argue Judge Morris "erred in not even considering the first theory and erred on law as to the second." *Id.* Plaintiffs emphasize that, if a property right is found, it was deprived by Defendants' July 2021 Stop Work Order without "any prior meaningful notice or opportunity to be heard[.]" ECF No. 126 at PageID.2949.

The Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Procedural due process, "at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest

requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012).

### 1.   Legitimate Property Right: Plaintiffs' Objection No. 7

### a. Michigan Building Code

The first issue is whether Plaintiffs had a valid property interest in their mini-cabins. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . [they] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Whether a property interest is constitutionally protected does not depend on the Constitution itself, but rather on 'existing rules or on understandings that stem from an independent source, such as state law.'" *Naturale & Co. v. City of Hamtramck*, 614 F. Supp. 3d 575, 579 (E.D. Mich. 2022) (quoting *Roth*, 408 U.S. at 577).

Plaintiffs argue "they have (and have *always* had) the right to freely use the property for installation and use of the mini-cabins without any needed permit[.]" ECF No. 126 at PageID.2942. Plaintiffs cite a Southern District of Ohio case for the proposition that "an established 'protected property right' exists in land where a plaintiff 'proves that the . . . government actor lacked the discretion to deny his proposed land use.'" *Id.* at PageID.2942 (citing *Ohio ex rel. Faulkner v. City of Middletown*, No. 1:15-CV-122, 2016 WL 3855203 at *6 (S.D. Ohio July 15, 2016*), aff'd sub nom. Ohio ex rel. Faulkner v. City of Middletown, Ohio*, 688 F. App'x 377 (6th Cir. 2017). In attempt to show that Defendants lacked the discretion to deny their mini-cabins, Plaintiffs cite Section 105.2 of the "Michigan Residential Building Code" and assert that it exempts the mini-cabins from the building permit requirements because the mini-cabins are accessory structures less than 200 square feet in size. *See* ECF No. 79–23 at PageID.857.

But this argument is untimely. Although Plaintiffs asserted they did not need a permit to construct the mini-cabins under Michigan housing code in their Motion for Summary Judgment, *see* ECF No. 79 at PageID.779, 785–86, and Replies to Defendants' Responses to their Objections, *see* ECF Nos. 104 at PageID.2716, 105 at PageID.2726, Plaintiffs never asserted that this created a property right for due process purposes[9] until *after* Judge Morris issued the R&R. *See* ECF No. 126 at PageID.2942. Consequently, Plaintiffs waived this argument. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010) (unpublished) ("A claim raised for the first time in objections to a magistrate judge's report is deemed waived." (cleaned up)).

In the alternative, even if Plaintiffs' references to the code's alleged exemption somehow impliedly invoked this argument, Plaintiffs have not shown they are entitled to summary judgment. Notably, the question remains whether Plaintiffs, in fact, ever needed a permit. Plaintiffs point to Rule 105.2 of the Michigan *Residential* Code—which Plaintiffs refer to as the "Michigan Residential Building Code"—which provides that "one-story detached accessory structures" not exceeding 200 square feet do not require a permit. ECF Nos. 79 at PageID.779; 79-23 at PageID.857. But Defendants cite Rule 105.2 of the Michigan *Building* Code which exempts from building permits only "one-story detached accessory structures used as tool and storage sheds, playhouses, and similar uses, provided the floor area does not exceed 120 square feet." *See* ECF No. 101 at PageID.2477. It is unclear whether the Michigan *Building* Code or the Michigan *Residential* Code applies and the Parties seem to conflate the two. *See* ECF Nos. 101 at PageID.2446 (arguing Plaintiff "mischaracterize[d] the Michigan Building Code"); 104 at

---

[9] Throughout their pleadings, Plaintiffs instead based their procedural due process claims on a *vested rights* theory, discussed *infra* Section III.A.1.b, arguing that Defendant Harvey's oral assertion that Plaintiffs needed no permit *vested* a property right in Plaintiffs that was subsequently deprived by Defendants without notice via the July 2021 Stop Work Order. *See* Compl., ECF No. 23 at PageID.284–86; Mot. for Partial Summ. J., ECF No. 79 at PageID.794–98.

PageID.2717 (arguing Defendant Harvey incorrectly stated Rule 105.2 of the "Michigan Residential Building Code"). Notably, under the Michigan *Residential* Code, it is doubtful that Plaintiffs' mini-cabins would be exempt from the permit requirement as they are akin to dwellings and not "sheds" or "playhouses."[10] *See* ECF Nos. 79 at PageID.778–79 (noting that the cabins would be used as "sleeping quarters for family members"); No. 85-8 at PageID.1636, 1655 (describing how the mini-cabins had bunk beds and were outfitted with electricity).

In addition to the Building and Residential Codes, § 12506(1) of the Michigan Public Health Code requires permits to operate a "campground." MICH. COMP. LAWS § 333.12506. The Health Code defines a campground as "a parcel or tract of land under the control of a person in which sites are offered for the use of the public or members of an organization, either free of charge or for a fee, for the establishment of temporary living quarters for 5 or more recreational units." *See* ECF No. 79–18 at PageID.835 (citing MICH. COMP. LAWS § 333.12501(a)). Importantly, a "recreational unit" is defined as "a tent or vehicular type structure, primarily designed as temporary living quarters for recreational, camping, or travel use, which either has its own motive power or is mounted on or drawn by another vehicle whi[c]h is self-powered." *Id.* (citing MICH. COMP. LAWS § 333.12501(f)). Plaintiffs claim "the mini-cabins are not within the definition of a recreational unit." ECF No 126 at PageID.2909 n. 11. Perhaps—but not necessarily. While not squarely a "tent" or "vehicular-type structure," the mini-cabins were primarily designated as temporary living quarters for recreational and camping use. *See* ECF Nos. 79 at PageID.778–79.

---

[10] Indeed, the Rule 105.2 of the *Building Code* may be why Defendant Harvey informed Plaintiffs following the June 2 site visit that a building permit was required if individuals were going to sleep in the mini-cabins. *See* ECF No. 79 at PageID.785.

In sum, Plaintiffs' due process arguments based on Michigan code are untimely and, even if they were timely, Plaintiff is not entitled to summary judgment as questions of material fact remain.

### b. Vested Property Right

Until Plaintiffs' Objections to the R&R, they based their procedural due process claims on *vested* rights, alleging they received a vested property right in building the mini-cabins when Defendant Harvey told Plaintiffs they needed no permit. But, as Judge Morris correctly concluded, the Sixth Circuit requires more.

Courts apply an "entitlement test" to determine whether plaintiffs have vested property rights under state law, subject to Fourteenth Amendment due process protection. *Id.*; *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008). A protectable property right exists only if (1) a plaintiff has a legitimate claim of entitlement" or (2) a justifiable expectation in the approval of his plan. *Roth*, 408 U.S. at 577; *Dorr*, 305 F. App'x at 275; *Naturale*, 614 F. Supp. 3d at 579. Importantly, the key inquiry in determining whether a property right has vested is "possession of a valid building permit coupled with substantial reliance [and] actual construction" *Naturale*, 614 F. Supp. 3d at 579; *Dorr*, 305 F. App'x at 275.

Although Plaintiffs undoubtedly relied on Defendant Harvey's alleged verbal clearance that no permits were needed and began mini-cabin construction, Plaintiffs never possessed a building permit. Judge Morris found the alleged verbal clearance "falls short of the process an individual is required to undertake to obtain a building permit in Alcona County." *Id.* at PageID.2856–57 ("A verbal clearance over the phone based on the representations of an individual cannot be afforded the same benefits and protections as those afforded to individuals who obtain a building permit as the result of a written application.").

Plaintiffs object, claiming:

> [T]he law recognizes that certain 'protected property rights' will 'ripen' as a 'vested right' when the government makes an incorrect representation about permits and the owner, in reliance on that representation, undertakes legally sufficient 'work of a 'substantial character.' These are known as 'vested' or 'acquired vested rights' arising under the doctrine of by equitable estoppel.

ECF No. 126 at PageID.2943 (citing to *Mohamed v. Cnty. of Sacramento*, No. 216CV01327JAMEFB, 2017 WL 772145 (E.D. Cal. Feb. 28, 2017)). But the relevance of this non-binding Eastern District of California case is unclear. Although *Mohamed* found the plaintiffs had alleged a due process claim "under an equitable estoppel theory," it did so only because California state law provided that "an owner of property acquires a vested right to construct a building where the conduct of the government amounts to a representation that such construction is fully approved and legal, and in reliance on such representation the owner materially changes position." *Id.* (quoting *Stanson v. San Diego Coast Reg'l Comm'n*, 101 Cal. App. 3d 38, 49 (1980)). But California law is not Michigan law. Seemingly aware of this, Plaintiffs go on to assert that, "Michigan has adopted the same general legal theory" and cite a 1974 Michigan case which provides:

> Once a [local government] issues a valid permit to an applicant, that applicant has every reason and right to rely thereon in his business dealings. Permits are not issued by local authorities when the contemplated use for which the permit is issued conflicts with a local zoning ordinance. Should these ordinances change, the average holder of such a permit, even if he had notice of the change of ordinance, would not necessarily presume that the new ordinance applied to him. After all, he has within his possession an official document of the local community authorizing him to proceed with his contemplated project.

ECF No. 126 at PageID.2946 (quoting *Dingeman Adv, Inc. v. Algoma Twp.*, 223 N.W.2d 689, 691 (Mich. Ct. App. 1974)). But, as the case makes clear, in *Dingeman*, the plaintiff was found to have a vested property right because, in addition to reliance and substantial construction, the plaintiff

also secured a permit. *See id.* (Noting that only the "issuance of a permit" plus "substantial reliance thereon" will create vested property rights.)

Judge Morris found that "[t]he key to vested rights is both substantial construction and the granting of an actual **permit**." *Id.* at PageID.2858 (emphasis in original). But Plaintiffs had no permit and Defendant Harvey's alleged verbal clearance does not change that fact.

In sum, Plaintiffs' reliance on the Michigan Building Code is untimely and Judge Morris correctly analyzed the doctrine of vested property rights. Plaintiffs' Objection No. 7 will be overruled because Plaintiffs lack a property right for procedural due process purposes.

### 2. Deprivation and Lack of Process: Plaintiffs' Objection No. 8

Since Judge Morris found that Plaintiffs' Procedural Due Process claim (Count I) failed at the first step as Plaintiffs had no property interest, Judge Morris found it unnecessary "to address the second prong of the test as to whether the state official denied Plaintiffs sufficient process." ECF No. 124 at PageID.2858–59. Plaintiffs' Objection No. 8 argues that, if a vested property right was found, the July 2021 Stop Work Order deprived Plaintiffs of this right with no process, in violation of the Fourteenth Amendment. ECF No. 126 at PageID.2949–50.

But this Objection is only worth addressing *if* Judge Morris clearly erred in finding that Plaintiffs lacked a property interest in their mini cabins. She did not. Accordingly, since Plaintiffs have not shown a valid property interest to be deprived without process, Plaintiffs Objection No. 8 will also be overruled.

### B. Equitable Estoppel/Vested Rights: Plaintiffs' Objection No. 9

Similar to the first prong of procedural due process, in Count II of the Complaint, labeled "Equitable Estoppel / Vested Rights," Plaintiffs "seek declaratory and injunctive relief in the form of equitable estoppel and a declaratory judgment that Plaintiffs . . . have ripened vested rights

- 21 -

pursuant to the vest-rights doctrine." ECF No. 23 at PageID.284–86. In their Motion for Partial Summary Judgment, Plaintiffs assert, again, that they have a vested property right to build their mini-cabins because (1) Defendant Harvey told them they needed no permit, and (2) they constructed the mini-cabins in reliance. ECF No. 79 at PageID.794–95. Again, Defendants attempt to analogize to otherwise distinguishable precedent that requires a permit for the formation of a vested right, arguing Defendant Harvey's "'legal clearance' is the functional equivalent of a permit—i.e. authorization to proceed." *See id.* at Page.ID.796. Plaintiffs then assert that "some courts have utilized an equitable estoppel theory[]" when one party "has changed his position in reasonable reliance on the assertions of another, even if upon a governmental mistaken assertion." *Id.* at PageID.796–97.

Judge Morris disagreed. Specifically, Judge Morris recommended dismissal because "equitable [estoppel] is not a cause of action." ECF No. 124 at PageID.2862. Alternatively, recognizing that Plaintiffs may be using equitable estoppel as a *theory* of vested property rights (despite the fact that Plaintiffs pleaded this claim as a distinct cause of action), Judge Morris found the theory inapplicable for the same reason Plaintiffs' due process vested rights argument fails: Plaintiffs were never issued a permit. *See* ECF No. 124 at PageID.2863.

In Plaintiffs' Objection No. 9,[11] Plaintiffs argue there is "no material question of fact that Plaintiffs have secured a 'vested right' to the existence of their cabins without the need for permits[,]" under either traditional vested rights analysis or the doctrine of equitable estoppel. *See* ECF No. 126 at PageID.2951. But Plaintiffs misconstrue both legal theories.

---

[11] Plaintiffs note this Objection "closely relates to Objection No. 7," concerning the formation of vested property rights for due process purposes. ECF No. 126 at PageID.2950.

First, as discussed above, Judge Morris's finding that Plaintiffs lacked a vested property right, for due process purposes, because they lacked an actual permit was not clearly erroneous. *See* discussion *supra* Section III.A.1.b. To the extent Plaintiffs' Objection No. 9 merely re-hashes the existence of a vested property right for due process purposes, it is overruled.

Second, turning to Plaintiffs' equitable estoppel arguments, equitable estoppel "may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *21st Century Premier Ins. Co. v. Zufelt*, 889 N.W.2d 759, 765 (Mich. Ct. App. 2016) (quoting *West American Ins. Co. v. Meridian Mut. Ins. Co.*, 583 N.W.2d 548 (Mich Ct. App. 1998)). Typically, "the principle of equitable estoppel is [raised as] an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract." *Id.* (quoting *Morales v. Auto–Owners Ins. Co.*, 582 N.W.2d 776 (Mich. 1998)). "Courts are to apply equitable estoppel sparingly and only in the most extreme cases[.]" *Fuller v. GEICO Indem. Co.*, 872 N.W.2d 504, 510 (Mich. Ct. App. 2015). Michigan Courts have routinely emphasized that equitable estoppel is not a distinct cognizable legal claim. *See Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. Ct. App. 1992) ("Although there may be occasional aberrant opinions, the general rule is that equitable estoppel is a doctrine, not a cause of action."); *Lathrup Inv. Co. v. W. Am. Ins. Co.*, No. 212269, 2000 WL 33391105, at *1 (Mich. Ct. App. Dec. 15, 2000); *Marreto v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275 (Mich. Ct. App. 1993); *Tubby's Inc. v. Lasko*, No. 2229542, 2002 WL 31160310, at *2 (Mich. Sept. 27, 2002) ("Equitable estoppel is not an independent cause of action[.]").

Plaintiffs rely on two cases to support their contention that they had a vested property right in their mini-cabins based on a theory of equitable estoppel: *Kalkman v. City of Vill. of Douglas*, No. 306051, 2012 WL 4215834 (Mich. Ct. App. Sept. 20, 2012); and *Pittsfield Township v. Malcom*, 134 N.W.2d 166 (Mich. 1965). In *Kalkman*, a city ordered the plaintiff to stop constructing his home as he allegedly violated city zoning ordinances, despite the plaintiff's permit and the investment of $65,000 in construction. *See Kalkman*, 2012 WL 4215834 at *1. The plaintiff sued, claiming a vested property right to complete the construction. *Id.* The Michigan Court of Appeals affirmed the trial court's conclusion that the city was "equitably estopped from interfering with [the plaintiff's] construction" because the plaintiff invested construction costs in reliance on a *facially valid permit. Id.* at *4 (emphasis added). Similarly, in *Pittsfield*, the Michigan Supreme Court equitably estopped a municipality from enforcing zoning regulations against a kennel owner who was erroneously issued a building permit after he constructed the kennel in reliance on the permit. *See generally Pittsfield*, 134 N.W.2d at 171–73.

Plaintiffs' argument focuses on the forest but ignores the trees. As Judge Morris explained in the R&R, "neither *Kalkman* nor *Pittsfiled* support [Plaintiffs'] claim to equitable estoppel as there is one integral factor, which was present in both cases, that is notably missing here—a permit." ECF No. 124 at PageID.2863. The *Kalkman* court even emphasized the importance of permits for the doctrine of equitable estoppel to apply:

> As [the Michigan] Supreme Court explained in *Dingeman Advertising, Inc v. Algoma Twp,* by definition, a permit is an official document authorizing its holder to proceed with the proposed project and thus, "[o]nce a city or township issues a valid permit to an applicant, that applicant has every reason and right to rely thereon in his business dealings." By issuing [plaintiff] a building permit, the [defendant] induced [plaintiff] to believe that he was permitted to construct the proposed residence, and [plaintiff] changed his position in reliance on that permit to the extent that he would be prejudiced if the City were now permitted to revoke it.

*Kalkman*, 2012 WL 4215834, at *4 (internal citations omitted).

- 24 -

By contrast, as Judge Morris found, "the facts in the instant actions involve nothing more than an alleged brief telephone conversation (i.e., an exchange of words without any submission of documents or opportunity through assessment of said request)". ECF No. 124 at PageID.2863. But Judge Morris concluded that the true "death knell" to Plaintiffs' summary judgment finding on their equitable estoppel claim is not their lack of permits but something "far simpler—[the] presence of . . . genuine issue[s] of material fact" as to (1) whether any Defendant ever told Plaintiffs that no building permit was needed, and (2) whether Plaintiffs' reliance on the alleged verbal confirmation was justified.[12] *Id.* at PageID.2864

Because Judge Morris did not clearly err in finding (1) equitable estoppel is not a cognizable claim under Michigan law, and (2) Plaintiffs' lack of permits renders equitable estoppel inapplicable to their claims even as a theory of vested property rights, Plaintiffs' Objection No. 9 will be overruled.

### C.  Fourth Amendment

In Count III of their Amended Complaint, Plaintiffs alleged that individual Defendants Harvey, Gibson, and Schmidt, as well as municipal Defendants Alcona County and Caledonia Township violated Plaintiffs' Fourth Amendment rights during the June 2 "site visit" to Plaintiffs'

---

[12] Plaintiffs' Counsel remarked that this finding "left [him] with some confusion" because it is "totally incongruous" that Judge Morris could, simultaneously, recommend *denying* Plaintiffs' motion for summary judgment on this issue due to these genuine issues of material fact but also recommend *granting* the Defendants' motions for summary judgment on this issue. ECF No. 126 at PageID.2951. It is not. The genuine issue of material fact as to whether Defendant Harvey, or any other Defendant, told Plaintiffs they needed no permit is fatal to Plaintiffs' summary judgment motion because, if no Defendant told Plaintiffs they did not need a permit, Plaintiffs have no *vested* property right as there was nothing for them to rely on in the first instance. However, at the same time, Defendants' motions for summary judgment on this issue can be granted because, *even if* they gave Plaintiffs verbal preclearance, the preclearance does not rise to the level of an issued permit, a precedential requirement for a vested right under both due process and equitable estoppel theories. *See* discussions *supra* Section III.A.1.b and Section III.B.

Skylar trail property. ECF No. 23 at PageID.286–88. Plaintiffs only sought partial summary judgment against the *individual* Government Official Defendants on this claim but the *municipal* defendants filed cross-motions for summary judgment. Judge Morris recommend denying Plaintiffs' motion and granting Defendants Alcona County and Caledonia Township's motions. If adopted, this recommendation would dismiss Plaintiffs' Fourth Amendment claims as to all defendants.

### 1. Government Official Defendants: Harvey, Gibson, and Schmidt

When analyzing the Fourth Amendment liability of the Government Official Defendants, Judge Morris found (1) Plaintiffs' mini-cabins fell within the "curtilage" of Plaintiffs' home; (2) Plaintiffs had a reasonable expectation of privacy in the cabins and the surrounding area, subject to Fourth Amendment Protection, ECF No. 124 at PageID.2868, 2876; but (3) Defendants Harvey, Schmidt, and Gibson's[13] search did not violate Fourth Amendment because the intrusion was minimal and their purpose was administrative, *id.* at PageID.2879; and (4) even if these Defendants violated the Fourth Amendment, all would be entitled to qualified immunity. *Id.*

Defendants Gibson and Caledonia Township jointly objected to the first finding, arguing that Plaintiffs mini-cabins are not within the curtilage but, instead, are "open fields" unentitled to Fourth Amendment protection. ECF No.127. Plaintiffs object to all other Fourth Amendment findings. In Objection No. 1, Plaintiffs argue (a) Judge Morris did not apply the correct Fourth

---

[13] In the R&R, Defendant Gibson is not discussed in tandem with Defendants Harvey and Schmidt. Judge Morris recommended granting Gibson's motion for summary judgment and denying Plaintiffs' motion for summary judgment, as to the Fourth Amendment claim, "[f]or the reasons discussed . . . as to Defendant Schmidt." ECF No. 124 at PageID.2886. This separate discussion prompted a separate Objection by Plaintiffs. *See* ECF Nos. 124 at PageID.2886; 126 at PageID.2931–36 (Objection No. 6). Although this objection will be discussed separately, Defendants Gibson, Harvey, and Schmidt will be discussed in tandem as all were involved in the June 2 site visit and search.

Amendment framework because she "anayz[ed] the case solely under the *Katz* test . . . when the Plaintiffs have been clear that [they] are asserting the *Jones* theory of Fourth Amendment liability[,]" ECF No.126 at PageID.2918, 2920; and (b) both de minimums and administrative search doctrines are inapplicable to Defendants' June 2 site visit. *Id.* at PageID.2921–25. In Objection No. 2, Plaintiffs argue Defendants Harvey and Schmidt are not entitled to qualified immunity. *Id.* at PageID.2925–28. Lastly, in Objection No. 5, Plaintiffs assert that Defendant Gibson violated the Fourth Amendment, under the *Jones* test, and is not entitled to qualified immunity. *See* ECF No. 126 at PageID.2931.

### a. Mini-Cabin Classification: Defendants Gibson and Caledonia Township's Objection

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. Notably, the Fourth Amendment does not "prevent *all* investigations conducted on private property" as it limits its protections to "persons, houses, papers, and effects." *Fla. v. Jardines*, 569 U.S. 1, 6 (2013). But the home is "[a]t the Amendment's very core." *Id.* (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

The "home" means more than the actual structure where an individual may reside. The Supreme Court has consistently held that the curtilage—the area immediately surrounding and associated with the home— is "part of the home itself for Fourth Amendment purposes." *See id.*; *Oliver v. United States*, 466 U.S. 170, 180 (1984). In *United States v. Dunn*, the Supreme Court provided four factors determinative of whether an area falls within a home's curtilage: (1) "the proximity of the area claimed to be curtilage to the home," (2) "whether the area is included within an enclosure surrounding the home," (3) "the nature of the uses to which the area is put," and (4) "the steps taken by the resident to protect the area from observation by people passing by." 480 U.S. 294, 301 (1987); *see also United States v. May-Shaw*, 955 F.3d 563, 569 (6th Cir. 2020);

*Morgan v. Fairfield Cnty.*, Ohio, 903 F.3d 553, 561 (6th Cir. 2018). The Court cautioned against an overly rigid reliance on these factors, explaining that the key inquiry is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301.

Open fields, however, are contrast to the home and its curtilage. "The open fields doctrine states 'that the government's intrusion upon [an] open field[] is not one of those unreasonable searches proscribed by the text of the Fourth Amendment.'" *Hopkins v. Nichols*, 37 F.4th 1110, 1118 (6th Cir. 2022) (quoting *Oliver*, 466 U.S. at 177). "This doctrine exists because 'no expectation of privacy legitimately attaches to open fields.'" *Id.* (quoting *Oliver*, 466 U.S. at 180). "But an open field 'need be neither 'open' nor a 'field' as those terms are used in common speech,' as it includes 'any unoccupied or undeveloped area outside of the curtilage.'" *Id.* (quoting *Oliver*, 466 U.S. at 180 n. 11). Indeed, Courts have frequently classified an area as an "open field" despite the presence of a fence or the posting of a "no trespassing" sign. *See Oliver*, 466 U.S. at 179; *United States v. Rapanos*, 115 F.3d 367 (6th Cir. 1997) ("The rather typical presence of fences, closed or locked gates, and "No Trespassing" signs on an otherwise open field . . . has no constitutional import.").

Turning to the *Dunn* factors, Plaintiffs' cabins are best classified as falling within the curtilage, subject to Fourth Amendment protection. The doctrine of "open fields" is inapplicable, so Defendants Gibson and Caledonia Township's Objection will be overruled.

The first *Dunn* factor, "the proximity of the area claimed to be curtilage to the home" is neutral, here. The mini-cabins were constructed approximately 80–90 feet from the pre-existing "main cabin" (the House) on the Skylar Trail Property. *See* ECF No. 124 at PageID.2868. On one hand, given this distance, the mini-cabins are not "immediately proximate" to the House. *See*

*Widgren v. Maple Grove Twp.*, 429 F.3d 575, 582 (6th Cir. 2005) (finding curtilage when the area was "four to six feet away" from the home); *Morgan*, 903 F.3d at 561 (finding curtilage when the area was "five-to-seven feet from" the home); *United States v. Gregory*, 497 F. Supp. 3d 243 (E.D. Ky. 2020) (finding a distance of 27 feet from area claimed to be curtilage to the home "weighs strongly in favor" of classifying as curtilage). On the other hand, there is "not any fixed distance at which curtilage ends." *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598–99 (6th Cir. 1998) (citing *United States v. Depew*, 8 F.3d 1424 (9th Cir. 1993)) (noting a Second Circuit case finding a cottage located 375 feet from the home fell within the curtilage). And this 80–90 feet distance is less than "substantial." *See Dunn*, 480 U.S. at 302 (noting 60 yards (180 feet) between the area at issue and the home was a "substantial distance" which "support[ed] no inference" that the area should be classified as falling within the curtilage).

The second *Dunn* factor, "whether the area is included within an enclosure surrounding the home," weighs in favor of classifying the mini-cabins as within the curtilage. As Judge Morris noted, "although the mini-cabins are not surrounded by a fence or any other type of barrier that would demonstrate or communicate to a passerby that the mini-cabins are 'included within an enclosure,' they are surrounded by woods which may be viewed as serving as a natural boundary outlining the parameters of [Plaintiffs'] home." ECF No. 124 at PageID.2869. The Sixth Circuit has held that natural boundaries may suffice to enclose an area claimed to be curtilage. *Daughenbaugh*, 150 F.3d at 599 (recognizing "natural enclosures to be compelling evidence" in favor of curtilage and that pictures indicated that the area in question was "within natural boundaries demarcated by [a] river and [] heavy tree coverage."). Indeed, in *Bollini v. Bolden*, this Court found, despite the lack of a fence or man-made enclosure surrounding the area claimed to be curtilage, the area was still "enclosed" for the purposes of this second *Dunn* factor because

"plaintiff's home and the [area claimed to be curtilage] are both surrounded by the same thick common woods which serve as a natural boundary defining the area of the home." No. 08-14608, 2010 WL 1494562, at *7 (E.D. Mich. Apr. 14, 2010). Here, Plaintiffs have demonstrated that "most of the [Skylar Trail Property] was largely wooded with the exception of a section that has been cleared and has an already existing cabin." ECF No. 126 at PageID.2898. Below is an aerial photograph of the Skylar Trail Property, showing the natural boundary that enclosed Plaintiffs House and mini-cabins.



Figure 1. *See* ECF No. 128 at PageID.2972 (also available at https://bit.ly/SkylarMap [https://perma.cc/3RG4-GLHQ]).

Third, "the nature of the uses to which the area is put," weighs in favor of the mini-cabins falling within the curtilage. Although the mini-cabins were described by Plaintiffs at one point as "accessory structures,"[14] *see* ECF No. 79 at PageID.785, and were "stand alone buildings without sewer or water," ECF No. 23 at PageID.274, they were constructed to be "sleeping quarters" for Plaintiffs' family, ECF Nos. 79 at PageID.779, 79-3 at PageID.813, were outfitted with electricity, ECF No. 85-8 at PageID.1636, 1655, and contained bunk beds. *Id.* Unlike in *Dunn*, where the Supreme Court found this factor cut against a finding of curtilage because the officer-defendants knew the area in question was *not* being used for intimate activities of the home, *Dunn*, 480 U.S. at 302, Defendants here knew that the mini-cabins were. Before the June 2 site visit, Defendants were placed on notice that the mini-cabins were being used as a "campground" and as sleeping quarters. *See* ECF Nos. 79 at PageID.781; 79-3 at PageID.813; 79-15. During the June 2 site visit, Defendants personally observed bunk beds inside the structures. ECF No. 85-8 at PageID.1636. The fact the mini-cabins were unoccupied at the time of the site visit does not alter the outcome. *See U.S. v. Biles*, 100 F. App'x 484, 493 (6th Cir. 2004) (finding a shop which was only occasionally used as a residence fell within the curtilage of the home); *Taylor v. Humphries*, 402 F. Supp. 2d 840 (845) (W.D. Mich. 2005) (finding plaintiff's recreational and seasonal cabin was entitled to Fourth Amendment protection).

The final *Dunn* factor, analyzing "the steps taken by the resident to protect the area from observation by people passing by," also favors the mini-cabins falling within the curtilage. Plaintiffs went to great lengths to protect the mini-cabins from passerby observation. The Property

---

[14] Judge Morris noted that Plaintiffs' dual-definition of their mini-cabins as mere "accessory structures"—when discussing their reliance on Defendant Harvey's alleged verbal clearance—and, in the same breath, as developed cabins with amenities—in attempts to show the mini-cabins fall within the curtilage—is "a bit self-serving." *See* ECF No. 124 at PageID.2869–70, n.15.

is "largely undeveloped" and the mini-cabins were constructed in the only cleared portion of the property, surrounded by thick woods. *See* ECF No. 79 at PageID.778; *supra* Figure 1. Defendant Krentz emphasized the Skylar Trail Property is "way back in the woods . . . up to two miles off the beaten path." ECF No. 79-36 at PageID.916. Both Defendant Krentz and Schmidt note the remote nature of the property. *See id.*; ECF No. 85-10 at PageID.1705. Lastly, as Judge Morris noted, "although the mini-cabins could be viewed by Defendants while they were standing near a neighbor's property line, ECF Nos. 85-8 at PageID.1655; 85-9 at PageID.1685; 85-10 at PageID.1708, this type of viewing cannot be the kind the Supreme Court envisioned . . . when they outlined the *Dunn* factors." ECF No. 124 at PageID.2872. As the Court in *Dunn* explained, this factor concerns observation from those *passing by*. *See Dunn*, 480 U.S. at 301. As Plaintiffs repeatedly emphasized, no one would naturally pass by the area which Defendants viewed the mini-cabins from. *See* ECF No. 79 at PageID.783 ("There is no regular access to the Skylar Trail Property from this northern side, given that the Mockeridges' rugged driveway comes from the southeast."); *see also supra* Figure 1.

Judge Morris did not clearly err in finding Plaintiffs' mini-cabins fell within the curtilage by conducting a holistic review of the *Dunn* factors, ECF No. 124 at PageID.2868. Defendants Gibson and Caledonia Township's joint objection, arguing error and seeking application of the open fields doctrine, will be overruled.

### b. Fourth Amendment Framework and Violation: Plaintiffs' Objection No. 1

After finding Plaintiffs' mini-cabins fell within the curtilage of Plaintiffs' home, subject to Fourth Amendment protection, Judge Morris found that (1) Plaintiffs had a reasonable expectation of privacy in their mini-cabins under the *Katz* framework, but (2) because their "actions involved the smallest degree of intrusion" and because their purpose in entering Plaintiffs' property was

similar to an administrative search, Defendants did not violate the Fourth Amendment. *See* ECF No. 124 at PageID.2875–79.

Plaintiffs object, arguing (1) Judge Morris committed clear error in analyzing Plaintiffs Fourth Amendment claim only under the *Katz* framework and ignoring the *Jones* "trespass plus" test; and (2) the "de minimis" and administrative exceptions to the warrant requirement are inapplicable if *Jones* is properly applied. *See* ECF No. 126 at PageID.2917–25.

In Response, Defendant Alcona County argues that Judge Morris's Fourth Amendment findings were not based solely on *Katz*. ECF No. 129 at PageID.2995. Defendants Gibson and Caledonia Township respond that Judge Morris correctly found no search "in the constitutional sense" violative of the Fourth Amendment even under the *Jones* test, emphasizing that Judge Morris did *not* explicitly discuss the "de minimis" or administrative exceptions to the warrant requirement. *See* ECF No. 130 at PageID.3012–16. Defendants Harvey and Schmidt respond that Judge Morris's decision to analyze the Fourth Amendment claim under *Katz* (instead of *Jones*) was not clearly erroneous as she need not "accept [Plaintiffs'] exclusive framing of the issue[.]" *See* ECF No. 131 at PageID.3031. Defendants Harvey and Schmidt also argue, even under *Jones*, no Fourth Amendment search occurred because Defendants' entry was authorized by Michigan Construction Code and Michigan Public Health Code, MICH. COMP. LAWS §§ 125.1501 *et seq*. and 333.12401 *et seq*. *Id.* at PageID.3032; *see also Jardines*, 569 U.S. at 7 (focusing on whether the defendant's investigation was accomplished through an *unlicensed* physical intrusion).

Before turning to the analysis, it is important to pause and address how the Parties interpreted the R&R and Fourth Amendment jurisprudence, generally. First, the Parties dispute whether Judge Morris found a Fourth Amendment "search" in the first instance. Defendants Harvey, Schmidt, Gibson, and Caledonia Township read the R&R to find no search. *See* ECF Nos.

- 33 -

130 at PageID.3014; 131 at PageID.3030–32. Defendant Alcona County and Plaintiffs interpret the R&R as finding a search but no Fourth Amendment violation. *See* ECF No. 129 at PageID.2995–96; 126 at PageID.2919–25. At one point in the R&R, Judge Morris states "Plaintiffs had a constitutionally protected reasonable expectation of privacy and this expectation implicates the core of the Fourth Amendment's protection," indicative of a search under *Katz*. ECF No. 124 at PageID.2876. But Judge Morris also states "[c]onsidering the minor intrusion, . . . the methods they used and the purpose for [Defendants'] presence on the property, the undersigned does not find that Defendants Harvey and Schmidt *performed a search* which would trigger a Fourth Amendment constitutional *violation*." *Id.* at PageID.2879 (emphasis added).

Additionally, the Parties seem confused about *how* the degree of Defendant's intrusion fits within the overall Fourth Amendment analysis. In the R&R, after finding that Plaintiffs had a reasonable expectation of privacy in their mini-cabins, Judge Morris analogized this case to *Taylor v. Humphries*, a 2005 Western District of Michigan case, to find no Fourth Amendment violation because "Defendants Harvey and Schmidt's actions involved the smallest degree of intrusion" and their purpose for entering the property was to "observe and follow up on the complaints that were filed regarding the alleged unlawful development of an 'unlicensed campground' and 'sanitation issue.'" ECF No. 124 at PageID.2878 (citing *Humphries* 402 F. Supp. 2d 840). Although Judge Morris did not expressly discuss either exception, Plaintiffs interpret the R&R as using both the "de minimis" and administrative search exceptions to the warrant requirement to find the search reasonable and not violative of the Fourth Amendment. ECF No. 126 at PageID.2917–25. Defendant Alcona County agrees. *See* ECF No. 129 at PageID.2995 (claiming Judge Morris's application of the administrative search exception was not clearly erroneous). Defendants Gibson

and Caledonia Township disagree. *See* ECF No. 130 at PageID.3012 (claiming that Judge Morris did not discuss either exception in the R&R).

To determine whether a Fourth Amendment violation has occurred, this Court will first ask (1) "whether the alleged government conduct constitutes a search within the meaning of the Fourth Amendment. *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019). If the government's conduct constitutes a search, this Court must then ask (2) "whether the search was reasonable," *id.*, analyzing both the alleged de minimis" nature of Defendants intrusion and the administrative exception to the warrant requirement.

### i. Search

The Sixth Circuit has explained that "searches" can take two forms. "Under the most prevalent and widely-used search analysis articulated in *Katz v. United States*, a search occurs when a government official invades an area in which 'a person has a constitutionally protected reasonable expectation of privacy.'" *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring) (internal citations omitted). Under *Katz*, a search is analyzed in two parts: "first that a person exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361).

"In recent years, however, the Supreme Court revisited the seldom used 'property-based approach to the Fourth Amendment search inquiry in *United States v. Jones*. Under *Jones*, when governmental invasions are accompanied by physical intrusions, a search occurs when the government (1) trespasses upon a constitutionally protected area, (2) to obtain information." *Id.* (citing *United States v. Jones*, 565 U.S. 400, 404–05 (2012). *Jones* made clear that the "*Katz* reasonable-expectation-of-privacy test has been *added* to, but not *substituted for*, the common-law

trespassory test." *Jones*, 565 U.S. at 409 (emphasis in original). The Supreme Court also clarified that, under *Jones*, the Fourth Amendment is not concerned with every technical trespass that led to the gathering of evidence. *Id.* at 411, n.8. Instead, the Fourth Amendment protects against trespassory searches *only* with regard to those items ('persons, houses, papers, and effects') that it enumerates. *Id.*

Judge Morris expressly found, under *Katz*, that "Plaintiffs ha[ve] a constitutionally protected reasonable expectation of privacy [that] implicates the core of the Fourth Amendment[.]"[15] ECF No. 124 at PageID.2876. Other than Defendants Gibson and Caledonia Township's overruled Objection regarding open fields, no party objects to Judge Morris's application of *Katz* or the result reached—that Plaintiffs had a reasonable expectation of privacy in their mini-cabins. *See* ECF No. 124 at PageID.2876. And, although Plaintiffs object that Judge Morris should have applied the *Jones* Fourth Amendment Framework, this framework could only reach the same result—that Defendants' site visit on June 2, 2021, was a "search" subject to Fourth Amendment protections.[16]

---

[15] Judge Morris found Plaintiffs had a subjective expectation of privacy because "the mini-cabins were surrounded by trees, placed in a remote area, and not visible from a public road[,]" analogizing to *Taylor v. Humphries*, which held that a plaintiff "clearly manifested a subjective expectation of privacy in the interior of his home' as the home was remote and not visible from any public area. ECF No. 124 at PageID.2875; *Humphries*, 402 F. Supp. 2d at 845. Judge Morris found this expectation of privacy objectively reasonable because the mini-cabins were intended for use as sleeping quarters. ECF No. 124 at PageID.2876.

[16] Why Plaintiffs focus their Fourth Amendment objections on the application of the *Jones* test is unclear. After all, *Jones* and *Katz* are two tests existing in tandem for analyzing *whether a search occurred*—not whether a search was unreasonable in violation of the Fourth Amendment. And Judge Morris, using *Katz*, found a search, in favor of Plaintiffs. It seems Plaintiffs may have objected to Judge Morris's use of *Katz* because they believe, if Judge Morris found a "*Jones* search," certain exceptions to the warrant requirement do not apply. *See* ECF No. 126 at PageID.2921 ("As for the de minimis exception, there is no such thing under a *Jones*-styled search") But this is untrue. *See Taylor v. City of Saginaw*, 11 F.4th 483 (6th Cir. 2021), *reh'g denied* (Sept. 14, 2021) (finding that chalking tires was a "search" under the *Jones* property-based test but analyzing whether any exceptions to the warrant requirement—including the

### ii. Reasonableness

Finding that Defendants "searched" the mini-cabins on June 2, 2021 is only half the task. To be violative of Plaintiffs' Fourth Amendment rights, the search must be unreasonable. *See Taylor*, 922 F.3d at 334 ("The Fourth Amendment does not proscribe all searches, 'but only those that are unreasonable.'") (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989)). Searches effectuated without a warrant are "per se unreasonable—subject only to a few specifically established and well-delineated exceptions." *Id.*; *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013). The Government bears the burden of demonstrating an exception to the warrant requirement applies. *Id.* Because Plaintiffs' mini-cabins fell within curtilage, Defendants' search could only be justified by a warrant or a recognized exception to the warrant requirement. But it is undisputed that Defendants did not have warrant. *See* ECF Nos. 79-30 at PageID.876; 79-30 at PageID.880. And although Judge Morris implied that both the de minimis and administrative exceptions to the warrant requirement apply, neither do.

### (a). Administrative Exception to the Warrant Requirement

One exception to the warrant requirement applies "when the warrant requirement is impracticable and the 'primary purpose' of the search is 'distinguishable from the general interest in crime control.'" *Benjamin Trust v. Stemple*, 915 F.3d 1066, 1069 (6th Cir. 2019) (quoting *City of Los Angeles v. Patel*, 576 U.S. 409 (2015)). Included in this exception are "administrative searches" such as inspecting a home for compliance with a municipal housing code." *Id.*; *see also*

---

administrative search exception—rendered this warrantless search nonetheless reasonable); *but see Taylor*, 620 F. Supp. at 655 ("Plaintiff's stated position—that there is no de minimis exception for trespassory searches—raises an important question about the Supreme Court's decision in *Jones*. *Jones'* primary contribution was its holding that common-law trespasses, even harmless ones, may be searches under the Fourth Amendment. Although *Jones* expressly declined to consider any exception to the warrant requirement, some authorities have questioned whether a trespassory search may still be subject to a privacy-based exception.") (internal citations omitted).

*Taylor*, 11 F.4th at 488. For the administrative exception to render a search reasonable, the Government must show that the search met "reasonable legislative or administrative standards." *Taylor*, 11 F.4th at 488 (quoting *Camara v. Mun. Ct. of City & Cnty. Of San Francisco*, 387 U.S. 523, 538 (1967)). In assessing whether the government has met this burden, a reviewing court balances (a) the need to search against (b) the invasion which the search entails. *Id.* Recently, the Supreme Court added a threshold requirement for administrative searches, explaining that an administrative search will only be upheld if the person subject to the search was "afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 421; *see also Taylor*, 11 F.4th at 488. The purpose of this precompliance review is to allow search subjects the opportunity to question the reasonableness of the search prior to it and to "reduce the risk that officers will use these administrative searches as a pretext to harass" individuals. *Patel*, 576 U.S. at 423; *see also MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 416 (E.D. Mich. 2019).

Although Judge Morris noted the purpose of Defendants' June 2 search was "not to conduct a criminal investigation and [fell] more in line with an administrative search," Judge Morris did not further discuss the administrative exception to the warrant requirement. *See* ECF No. 124 at PageID.2878. Regardless, the exception does not apply because Plaintiffs were not afforded precompliance review of any kind. Indeed, Defendants seemed insistent on making sure Plaintiffs received *no notice* of the June 2 search. When Defendant Krentz and Schmidt were coordinating the search, Defendant Krentz texted "I just don't want [Plaintiffs] to know we are coming." ECF No. 79-13 at PageID.825.

In Response, Defendant Alcona County asserts that Judge Morris correctly applied the administrative search exception and that no precompliance review was necessary because the

requirement only applies when a search subject would face criminal penalties for refusing the search and, here, Plaintiffs faced no such sanction. ECF No. 129 at PageID.2996–97. Alcona County is incorrect. This Court recently rejected this very argument, explaining "nothing in *Patel* supports [Defendant's] narrow reading . . . [a]nd although the ordinances in *Patel* . . . allowed for the possibility of criminal penalties, neither the Supreme Court nor the Sixth Circuit have held that the precompliance review requirement applies only in these contexts." *MS Rentals*, 326 F. Supp. 3d at 416. Lastly, although there is a narrow class of administrative searches that do not require precompliance review, Defendants' June 2 search is not one of them. *See* Casey Adams, *Motel Blues: Inspecting* Patel*'s Impact on the Law of Administrative Searches*, 51 NEW MEXICO L. REV. 457, 467, 476 (2021) (noting a "general administrative search doctrine" allowing warrantless searches so long as subjects are afforded precompliance review and a "specialized doctrine" allowing warrantless inspections without precompliance review if the administrative search is of a closely regulated business*.*); *see also Patel*, 576 U.S. at 424 (noting that a relaxed administrative search test, requiring no precompliance review, only applies to closely regulated businesses including liquor sales, firearms dealing, mining, or running an automobile junkyard).

Accordingly, the administrative exception to the warrant requirement does not apply to Defendants' June 2 warrantless search and will not render it reasonable.

### (b). "De Minimis" Search

Turning to Judge Morris's finding that the degree of Defendants' intrusion was minimal— what Plaintiffs interpret as implicating a "de minimis exception" to the warrant requirement—this finding was erroneous. The "de minimis" doctrine can be used by courts "to find that a claim is so trivial that a decision need not be made on the merits of the case." Jeffrey Brown, *How Much Is Too Much? The Application of the De Minimis Doctrine to the Fourth Amendment*, 82 MISS. L.J.

1097, 1099 (2013). Defined, "de minimis non curat lex" means "the law does not concern itself with trifles." *Id.; see also Taylor v. City of Saginaw*, 620 F. Supp. 3d 655, 662–63 (E.D. Mich. 2022). Importantly, this doctrine was not historically associated with the Fourth Amendment but, instead, was widely applied in tax, labor, copyright infringement, and voting rights cases. Brown, *supra*, at 1100–04; *see, e.g.*, *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021) (Title VII); *In re Amazon.com, Inc.*, 942 F.3d 297, 303 (6th Cir. 2019) (Fair Labor Standards Act); *Mihalek Corp. v. Michigan*, 821 F.2d 327, 328 (6th Cir. 1987) (copyright). In context of the Fourth Amendment, the "de minimis" doctrine has been applied both to find no triggering "search" occurred or that, although a search did occur, it was reasonable and not violative of the Fourth Amendment.[17]

The seminal Fourth Amendment "de minimis" case is *United States v. Jacobsen*, decided by the Supreme Court in 1984. In *Jacobsen*, FedEx employees observed baggies of a "white powdery substance" when inspecting a damaged package and notified the Drug Enforcement Administration (DEA). *United States v. Jacobsen*, 466 U.S. 109, 111 (1984). A responding DEA agent seized the package, opened the baggies, and retrieved a trace amount of the substance which tested positive as cocaine. *Id.* The Supreme Court analyzed the constitutionality of both the DEA agent's initial seizure of the package and the destruction of the trace amount of cocaine during testing, emphasizing that an "initially lawful seizure might become unlawful if 'its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment.'" *Taylor*, 620 F. Supp. 3d at 663 (quoting *Jacobsen*, 466 U.S. at 124). The Court held that the initial seizure did not implicate the Fourth Amendment because the package, already opened by FedEx

---

[17] This Court recently applied the "de minimis" doctrine to a Fourth Amendment case as an exception to the warrant requirement, assessing whether a search was reasonable, not whether a search occurred. *See Taylor* 620 F. Supp. 3d at 662–65.

employees, "could no longer support a reasonable expectation of privacy." *See Jacobsen*, 466 U.S. at 121. Second, the Court held that, although the test intruded on the respondent's possessory interest, balancing "the nature and quality of the intrusion . . . against the importance of the governmental interests alleged to justify the intrusion[,]" the Court found the destruction of the powder was a *reasonable* warrantless seizure. *Id.* at 125. Specifically, the Court stated.

> The law enforcement interests justifying the procedure were substantial; the suspicious nature of the material made it virtually certain that the substance tested was in fact contraband. Conversely, because only a trace amount of material was involved, the loss of which appears to have gone unnoticed by respondents, and since the property had already been lawfully detained, the "seizure" could, at most, have only a de minimis impact on any protected property interest. Under these circumstances, the safeguards of a warrant would only minimally advance Fourth Amendment interests.

*Id.* In light of *Jacobsen*, this Court recently emphasized that "[p]roperly understood, the de minimis exception allows government officials to make minor, warrantless intrusions in favor of only 'substantial' government interests." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, No. 1:18-CV-10472, 2023 WL 4936953 (E.D. Mich. July 31, 2023). But, here, the intrusion was not minimal and the government interest was not substantial.

Judge Morris found the intrusion minimal because Defendants did not crane or distort their body to look inside the cabins, did not disturb the blinds inside the cabin windows, and used nothing more than a small flashlight to look inside. ECF No. 124 at PageID.2877. Judge Morris emphasized that the search occurred during the day and was limited to investigating complaints. *Id.* at PageID.2878. All true. But there were more intrusive aspects of the search that Judge Morris did not address. Although government officials can "knock and talk" by "approach[ing] the home by the front path, knock[ing] promptly, wait[ing] to be received, and then . . . leav[ing]," officers "cannot traipse through the garden, meander into the backyard, or take other circuitous detours

that veer from the pathway that a visitor would customarily use." *See Morgan v. Fairfield Cnty.*, 903 F.3d 553, 563 (6th Cir. 2018) (quoting *Jardines*, 559 U.S. at 19 (Alito, J. dissenting)).[18] But Defendants did the latter. Defendant Krentz drove Defendants Schmidt, Harvey, and Gibson to Plaintiffs' property on June 2, 2021. ECF No. 85-6 at PageID.1616. Although Defendant Krentz first used the "main road" to drive to the Skylar Trail Property and show the other Defendants the campground sign from Plaintiffs' driveway, he then turned around and drove Defendants to the Miller property, which borders Plaintiffs' property to the north. *See* ECF Nos. 79–37 at PageID.909; 79–36 at PageID.907; *see also* Figure 1. But "there is no regular access to the Skylar Trail Property from this northern side, given that [Plaintiffs'] rugged driveway comes from the southeast[.]" ECF No. 79 at PageID.783. Defendant Krentz even admitted that, when Defendants inspected the mini-cabins, they did not "come in through the normal driveway or the two-track [road] coming off of [the] Skylar Trail up to the cabins." ECF No. 79-36 at PageID.907. The path taken by Defendants—creeping up to the mini-cabins from the private property of Plaintiffs' northern neighbor, is quite contrary to the "pathway that a visitor would customarily use."

Just as Defendants' intrusion was not sufficiently minimal, the interest in intruding was not sufficiently substantial. In *Jacobsen*, the seizure was deemed "de minimis" because, in part, "[t]he law enforcement interests in justifying the procedure were substantial [as] the suspicious nature of the material made it *virtually certain* that the substance tested was in fact contraband." *Jacobsen*, 466 U.S. at 1663 (emphasis added). The same cannot be said here. Although Defendants received complaints about the mini-cabins' compliance with housing code, nothing about these complaints made it "virtually certain" that a violation would be found. Indeed, the very allegations within

---

[18] The Supreme Court noted unanimous agreement with Justice Alito in 2020. *See Bovat v. Vermont*, 141 S. Ct. 22 (2020)

these complaints that Defendants and Judge Morris cite as supporting the June 2 search—
unlicensed campground operation and sanitation issues—were submitted by Plaintiffs' neighbors
*at the express direction of Defendant Schmidt*, who had no basis for advancing these allegations
and had never seen the mini-cabins for himself. *See* ECF Nos. 79–9 at PageID.821; 79–13 at
PageID.825. The government interest in identifying and seizing cocaine before it is shipped
interstate is significantly more substantial than the government interest in inspecting an already-
constructed mini-cabin for compliance with a local housing code.

"[T]he Fourth Amendment does not overlook de minimis intrusions. An intrusion is not de
minimis if it violates an individual's legitimate expectation of privacy." *United States v. Bailey*,
628 F.2d 938, 940 (6th Cir. 1980). Plaintiffs had a reasonable expectation of privacy in their mini-
cabins. This expectation was intruded on by Defendants on June 2, 2021. Their intrusion was not
minimal and their interest was not substantial. Accordingly, the de minimis exception will not save
the Defendant's warrantless June 2 search.

In sum, Judge Morris did not clearly err in finding that Plaintiffs' mini-cabins were
curtilage but Judge Morris did clearly err in finding that Defendants did not violate the Fourth
Amendment when they searched Plaintiffs' property on June 2, 2021, because (1) Plaintiffs had a
reasonable expectation of privacy in their mini-cabins; and (2) neither the "de minimis" exception
nor the administrative search exception apply to render the search reasonable. Accordingly,
Plaintiffs Objection No. 1 will be sustained.

### c. Qualified Immunity: Plaintiffs' Objection No. 2

The next Fourth Amendment issue that must be addressed is qualified immunity. Although
Judge Morris concluded that Defendants did not violate Plaintiffs' Fourth Amendment rights, she
also found "even if[] Defendants['] intrusion was found to be a constitutional violation, they would

. . . be entitled to a qualified immunity defense" because it "is reasonable that the local health []

and building inspector, who received complaints and noticed additional potentially dangerous

issues, would not appreciate at the time of the site visit that their brief intrusion onto an individual's

property to further investigate the complaints would violate the Constitution." ECF No. 124 at

PageID.2879. Plaintiffs object. *See* ECF No. 126 at PageID.2927–28.

"Qualified immunity shields government officials from civil liability in the performance

of their duties so long 'as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d

646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified

immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Id.*;

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011);

*see also* Bryan Borodkin, *Officer-Created Jeopardy and Reasonableness Reform: Rebuttable*

*Presumption of Unreasonableness Within 42 U.S.C. S 1983 Police Use of Force Claims*, 55 U.

Mich. J.L. Reform 919 (2022) (noting the deference qualified immunity provides to government

defendants). When assessing qualified immunity, courts apply the "*Saucier* two step," asking (1)

whether a constitutional right has been violated; and (2) whether that right was clearly

established—though reviewing courts need not proceed in this order. *See Pearson v. Callahan*,

555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it

should no longer be treated as mandatory."). Plaintiffs bear the burden of demonstrating both

prongs. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).

As discussed above, Defendants Harvey and Schmidt violated Plaintiffs' Fourth

Amendment rights during the June 2 search. The only remaining question is whether this right was

clearly established. This prong of the qualified immunity asks whether it was sufficiently clear that

a reasonable officer would understand their actions violate a right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658 (2012)). While there need not be a case directly on point, existing precedent must place the constitutional question "beyond debate." *Id.* Sources of "clearly established law" include, from most to least persuasive, Supreme Court precedent, controlling Sixth Circuit precedent, this Court's precedent, or a "robust consensus of cases of persuasive authority." *See Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012); *Ashcroft*, 563 U.S. at 742.

Judge Morris found Defendants did not violate clearly established law because "an officer [who conducts] a 'brief property check for the purpose of insuring the security of a home' would not understand that this constituted a constitutional violation." ECF No. 124 at PageID.2879 (quoting *Humphries*, 402 F. Supp. 2d at 850). But the search in *Humphries* was quite different than Defendants' search of Plaintiffs' property. In *Humphries*, unlike here, the government defendant entered the plaintiff's property using the publicly accessible driveway. *Humphries* 403 F. Supp. 2d at 842. In *Humphries*, unlike here, the government defendant "called out to determine if anyone was home," attempting to alert potential occupants to his presence. *Id.* Most importantly, the *Humphries* defendant only veered from the driveway to perform a brief, five minute "property check" because he suspected that trespassers were illegally on Plaintiffs' property. *See id.* at 842–43. The court in *Humphries* explicitly based its grant of qualified immunity on the fact that, although the defendant originally arrived on the plaintiff's property to inspect a housing code complaint, the search that occurred was instead "community caretaking" because the defendant did not seek to find evidence of any violations but merely sought to ensure "that a trespasser was not in [plaintiff's] home." *Id.* at 847. The same cannot be said here. Defendants' express and only purpose in searching Plaintiffs' mini-cabins was to find evidence that Plaintiffs were violating

local health and housing codes. *See* ECF Nos. 79 at PageID.781; 79-9 at PageID.821. *Humphries* plainly does not support the proposition that the Defendants here would not understand their actions to violate the constitution.

None of the cases cited by Defendant Alcona County do the trick, either. Although *Conrad v. City of Berea*, a Northern District Ohio case,[19] held that city officials may enter a residence's curtilage and make naked-eye observations of a house's exterior for administrative purposes, the holding made clear that this only saved the search because the defendants did not look into the house. 243 F. Supp. 3d 896, 906. *Simpson v. Shelby County*, a Western District of Tennessee case, says the same. *See* No. 19-CV-2625-TMP, 2021 WL 886231, at *4 (W.D. Tenn. Mar. 9, 2021) (noting a defendant does not violate the Fourth Amendment "by entering the curtilage for the [] purpose of naked-eye observations of the house's plainly visible *exterior* attributes . . . all without touching, entering *or looking into the house*.") (emphasis added). But, here, Defendants looked into Plaintiffs' mini-cabins. ECF No. 124 at PageID.2877. Additionally, and importantly, neither *Berea* nor *Simpson*, which emphasize the administrative purpose of the relevant searches, discuss the precompliance review threshold requirement established in *Patel*. Nor do these cases involve defendants snooping throughout the search or otherwise entering the curtilage or home in ways not available to customary visitors.

Defendants Harvey and Schmidt argue that, even if they did violate Plaintiffs' Fourth Amendment rights, the law is not clearly established because they could not possibly know that the mini-cabins fell within the curtilage, emphasizing that Judge Morris spent "over six pages" analyzing the *Dunn* factors in making this determination. ECF No. 131 at PageID.3033–34. But

---

[19] Defendant Alcona County does not cite any Supreme Court, Sixth Circuit, or Eastern District of Michigan cases when arguing the law is not clearly established.

this argument lacks merit. Although no on-the-ground officer is expected to recite the *Dunn* factors prior to a search, if it looks like a home and is used like a home, it is probably entitled to the same Fourth Amendment protections as a home. It is important to remember that, prior to physically intruding on Plaintiffs' property on June 2, all Defendants knew that the mini-cabins were used as sleeping quarters. While the law tells us this is a factor weighing strongly in favor of a curtilage classification under *Dunn*, common sense tells us that people expect privacy in places they sleep. Additionally, prior to physically intruding on Plaintiffs' property, all Defendants saw the mini-cabins from their vantage point on the Miller property. The mini-cabins did not look like open fields where officers are free to warrantlessly search. They looked like homes. Here's a picture:



ECF No. 79-5, PageID.817.

Defendants violated clearly established law. Supreme Court and Sixth Circuit precedent suggest a reasonable official in the position of the Government Official Defendants should have known their conduct violated the Fourth Amendment. As early as 2013—nearly ten years ago— Justice Alito noted in his *Jardines* dissent that government officials, absent a warrant or exigency, cannot "traipse through the garden, meander into the backyard, or take other circuitous detours that veer from the pathway that a visitor would normally use." *Jardines*, 569 U.S. at 19 (Alito, J., dissenting). This point was endorsed by the Sixth Circuit in 2018 in *Morgan v. Fairfield County*. *Morgan*, 903 F.3d at 563 (finding officer-defendants' warrantless search violated the Fourth Amendment when defendants surrounded plaintiff's home to conduct a "knock and talk" prior to informing plaintiff of their presence). If this doesn't put the unconstitutionality of Defendants actions "beyond debate," the Supreme Court unanimously endorsed Justice Alito's point in 2020, stating:

> *Jardines* . . . recognized . . . that law enforcement agents, like everyone else, may take up [an] "implied license" to approach [a home or curtilage]. But, the Court stressed, officers may not abuse the limited scope of this license by snooping around the premises on their way to the front door. Whether done by a private person or a law enforcement agent, that kind of conduct is an unlawful trespass— and, when conducted by the government, it amounts to an unreasonable search in violation of the Fourth Amendment.

*Bovat v. Vermont*, 141 S. Ct. 22 (2020). Existing precedent places Defendants' Fourth Amendment violation "beyond debate." A reasonable government official in Defendants' shoes should have known that their actions—entering Plaintiffs' property without a warrant or exigency by way of a neighbor's private property for the purposes of avoiding detection—violated the Fourth Amendment. In "snooping around" on their way to inspect Plaintiffs' mini-cabins, Defendants Schmidt, Harvey, and Gibson violated clearly established law and are not entitled to qualified

immunity. The R&R's conclusion to the contrary was clearly erroneous and Plaintiffs' Objection No. 2 will be sustained.

### d. Defendant Gibson's Liability: Plaintiffs' Objection No. 5

Judge Morris recommended denying Plaintiffs' Partial Motion for Summary Judgment against Defendant Gibson "[f]or the [same] reasons discussed above as to Defendant Schmidt." ECF No. 124 at PageID.2886. And Judge Morris recommended granting Defendant Gibson's Motion for Summary Judgment for the same reason. *Id.* Plaintiffs object, arguing Defendant Gibson—just like Defendants Schmidt and Harvey—violated the Fourth Amendment and is not entitled to qualified immunity. ECF No. 126 at PageID.2931.

Plaintiffs are correct. As discussed above, the R&R contained clear error in its analysis of Defendant Harvey and Schmidt's Fourth Amendment liability and entitlement to qualified immunity. Accordingly, Plaintiffs' Objection No. 5 will be sustained.

### 2. Municipal Defendants: Alcona County and Caledonia Township

Having discussed Judge Morris's findings and all objections relevant to the Government Official Defendants, the next issue is whether the municipal Defendants, Alcona County and Caledonia Township, are liable for Fourth Amendment violations.

Judge Morris recommended granting Alcona County's Motion for Summary Judgment as to the Fourth Amendment violations "for the reasons discussed . . . as to Defendant Harvey." ECF No. 124 at PageID.2885 Similarly, Judge Morris recommended granting Defendant Caledonia Township's Motion for Summary Judgment as to the Fourth Amendment violations "for the reasons discussed . . . as to Defendant Schmidt." *Id.* at PageID.2886. Plaintiffs object because (1) Judge Morris did not analyze the Fourth Amendment violation under *Jones*, and (2) municipal defendants are not entitled to qualified immunity. *See* ECF No. 126 at PageID.2929.

In *Monell*, the Supreme Court held that municipalities can be treated as "persons" and subject to § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). But a municipality cannot be liable for § 1983 deprivations merely because they employ an officer who violates § 1983. *Monell*, 326 U.S. at 691. ("[A] municipality cannot be held liable under § 1983 on a respondent superior theory."). And a municipality cannot be liable if their officers commit no constitutional violation in the first place. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017).

Judge Morris's recommendation to grant Defendants Alcona County and Caledonia Township's motions for summary judgment, dismissing Plaintiffs Fourth Amendment *Monell* claims against them, likely turned on Judge Morris's finding of no Fourth Amendment violation in the first place—rather than her finding that the officers would be entitled to qualified immunity. But this finding, as discussed, was clearly erroneous. Accordingly, considering Defendant's Harvey and Gibson's Fourth Amendment violations, this Court must analyze what Judge Morris did not reach—whether the municipal employers are also liable under *Monell* for the constitutional deprivations of their officers.

Municipalities are only liable under *Monell* for their "official policies" which cause an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692. Generally, there are four "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But, even when a plaintiff can show a sufficient official policy, a

plaintiff must also "connect the policy to the municipality, and [] show that [the] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010).

### a. Alcona County's Liability: Plaintiffs' Objection No. 3

Plaintiffs argue that Alcona County had a "customary practice" of depriving constitutional rights because Defendant Harvey, Alcona County's agent, stated in a deposition that he warrantlessly entered private property to inspect for permit compliance "probably a dozen times" since 2011. ECF Nos. 83-3 at PageID.1175–76; 91 at PageID.2258–59. But this is insufficient. To trigger *Monell* liability under a custom theory, a plaintiff must show that the municipal defendant was deliberately indifferent to a clear and persistent pattern of unconstitutional conduct. *See Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 503 (W.D. Ky. 2021). Indeed, the Sixth Circuit has routinely required a plaintiff to prove that the municipality and its policymaking officials knew of the alleged unconstitutional practice and acquiesced in it. *See Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005); *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). But evidence of this knowledge and acquiescence is lacking. ECF No. 110 at PageID.2758 ("Plaintiffs' counsel did not ask . . . whether county officials were aware of and thus had constructive notice of a pattern.").

Further, the alleged pattern must be "so permanent and well settled as to constitute a custom or usage within the force of the law." *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 n.3 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691). But Plaintiffs' alleged pattern— approximately "a dozen" incidents in the past 12 years—does not come close. *See id.* (finding two unconstitutional searches throughout five months insufficient to attach *Monell* liability under a custom theory).

Most importantly, as Defendant Alcona County emphasizes, "Plaintiffs' counsel did not ask for further information as to the specifics of any of these dozen other incidents, including when the visits occurred [and] the circumstances of each[.]" ECF No. 110 at PageID.2758. But, as evident from the Fourth Amendment discussion *supra* Section III.C.1.b, the circumstances of each search are paramount. The mere fact that a search occurred without a warrant does not render the search unreasonable or in violation of the Fourth Amendment. *See Hockenberry*, 730 F.3d at 658 (6th Cir. 2013). So, even if this was a sufficient pattern—which it is not—and even if there was evidence that Alcona County knew about this pattern—which there is not—the mere fact these warrantless searches occurred reveal nothing about whether they were unconstitutional.

Accordingly, although Judge Morris did not analyze *Monell* beyond the erroneous finding of no Fourth Amendment violation, she reached the correct result as to Defendant Alcona County. Plaintiffs' Objection No. 3 will be overruled because Defendant Alcona County is entitled to summary judgment on Plaintiffs' Fourth Amendment *Monell* claim against it.

### b. Caledonia Township's Liability: Plaintiffs' Objection No. 4

Turning to Caledonia Township, Plaintiff argues for *Monell* liability because the Township failed to adequately train its employees—namely, Defendant Gibson. ECF No. 93 at PageID.2300.

To succeed on their failure-to-train *Monell* claim, Plaintiffs must prove (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of a Defendant Caledonia Township's deliberate indifference; and (3) the inadequacy was closely related to or directly caused the injury. *See Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286 (6th Cir. 2020) (citing *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). There are "at least two situations in which inadequate training could be found to be the result of deliberate indifference." *Id.* at 287. "First, and most commonly, a plaintiff can demonstrate deliberate

indifference by showing that the municipality has failed to act 'in response to repeated complaints of constitutional violations by its officers.'" *Id.* (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003); *see also Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). Second, a plaintiff can show that a municipality failed to equipe its officers "with specific tools to handle recuring situations" if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights[.]" *Id.* (internal quotations and citations omitted).

Plaintiffs can survive a defendant's motion for summary judgment on a *Monell* failure to train claim by showing the municipality failed "to provide [its officers] *any* training on key duties with direct impact on the constitutional rights of citizens." *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (emphasis added); *see also Sell v. City of Columbus*, 47 F. App'x 685, 694–95 (6th Cir. 2002). Indeed, in *Sell v. City of Columbus*, the Sixth Circuit reversed the district court's grant of a city's motion for summary judgment because plaintiff presented evidence that the city's housing code enforcement officers, who frequently evict homeowners in emergencies, were not given any training "on the constitutional obligations underlying their job responsibilities." *Sell*, 47 F. App'x at 694. Here, Defendant Gibson, the zoning administrator for Caledonia Township responsible for zoning enforcement, admitted in deposition that (1) he received no "special training or licenses or certificates to be a zoning administrator," (2) the Township did not send him to any classes or training, (3) the Township did not "provide [him] with any training or classes to understand any obligations . . . under the U.S. or Michigan Constitution", (4) he did not understand that he "had legal obligations under the U.S. . . . or Michigan Constitutions," and (5) he was unaware that he even "had the ability to seek a warrant to enter private property without permission." ECF No. 93-2 at PageID.2308–10.

Accordingly, Plaintiffs have shown that Defendant Caledonia Township is not entitled to summary judgment on Plaintiffs' Fourth Amendment *Monell* claim. Judge Morris committed clear error in not analyzing Caledonia Township's *Monell* liability beyond her finding of no underlying constitutional violation and Plaintiffs' Objection No. 4 will be sustained.

### D.  Private Party § 1983 Conspiracy: Plaintiffs' Objection No. 6

In Count V of the Amended Complaint, Plaintiffs assert that Defendant Keith Krentz, the only Defendant not directly affiliated with a government entity, violated § 1983 by conspiring with the individual Government Official Defendants (Gibson, Schmidt, and Harvey) to deprive Plaintiffs' Fourth Amendment rights during the June 2 search. ECF No. 23 at PageID.291–93. Defendant Krentz filed a Motion for Partial Summary Judgment, arguing there is no genuine issue of material fact concerning two elements required for this claim: a single plan, and a shared conspiratorial objective. ECF No. 80 at PageID.935.

Judge Morris agreed with Defendant Krentz and recommended granting his Motion for Partial Summary Judgment because Judge Morris was "unable to locate a shared conspiratorial objective between Defendant Krentz and the Government Officials to violate Plaintiffs' rights." ECF No. 124 at PageID.2883. Plaintiffs object, arguing that the shared conspiratorial objective "is clearly there." ECF No. 126. But Judge Morris committed no clear error, and Plaintiffs' Objection No. 6 will be overruled.

Normally, a private party "acting alone cannot deprive an individual of their [Constitutional] rights" in violation of 42 U.S.C. § 1983. However, "[p]rivate persons jointly engaged with state officials in a deprivation of civil rights [act] under the color of law for the purposes of § 1983." *Wilkerson v. Warner*, 545 F. App'x 413, 421 (6th Cir. 2013). A § 1983 civil conspiracy requires (1) that a single or common plan existed, (2) that the conspiring defendants

- 54 -

shared in the general conspiratorial objective to deprive plaintiffs of their constitutional rights, and (3) an overt act committed in furtherance of the conspiracy which injured plaintiffs. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767 (6th Cir. 2020); *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011). But an "express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Bazzi*, 958 F.3d at 602 (internal citations omitted).

Plaintiffs argue that texts between Defendant Krentz and Defendants Schmidt and Harvey, coupled with the Defendants' June 2 search, taken together serve as sufficient to survive Krentz' Motion for Partial Summary Judgment and imply, circumstantially, the formation of a civil conspiracy. On April 20, 2021, Defendant Krentz texted Defendant Gibson:

> I've talked with both [Defendants Schmidt and Harvey] last fall. The consensus was to let [Plaintiffs] get this thing in motion then go after them. So, for now, we are watching closely from afar so to speak. We have owned this hunting land since 1981. This circus has every neighbor furious. We would love to see this group sent packing.

ECF No. 90-2 at PageID.2170 (emphasis added). Defendant Gibson responded "[k]eep me posted[.]" *Id.* On May 17, 2021, Defendant Krentz texted Defendant Gibson: "I believe its time to intervene on [Plaintiffs'] campground operation. *Id.* On May 26, 2021, after having other neighbors submit additional complaints concerning Plaintiffs' mini-cabins, Defendant Krentz texted Defendant Schmidt:

> Hey Dave. You should've received more complaint forms from my neighbors regarding the campground. I just wanted to make sure that we keep these in hand, until the time of, or after the group of officials converge on the site visit. I just don't want them to know we are coming.

ECF No. 90-3 at PageID.2171. On June 2, 2021, the day of the search, Defendant Krentz texted Defendant Schmidt: "Just firming up our meeting for this afternoon. Meeting you at the cones 320-330. [Defendant Harvey] will be riding with me and hopefully at least one township official." *Id.*

But these texts, even construed in Plaintiffs' favor, do not show a genuine issue of material fact to survive summary judgment. Indeed, the inferences Plaintiffs seek to be drawn from these texts—that Defendant Krentz had a shared conspiratorial objective with the Government Official Defendants to specifically deprive Plaintiffs of their Fourth Amendment rights—are bellied by Defendant Krentz's deposition testimony.

During deposition, Defendant Kretnz stated his explicit purpose in coordinating and escorting the Government Official Defendants to Plaintiffs' property on June 2 was to "assist the representatives from the township zoning office, the local health department, and the county building department to locate Plaintiffs' property[.]" ECF No. 90-11 at PageID.2184. Krentz stated he was trying to "show [the Government Official Defendants] what was going on [at Plaintiffs' property]; no more no less[.]" *Id.* at PageID.2214.

Most importantly, Defendant Krentz expressly stated he and the Government Official Defendants "never intended to even enter [Plaintiffs'] land." *Id.* at PageID.2216. Krentz stated the plan was "just to go up on the Miller property and [see] what's happening. After that point in time everybody can reach out and do their jobs accordingly." *Id.* Plaintiffs' counsel then asked, "was it decided before you and the three government officials went out there that you would be going onto the property?" But Defendant Krentz responded "no . . . *there was no plan . . . to step foot on [Plaintiffs'] property.*" *Id.* (emphasis added). Indeed, Defendant Krentz clarified that he escorted the Government Official Defendants specifically to the Miller property because the Government Official Defendants could "observe everything from the Miller property clearly" with no need to

physically enter Plaintiffs' land. *Id.* at PageID.2215. When Plaintiffs' counsel asked Defendant Krentz how the visit then progressed to physically entering Plaintiffs' property, Krentz stated "there was more there than anybody expected to see. It was a little bit of a surprise." *Id.* Krentz even indicated he initially "held his ground" on the Miller property until "one official" suggested that Krentz should take photos and "that's when [Krentz] stepped over" onto Plaintiffs' property. *Id.* Krentz further stated "[i]t's just one of them events that wasn't planned, but that's what happened." *Id.* at PageID.2216–17.

The Government Official Defendants (Schmidt, Harvey, and Gibson) deprived Plaintiffs' Fourth Amendment rights when they entered Plaintiffs' property without a warrant. *See* discussion *supra* Section III.C.1.b. But Defendant Krentz, despite his coordinating and escorting, did not intend this intrusion. The record shows only that he intended to escort the Government Official Defendants to Curtis Miller's property—with Mr. Miller's consent—and to look onto Plaintiffs' mini-cabins from afar. Although this is not what occurred, what did occur was not the product of a conspiracy intended to deprive Plaintiffs of their Constitutional rights.

As Jude Morris notes, this case is analogous to *Wilkerson v. Warner*. In *Wilkerson*, a plaintiff-doctor assisted a handcuffed protestor who appeared to have fainted. A paramedic then responded and began aiding the protestor. *Wilkerson*, 545 F. App'x at 416–17. As plaintiff "continued to communicate her unsolicited opinions" about the paramedic's treatment, the paramedic requested a police officer to remove plaintiff from the location. *Id.* at 417. The plaintiff alleged that the paramedic, a private individual, entered into a civil conspiracy to deprive plaintiff's First Amendment rights. *Id.* at 421. The Sixth Circuit affirmed summary judgment in favor of the paramedic-defendant because "there [was] scant evidence in the record to support a finding that any agreement existed between" the paramedic and the officer to remove the plaintiff from the

hallway "as a response" to plaintiff exercising her First Amendment rights. *See id.* at 42122. In other words, even viewing the evidence in plaintiff's favor, there was no evidence showing the private defendant and the government defendant agreed to specifically deprive the plaintiff's constitutional rights.

The same result here. As Judge Morris correctly concludes, "Plaintiffs have failed to proffer evidence that Defendant Krentz engaged in a plan with even one of the Government Officials *to violate their Fourth Amendment Constitutional right*. The most Plaintiffs demonstrate is that there was a plan in place for the Government Officials and Defendant Krentz to *observe* the min-cabins." ECF No. 124 at PageID.2884 (emphasis added). Plaintiffs' objection ignores the requirement that the conspiratorial objective must be to specifically deprive constitutional rights— a requirement that this record does not corroborate. Because Judge Morris neither misapplied the correct legal framework nor applied the wrong one, Plaintiffs' Objection No. 6 will be overruled, and Defendant Krentz's Motion for Partial Summary Judgment will be granted.

### E.  Michigan Trespass: Plaintiffs' Objection No. 10

#### 1.  Judge Morris's Recommendation

Judge Morris recommended that this Court decline to exercise supplemental jurisdiction over Count IV of the Amended Complaint, alleging Michigan trespass, because no federal claim would remain if the R&R was fully adopted and no compelling reason to retain the trespass claim exists. ECF No. 124 at PageID.2880. Plaintiffs object, arguing that their other eleven objections establish that Judge Morris clearly erred in dismissing at least some of their federal claims. ECF No. 126 at PageID.2952–53.

"Supplemental jurisdiction is discretionary, not mandatory." *Bruce v. Sana Health, Inc.*, 504 F. Supp. 3d 653, 657 (E.D. Mich. 2020) (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th

Cir. 2011). When a federal court has original subject matter jurisdiction—either federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332—on some claims, it can choose to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over "all other claims" that form "part of the same case or controversy under Article III of the . . . Constitution" as the claims with original jurisdiction. 21 U.S.C. § 1367(a). "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." *Bates v. Am. Credit Acceptance, LLC*, No. 16-12239, 2016 WL 5477429, at *3 (E.D. Mich. Sept. 29, 2016) (quoting *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

As discussed *supra* Section III.C, the R&R contained clear error within its Fourth Amendment analysis. Plaintiffs are entitled to summary judgment on their Fourth Amendment claims against the Government Official Defendants (Harvey, Schmidt, and Gibson) and Plaintiffs' Fourth Amendment *Monell* claim against Caledonia Township is a live, triable claim. And Plaintiffs' state law trespass claims, asserted against all Defendants, undoubtedly derive from a common nucleus of operative fact as Plaintiffs' Fourth Amendment claim as all involve the June 2 search. *See Bates*, No. 16-12239, 2016 WL 5477429, at *3 (finding supplemental jurisdiction over a counterclaim because it "revolve[s] around [the same] central fact pattern" as the plaintiff's claim).

Accordingly, Judge Morris committed clear error in recommending this Court decline supplemental jurisdiction over Plaintiffs' Michigan trespass claim. Plaintiffs' Objection No. 10 is sustained. But finding only that supplemental jurisdiction over Plaintiffs' state trespass claim is appropriate does nothing to resolve the Parties' pending motions for summary judgment. This

Court must proceed to analyze whether Defendants' conduct constituted a trespass under Michigan law and, if so, the remedies available to Plaintiff.

## 2.  Michigan Trespass Liability

Plaintiffs move for summary judgment because "there is no question" that the Government Official Defendants (Harvey, Schmidt, and Gibson) both personally and as agents for their respective municipalities, committed a trespass on June 2, 2021, and Defendant Krentz admitted to the trespass during his deposition. ECF No. 79 at PageID.792; *see also* ECF No. 79-36 at PageID.906. Plaintiffs concede that governmental immunity bars recovering damages from Defendants Harvey, Schmidt, Gibson, Alcona County, and Caledonia Township so they seek only an injunction prohibiting these Defendants from trespassing onto Plaintiffs' property in the future. ECF Nos. 23 at PageID.290; 79 at PageID.793–94. Plaintiffs seek damages from Defendant Krentz but reserve the issue for trial, seeking summary judgment only as to liability. ECF No. 79 at PageID.794.

Defendants Alcona County, Harvey and Schmidt move for summary judgment arguing (1) Plaintiffs cannot establish trespass as state law authorizes inspectors to enter private property to enforce construction codes; and (2) even if Plaintiffs could establish trespass under Michigan law, they lack standing to seek injunctive relief. *See* ECF Nos. 83 at PageID.1049–53; 85 at PageID.1281–83. Defendants Gibson and Caledonia Township focus their motion for summary judgment solely on standing. *See* ECF No. 86 at PageID.1781–84.

Plaintiffs respond that (1) they have standing for injunctive relief, (2) the Michigan code provisions that Defendants claim to have "authorized" their trespass are unconstitutional, and (3) regardless of constitutionality, the code provisions were not properly followed by Defendants on June 2, 2021. *See* ECF No. 91 at PageID.2254–59.

"A trespass is an unauthorized invasion on the private property of another." *Morse v. Colitti*, 896 N.W.2d 15, 30 (Mich. Ct. App. 2016) (quoting *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 691 (Mich. Ct. App. 2010)); *see also Difronzo v. Vill. of Port Sanilac*, 419 N.W.2d 756, 759 (Mich. Ct. App. 1988) ("Every unauthorized entry upon the private property of another constitutes a trespass.") To establish a trespass under Michigan law, Plaintiffs must prove "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which [Plaintiffs have] a right of exclusive possession." *Wiggins v. City of Burton*, 805 N.W.2d 517, 533 (Mich. Ct. App. 2011). Although "public officer[s] on the premises of another pursuant to legal authorization [are] not liable for trespass[,]" the officers will be liable if they act in excess of authority. *Antkiewicz v. Motorists Mut. Ins. Co.*, 283 N.W.2d 749, 753 (Mich. Ct. App. 1979), *vacated on other grounds*, 285 N.W.2d 659 (Mich. 1979); *see also Clark v. Wiles*, 20 N.W. 63 (Mich. 1884) (finding an individual who was digging a drain for another committed a trespass when throwing dirt "upon the plaintiff's land outside [expressed] limits"). Additionally, municipalities such as Defendants Alcona County and Caledonia Township may be vicariously liable for the trespass committed by their agents, such as Defendants Harvey and Gibson. *See Bologna v. Pevarnek*, No. 267244, 2007 WL 4207801, at *12 (Mich. Ct. App. Nov. 29, 2007) (applying the principles of vicarious liability to Michigan trespass and emphasizing "where there is an agency relationship between or among defendants, a common liability for a unitary injury should exist"); *McClaine v. Alger*, 388 NW2d 349, 354 (Mich. Ct. App. 1986) ("Vicarious liability is based upon principal-agent and master-servant relationships and involves the imputation of [fault] of the agent or servant to the principal or master[.]").

It is undisputed that the individual Defendants physically intruded on Plaintiffs' property on June 2, 2021. ECF Nos. 79-29 at PageID.874; 79-30 at PageID.876; 79-31 at PageID.880; 79-

36 at PageID.906. The only issue is whether this physical intrusion was authorized as to the Government Official Defendants (Schmidt, Harvey, and Gibson). These Defendants argue they were authorized to enter Plaintiffs' property under MICH. COMP. LAWS §§ 125.1512(2),[20] 333.2446,[21] and Rule 104.6 of the Michigan Residential Building Code.[22] But Defendants did not comply with the procedures of these provisions and no provision authorizes the *type* of trespass Defendants committed.

First, although MICH. COMP. LAWS § 125.1512(2) authorizes building inspectors, such as Defendants Harvey and Gibson, to "enter and inspect" private property to ensure compliance with building permits and "other applicable laws and regulations," this authorization is expressly conditioned on (1) inspectors presenting proper credentials and (2) inspectors not being accompanied by a third party, "unless his presence is necessary for the enforcement of the act."

---

[20]Stating "[t]he owner of premises on which a building or structure is being constructed is deemed to have consented to inspection. . . until a certificate of use and occupancy has been issued. An inspector, or team of inspectors, *on presentation of proper credentials*, may enter and inspect the premises and construction thereon, for purposes of insuring compliance with the building permit, the code and other applicable laws and regulations. An inspection shall be made between 8 a.m. and 6 p.m. on business days, or when construction is actually being undertaken . . . An inspection pursuant to this section shall be solely for purposes of enforcing this act and other laws and ordinances related to construction of buildings and structures. A person other than the owner, his agent, architect, engineer or builder *shall not accompany an inspector or team of inspectors on an inspection, unless his presence is necessary*[.]" MICH. COMP. LAWS § 125.1512(2).

[21] Broadly stating that "the local health department may inspect, investigate, or authorize an inspection or investigation to be made of any matter, thing, premise, place, person, vehicle, incident or event." MICH. COMP. LAWS § 333.2446.

[22] Stating "[w]here. . . necessary to make an inspection to enforce the provisions of this code, or where the building official has reasonable cause to believe that there exists . . . a condition that is contrary to or in violation of this code that makes the structure or premises unsafe, dangerous or hazardous, the building official is authorized to enter the structure or premises at reasonable times to inspect[.] If such structure or premises be occupied[,] credentials [must] be presented to the occupant and entry requested. If such structure or premises is unoccupied, the building official shall first make a reasonable effort to locate the owner or other person having charge or control of the structure or premises and request entry. If entry is refused, the building official shall have recourse to the remedies provided by law to secure entry. MICH. BLDG. CODE § R104.6.

But neither condition precedent occurred here. No Government Defendant ever presented "proper credentials" to Plaintiffs prior to physically entering their property on June 2, 2021. Additionally, all Government Official Defendants (Harvey, Schmidt, and Gibson) were accompanied by Defendant Krentz—a private third party and Plaintiffs' neighbor. *See* ECF No. 79-36 at PageID.906 (noting Defendant Krentz' trespass on June 2, 2021).

Second, although MICH. COMP. LAWS § 333.2446 broadly authorizes health department officials, such as Defendant Schmidt, to inspect private property for compliance with the Michigan Public Health Code, the Section expressly indicates that "Sections 2241 to 2247 apply to an[y] inspection or investigation made under this section." But Sections 2241 through 2247 all concern inspection and investigation warrants.[23] And it is undisputed that no Defendant obtained—or even attempted to obtain—such warrants prior to the June 2 "inspection." *See* ECF Nos. 79-29 at PageID.874; 79-30 at PageID.876; 79-31 at PageID.880; 79-36 at PageID.907.

Third, although Rule 104.6 of the Michigan Residential Building Code authorizes a building official, such as Defendants Harvey and Gibson, to enter private property to "make an inspection to enforce the provisions of" the Building Code, it expressly conditions this inspection on procedures officials must follow, based on whether the premises is occupied at the time of the inspection. If the premises are occupied, the building officials must provide their credentials prior to inspection. MICH. BLDG. CODE § R104.6. If the premises are unoccupied, the building officials

---

[23] Section 2241 allows health departments to inspect so long as they "apply for an inspection or investigation warrant[.]" MICH. COMP. LAWS § 333.2241. Section 2242 details the procedure by which a magistrate issues such warrant. *Id.* § 333.2242. Section 2243 explains the sufficient grounds for such warrants. *Id.* § 333.2243. Section 2244 explains what a magistrate can rely on when issuing such warrant. *Id.* § 333.2244. Section 2245 explains that warrants can be directed to law enforcement and "shall state the grounds or cause for its issuance[.]" *Id.* § 333.2245. Section 2246 explains warrant execution. *Id.* § 333.2246. Lastly, Section 2247 states that someone who procures an inspection or investigation warrant maliciously is guilty of a misdemeanor. *Id.* § 333.2247.

"shall first make a reasonable effort to locate the owner or other person having charge or control over the structure or premises and request entry. If entry is refused, the building official shall have recourse to the remedies provided by law to secure entry[,]" such as obtaining a warrant. *Id.* It is undisputed that the mini-cabins were unoccupied at the time of Defendants' June 2 search. ECF Nos. 83 at PageID.1037; 124 at PageID.2847. It is also undisputed that no Defendant "first made a reasonable effort to locate" Plaintiffs and "request entry." Indeed, the record suggests the opposite—that Defendants acted purposefully to avoid detection. ECF Nos. 79 at PageID.782–83; 79-13 at PageID.825 ("I just don't want [Plaintiffs] to know we are coming.")

Aside from Defendants' failures to comply with the requisite procedures within the statutory provisions they claim gave them the "authorization" to trespass on Plaintiffs' property, it is worth noting that none of these provisions authorize the type of trespass committed. Defendants did not merely walk or drive up Plaintiffs' driveway to inspect the mini-cabins. They could have. Instead, Defendants initially drove up Plaintiffs' driveway to observe the "campground sign" but turned around, drove around Plaintiffs' property, and entered it from Curtis Miller's property which shared a northern boundary line with Plaintiffs' property. ECF No. 124 at PageID.2847. Indeed, this "traipsing" was partially why this Court found Defendants violated Plaintiffs' Fourth Amendment rights during the June 2 search. *See* discussion *supra* Section III.C.1.b. Although these provisions—if procedurally abided by—authorize a general inspection, they do not authorize the type of inspection Defendants conducted on June 2, 2021.

Accordingly, all Defendants committed a trespass under Michigan law on June 2, 2021. But liability is only half the battle. As Plaintiffs emphasize, "the legal rub is the remedy." ECF No. 79 at pageID.793.

### 3. Remedy

Plaintiffs seek damages from Defendant Krentz and expressly reserve this issue for trial so Plaintiffs are entitled to summary judgment as to Defendant Krentz' liability. On the other hand, Plaintiffs seek an injunction halting all other Defendants (Harvey, Schmidt, Gibson, Caledonia Township, and Alcona County) from trespassing upon the Skylar Trail Property in the future.[24] ECF No. 23 at PageID.290. But Plaintiffs lack standing to pursue this remedy so their motion for summary judgment will be denied, and the Defendants' cross-motions for summary judgment will be granted.

The decision to grant or deny permanent injunctive relief falls within the equitable discretion of this Court. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To establish its entitlement to a permanent injunction, Plaintiffs must show "(1) that [they] have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [Plaintiffs] and [Defendants], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Remedy Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 732 (E.D. Mich. 2014) (quoting *eBay*, 547 U.S. at 391).

Plaintiffs have not shown any of these elements. Indeed, Plaintiffs' Motion for Partial Summary Judgment is devoid of any discussion regarding the sought-after injunction—Plaintiffs merely claim that "all government-defendants committed a trespass." ECF No. 79 at PageID.792.

---

[24] Plaintiffs pursue only injunctive relief against these Defendants because Plaintiffs concede these Defendants are immune from monetary damages under the Governmental Tort Liability Act (GTLA), MICH. COMP. LAWS § 691.1401. *See Wright v. Genesee Cnty.*, 934 N.W.2d 805, 809 (Mich. 2019) (noting tort "claims seeking a remedy other than compensatory damages" "are not barred by the GTLA").

This is insufficient to establish an entitlement to a permanent injunction and, as a result, Plaintiffs

Partial Motion for Summary Judgment to the extent it seeks a permanent injunction prohibiting

the Government Defendants from further trespassing on their property is denied. *See Beasley*, 71

F. Supp. 3d at 732 (denying a plaintiff's motion for summary judgment to the extent is sought a

permanent injunction when plaintiff "failed to establish all four elements necessary for the Court

to issue a permanent injunction.").

But all Government Defendants filed cross-motions for summary judgment on this issue,

too. Defendant Alcona County argues that Plaintiffs lack standing to seek a permanent injunction

because "[t]here is no evidence or repeated trespass . . . much less evidence of a present or future

threat of trespass." ECF No. 83 at PageID.1052. Defendants Harvey and Schmidt argue the same.

ECF No. 85 at PageID.1283 (claiming Plaintiffs "failed to identify any past, current, or future

harms, injuries, or damages resulting from [the] alleged trespass."). Defendants Gibson and

Caledonia Township join this argument, adding "Plaintiffs have not had any communications with

Gibson since June 2021" and that, since the June 2 trespass and search, "Gibson has not returned

to the property at any point in time." ECF No. 86 at PageID.1783. Defendants are correct.

Plaintiffs do not face an "imminent risk of likely irreparable harm." First, nothing in the

record suggests that Defendants will enter onto Plaintiffs' property anytime in the future. Further,

it is important to remember that mere entrance is not the problem for state law trespass purposes—

the issue is *how* the entrance is carried out and whether Defendants follow proscribed procedures.

Even if Plaintiffs had shown these Defendants were likely to physically intrude on their property

at some point in the future—which they have not—if Defendants, consistent with this opinion,

comply with the various procedural requirements of MICH. COMP. LAWS. §§ 125.1512(2) and

333.2446, and Rule 104.6 of the Michigan Building Code and limit their entry to customary paths

to the property, their physical intrusion is authorized, not trespassory, and not harmful. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010) (finding no irreparable injury for a permanent injunction when the defendant's potential future conduct, if "sufficiently limited," would render the risk of future harm "virtually nonexistent.")

In sum, Plaintiffs' Objection No. 10 will be sustained because it was clearly erroneous to decline supplemental jurisdiction over Plaintiffs' Michigan trespass claims. The remaining federal claims share a common nucleus of operative fact with Plaintiffs' trespass claim. Plaintiffs are entitled to summary judgment on this claim against Defendant Krentz only, because a trespass did occur and Defendant Krentz is not immune from damages. But Defendants Alcona County, Caledonia Township, Gibson, Harvey, and Schmidt are also entitled to summary judgment on this claim because Plaintiffs cannot establish entitlement to a permanent injunction—the only remedy sought on this claim against these specific Defendants.

### F. Factual Objections: Plaintiffs' Objections Nos. 11 and 12

In their last two Objections, Plaintiffs broadly argue the R&R is factually incomplete and inaccurate.

In Objection No. 11, Plaintiffs argue "the facts, as provided by the [R&R], did not encapsulate the nuanced facts that this case has." ECF No.126 at PageID.2953–57. But Plaintiffs do not identify any specific portion of the R&R as factually incorrect or inaccurate. Accordingly, Plaintiffs' Objection No. 11 will be overruled. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("A general objection . . . is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with

a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.").

The specifics come in Objection No. 12, which lists ten R&R statements and Plaintiffs' corresponding objections. ECF No. 126 at PageID.2953–57. The statements, Plaintiffs' objections, ECF No. 126 at PageID.2953–57, Defendants' responses, ECF No. 129 at PageID.3007–09, and this Court's conclusions are summarized in the following table.

| R&R Statement | Plaintiffs' Objection | Defendants' Response | Conclusion |
|---|---|---|---|
| "Plaintiffs represent that Defendant Krentz filed a complaint with Caledonia Township and took it upon himself to use his local government connections to obtain their assistance in trying to 'send the [Plaintiffs] packing.'" ECF No. 124 at PageID.2845-2846. | The complaints were filed with David Schmidt at the District Health Department No. 2. ECF Nos. 79-6 at PageID.818; No. 79-7 at PageID.819. | Plaintiff provided an incomplete citation. The R&R is correct. Plaintiffs' amended complaint . . . does represent that a "laundry list" of complaints were filed with the township. (ECF No.23, at PageID.27475). R&R Note 3 correctly notes the complaints were actually submitted to health department. | No error. |
| "In furtherance of the complaints, Defendant Krentz coordinated a meeting with Defendants Harvey, Schmidt, and Kenneth Gibson, then Caledonia Township Zoning Administrator, (collectively, the 'Government Officials') to escort | This statement, while not untrue, is incomplete. Viewing the facts in favor Plaintiffs, Defendant Krentz coordinated a secret, warrantless invasion upon the Mockeridges' property by himself and Defendants Harvey, Schmidt, and Kenneth Gibson, then Caledonia Township Zoning Administrator (collectively, the "Government | Plaintiffs acknowledge the statement is "not untrue." Their claims that the statement was incomplete is not supported by the record. The cited evidence, text messages, do not establish that there | No error. |

- 68 -

| | | | |
|---|---|---|---|
| them to the site so that the Government Officials could observe firsthand the concerns he and his neighbors had about the developments taking place on the Mockeridge property." ECF No. 124 at PageID.2846. | Officials"). ECF No. 79-13 at PageID.825. | was a plan to engage in a "warrantless invasion" onto Plaintiffs' property. | |
| "At the time of the site visit, the property was 'unoccupied' by the Mockeridge family." ECF No. 124 at PageID.2847. | The Skylar Trail Property had the main house, developments, and the mini-cabins. It was not unoccupied. ECF Nos. 79-5 at PageID.817; 98-5, at PageID.2456. However, it is true that no one from the Mockeridge family was present on the Skylar Trail Property on June 2, 2021. | Plaintiffs admit no one from the Mockeridge family was present on June 2, 2021, which is how the R&R used the term "unoccupied." | No error. |
| "Although the site was unoccupied, Defendant Krentz represents that his intention on June 2 was only to show the Government Officials the site from his Mr. Miller's, Defendant Krentz's godson, property and not to enter onto Plaintiffs' property." ECF No. 124 at PageID.2847. | [While no one from the Mockeridge family was present], the property [was] occupied with main house, recreational developments, and the mini-cabins. *See* ECF Nos. 79-5 at PageID.817; 98-5 at PageID.2456-59. Additionally, while it is true that "Defendant Krentz represents that his intention on June 2 was only to show the Government Officials the site from Curtis Miller's property, this assertion must be treated as untrue looking at the facts in the light most favorable to Plaintiffs. Looking at the facts in favor of Plaintiffs, Defendant Krentz intended the actual invasion onto the Skylar Trail Property by his co-conspirator government officials along with himself. ECF Nos. 79-12 at PageID.824; 79-13 at PageID.825. | Plaintiffs admit this statement is true. Further, Plaintiffs failed to present evidence that the assertion must be treated as "untrue". The cited evidence (text messages) do not create a genuine issue of material fact on this point. | No error. Judge Morris correctly used the term "unoccupied" as no Mockeridge family member was present at the property on June 2, and Judge Morris's statements regarding Defendant Krentz's intention are supported by the record. |

| | | | |
|---|---|---|---|
| "Defendant Harvey looked into three of the mini-cabins [on June 2, 2021] and noticed that while there were beds and bunks inside, they were not equipped with smoke detectors." ECF No. 124 at PageID.2848. | The assertion of the lack of smoke detectors was first-raised in Harvey's deposition and never had he before raised smoke detectors as a concern with the Mockeridges or cited to such as existing in the Building Code, including in the Stop Work Order. Stop Work Order, ECF Nos. 79-24 at PageID.860 (no reference to smoke detectors); 79-25 at PageID.861 (no reference to smoke detectors). In reality, smoke detectors have always been installed in the cabins at all times. ECF Nos. 79-2 at PageID.807; 83- at, PageID.1088 ("instantaneously when [the mini-cabins] were -- once [the mini-cabins] were completed [the mini-cabins] had smoke detectors put in."). Viewing the facts in light most favorable Plaintiffs, the claim of smoke detectors is a false flag. | Plaintiffs' objection fails to show a factual error, create a question of fact that is material to any issue in the case, or otherwise undermines the R&R's analysis. There is no question Harvey saw bunk beds and electrical wiring. While Plaintiffs attempt to create an issue of fact regarding smoke detectors, their evidence do not undermine the assertion that Defendant Harvey did not see them. | No error. |
| "Defendant Harvey informed Plaintiffs that a building permit was required if individuals were going to sleep in the mini-cabins." ECF No. 124 at PageID.2848 | It was only during the subsequent July 14, 2021, site visit when Defendant Harvey first informed . . . Plaintiffs that a building permit was required if individuals were going to sleep in the mini-cabins. This is evidenced when Harvey states during the July 14, 2021, site visit that "today I found out if you're sleeping in them you need a building permit." ECF Nos. 79-22, PageID.855; 83-2 at PageID.1155. That requirement is not an actual requirement for a building permit. | Plaintiffs' objection omits the initial clause to this statement, "Following the June 2 site visit". No error has been shown. | No error. |
| "After receiving permission from Plaintiffs' son Michael, [Defendant Harvey] inspected the | Defendant Harvey received permission from Plaintiff Michael to inspect Brian's cabin during the subsequent July 14, | Plaintiffs correctly note that the permission was provided by Plaintiff Michael, | While factually erroneous, this error does not |

| interior of one of the mini-cabins." ECF No. 124 at PageID.2848–49. | 2021, site visit. ECF No. 83-2 at PageID.1156. | not his son. The R&R makes clear that permission was provided on July 14, as part of that visit. Plaintiffs' objection fails to identify a factual error on a material fact or undermine the outcome of the R&R. | undermine the R&R or this Court's conclusions. |
|---|---|---|---|
| "Once [Defendant Harvey] concluded his inspection, he served the Stop Work Order." ECF No. 124 at PageID.2849. | Harvey served the Stop Work Order before he began the inspection on July 14, 2021. ECF No. 79-21 at PageID.854 ("I'm giving it to you right now."). | Plaintiffs fail to articulate why serving the stop work order on July 14 "before" the inspection is a material fact to any of the claims or issues in this case. It is not. | While factually erroneous, this error does not undermine the R&R or this Court's conclusions. |
| "[Defendant Harvey] issued the Stop Work Order because, during his June 2 site visit, he noticed the mini-cabins were equipped with electricity but there were no smoke detectors." ECF No. 124 at PageID.2849 | Harvey served the Stop Work Order before he began the proposed inspection during the second site-visit on July 14, 2021. The assertion of the lack of smoke detectors was first raised in Harvey's deposition and never had he before raised smoke detectors as a concern with the Mockeridges or cited to such as existing in the Building Code, including in the Stop Work Order. ECF Nos. 79-24 at PageID.860 (no reference to smoke detectors); 79-25 at PageID.861 (no reference to smoke detectors). In reality, smoke detectors have always been installed in the cabins at all times. ECF Nos. 79-2 at PageID.807; 83-1 at PageID.1088 ("instantaneously when [the mini-cabins] were -- | Plaintiffs' objection fails to show a factual error, create a question of fact that is material to any issue in the case, or otherwise undermines the R&R's analysis. There is no question Harvey saw bunk beds and electrical wiring. While Plaintiffs attempt to create an issue of fact regarding smoke detectors, their evidence do not undermine the assertion that | No error. |

| | once [the mini-cabins] were completed [the mini-cabins] had smoke detectors put in."). Viewing the facts in light most favorable Plaintiffs, the claim of smoke detectors is a false flag. | Defendant Harvey did not see them. | |
|---|---|---|---|
| "[Defendant Harvey] advised the Mockeridge children in attendance that he would call them in the morning but never did so." ECF No. 124 at PageID.2849. | During a call on-site, Harvey advised he would call Plaintiff Michael Mockeridge in the morning but never did so. | None. | No error. |

As Plaintiffs cannot show any R&R statement which was both factually erroneous and harmful, Plaintiffs' Objection No. 126 will be overruled. Judge Morris's 47-page R&R was sufficiently detailed and factually accurate.

**IV.**

Accordingly, it is **ORDERED** that Plaintiffs' Objections, ECF No. 126, are **SUSTAINED IN PART**, to the extent that Objections 1, 2, 4, 5 and 10 are **SUSTAINED**.

Further, it is **ORDERED** that Plaintiffs' Objections, ECF No. 126, are **OVERRULED IN PART,** to the extent that Objections 3, 6, 7, 8, 9, 11, and 12 are **OVERRULED.**

Further, it is **ORDERED** that Defendants Gibson and Caledonia Township's Objection, ECF No. 127, is **OVERRULED.**

Further, it is **ORDERED** that Judge Morris's Report and Recommendation, ECF No. 124 is **ADOPTED IN PART**, to the extent that it recommended dismissal of Counts I, II, and V of Plaintiffs' Amended Complaint.

Further, it is **ORDERED** that Judge Morris's Report and Recommendation, ECF No. 124, is **OVERRULED** in all other respects.

Further, it is **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, ECF No. 79, is **GRANTED IN PART** to the extent it asserts Defendants Harvey, Schmidt, and Gibson are liable under Count III and Defendant Krentz is liable under Count IV.

Further, it is **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, ECF No. 79, is **DENIED** on all other grounds.

Further, it is **ORDERED** that Defendant Krentz's Motion for Partial Summary Judgment, ECF No. 80, is **GRANTED**.

Further, it is **ORDERED** that Defendant Alcona County's Motion for Summary Judgment, ECF No. 83, is **GRANTED**.

Further, it is **ORDERED** that Defendants Harvey and Schmidt's joint Motion for Summary Judgment, ECF No. 85, is **GRANTED IN PART** to the extent it seeks dismissal of Counts I, II, and IV.

Further, it is **ORDERED** that Defendant Harvey and Schmidt's joint Motion for Summary Judgement, ECF No. 85, is **DENIED** on all other grounds.

Further, it is **ORDERED** that Defendants Gibson and Caledonia Township's joint Motion for Summary Judgment, ECF No. 86, is **GRANTED IN PART** to the extent it seeks dismissal of Count IV.

Further, it is **ORDERED** that Defendants Gibson and Caledonia Township's joint Motion for Summary Judgment. ECF No. 86, **DENIED** in all other respects.

Further, it is **ORDERED** that the remaining counts of Plaintiffs' Amended Complaint, ECF No. 23, are **DISMISSED IN PART**, as demonstrated by the following table.

| Count | Claim | Defendant(s) | Status |
|-------|-------|--------------|--------|
| I | Fourteenth Amendment Procedural Due Process | (1) Alcona County (2) Harry Harvey | Dismissed. |

| II | Equitable Estoppel / Vested Rights | (1) Alcona County<br>(2) Harry Harvey | Dismissed. |
|---|---|---|---|
| III | Fourth Amendment | (1) Harry Harvey<br>(2) Kenneth Gibson<br>(3) David Schmidt<br>(4) Alcona County<br>(5) Caledonia Township | (1) Summary judgment in favor of Plaintiffs against Defendants Harvey, Gibson, and Schmidt, with the issue of damages reserved for trial<br>(2) Dismissed as to Defendant Alcona County<br>(3) Remaining triable claim as to Defendant Caledonia Township |
| IV | Michigan Trespass | (1) Harry Harvey<br>(2) Kenneth Gibson<br>(3) David Schmidt<br>(4) Alcona County<br>(5) Caledonia Township<br>(6) Keith Krentz | (1) Summary judgment in favor of Plaintiff against Defendant Krentz, with the issue of damages reserved for trial<br>(2) Dismissed as to all other Defendants |
| V | Private Party § 1983 Conspiracy | (1) Keith Krentz | Dismissed. |

Further, it is **ORDERED** that the Scheduling Order, ECF No. 122, is **ADJOUNRED** as follows.

| Motions in Limine | November 6, 2023 |
|---|---|
| Civil Rule 26(a)(3)(B) Disclosures | January 15, 2024 |
| Pretrial Disclosures | February 6, 2024 |
| Final Pretrial Conference | February 13, 2024 at 2:00 PM EST |
| Jury Trial | March 5, 2024 at 8:30 AM EST |

**This is not a final order and does not close the above-captioned case.**

Dated: September 29, 2023

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

- 74 -