# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  December 11, 2023

Mr. William Jay Brown
Law Office
414 Townsend Street
Suite 201
Midland, MI 48640

Ms. Katelyn Crysler
Warner, Norcross & Judd
2715 Woodward Avenue
Suite 300
Detroit, MI 48201

Mr. Douglas J. Curlew
Cummings, McClorey, Davis & Acho
17436 College Parkway
Third Floor
Livonia, MI 48152

Mr. Meigs M. Day
Cummings, McClorey, Davis & Acho
2851 Charlevoix Drive, S.E.
Suite 203
Grand Rapids, MI 49546

Mr. Philip Lee Ellison
Outside Legal Counsel
P.O. Box 107
Hemlock, MI 48626

Mr. Thomas R. Meagher
Foster Swift Collins & Smith
313 S. Washington Square
Lansing, MI 48933

Mr. Matthew T. Nelson

Warner Norcross & Judd
150 Ottawa Avenue, N.W.
Suite 1500
Grand Rapids, MI 49503

Ms. Kristen Lee Rewa
Cummings, McClorey, Davis & Acho
2851 Charlevoix Drive, S.E.
Suite 203
Grand Rapids, MI 49546

Mr. William Paul Slough
Kirkpatrick, Slough, Duitsman-Coy & Mott
145 N. Otsego Avenue
Gaylord, MI 49735

Mr. Allan Craig Vander Laan
Cummings, McClorey, Davis & Acho
2851 Charlevoix Drive, S.E.
Suite 203
Grand Rapids, MI 49546

Mr. Daniel S. Zick
Foster Swift Collins & Smith
313 S. Washington Square
Lansing, MI 48933

> Re:  Case No. 23-1942/23-1998*, Michael Mockeridge, et al v. Harry Harvey, et al*
> Originating Case No. : 1:21-cv-12896

Dear Counsel,

The district court has ruled on the pending motion(s) identified under Fed. R. App. P. 4(a)(4) and these appeals can now proceed. These appeals were docketed as case number **23-1942** cross-appeal case number **23-1998** with the caption that is enclosed on a separate page.  The appellate case numbers and caption must appear on all filings submitted to the Court.  If the filing fee was not paid when the notice of appeal was filed, it must be paid to the district court immediately.

Before preparing any documents to be filed, counsel are strongly encouraged to read the Sixth Circuit Rules at www.ca6.uscourts.gov.  If you have not established a PACER account and registered with this court as an ECF filer, you should do so immediately.  Your password for district court filings will not work in the appellate ECF system.

At this stage of the appeal, the following forms should be downloaded from the web site and filed with the Clerk's office by **December 26, 2023**, if not already filed.  Additionally, the

transcript order must be completed by that date. For further information and instructions on ordering transcript electronically, please visit the court's website.

| | |
|---|---|
| Appellant Cross-Appellee: | Appearance of Counsel<br>Civil Appeal Statement of Parties & Issues 23-1942<br>Disclosure of Corporate Affiliations<br>Application for Admission to 6th Circuit Bar (if applicable) |
| Appellee Cross-Appellant: | Appearance of Counsel<br>Civil Appeal Statement of Parties & Issues 23-1998<br>Disclosure of Corporate Affiliations<br>Application for Admission to 6th Circuit Bar (if applicable) |
| Appellees: | Appearance of Counsel<br>Disclosure of Corporate Affiliations<br>Application for Admission to 6th Circuit Bar (if applicable) |

More specific instructions are printed on each form. If appellant's initial forms are not timely filed or necessary fees paid, the appeal will be dismissed for want of prosecution. If you have questions after reviewing the forms and the rules, please contact the Clerk's office for assistance.

Sincerely yours,

s/C. Anthony Milton
Case Manager
Direct Dial No. 513-564-7026

Enclosure

**OFFICIAL COURT OF APPEALS CAPTION FOR 23-1942**

MICHAEL MOCKERIDGE; SUSAN J. MOCKERIDGE

       Plaintiffs - Appellees Cross-Appellants

v.

HARRY HARVEY, in his personal capacity; DAVID SCHMIDT, in both his official and personal capacities; KENNETH GIBSON, in his personal capacity

       Defendants - Appellants Cross-Appellees

and

ALCONA COUNTY, MI, by its Board of Commissioners; KEITH KRENTZ; CALEDONIA TOWNSHIP, MI

       Defendants - Appellees [23-1998]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL J. MOCKERIDGE and
SUSAN J. MOCKERIDGE

                Plaintiffs,                Case No. 1:21-cv-12896

v.                                      Honorable Thomas L. Ludington
                                          United States District Judge
ALCONA COUNTY,
by its Board of Commissioners, et al.,

                                    Honorable Patricia T. Morris
                Defendants.         United States Magistrate Judge

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR
RECONSIDERATION AND DENYING DEFENDANT KRENTZ'S MOTION FOR
RECONSIDERAITON**

On September 29, 2023, this Court adopted in part and overruled in part Magistrate Judge

Patricia T. Morris's Report and Recommendation regarding five outstanding motions for summary

judgement involving constitutional and state tort claims stemming from Defendants' search of and

interference with mini-cabins that Plaintiffs constructed on their property without a permit.

Plaintiffs and Defendant Keith Krentz have each filed a Motion for Reconsideration. As explained

hereafter, both Motions for Reconsideration will be denied.

**I.**

**A.**

In September 2020, Plaintiffs, Michael J. Mockeridge and Susan J. Mockeridge, purchased

a 40-acre property for "cabining, hunting, enjoying nature, and family gatherings." ECF Nos. 79

at PageID.778; 86 at PageID.1778. After purchasing the property, Plaintiffs decided to install

"mini-cabins" on the site as "sleeping quarters for family members." ECF Nos. 79 at PageID.778–

79; 83 at PageID.1033. It is disputed whether Plaintiffs received verbal "preclearance" that no

permits were required before erecting their mini-cabins. *See* ECF No. 140 at PageID.3108. After the mini-cabins were erected, Plaintiffs assert that their neighbors, especially Defendant Keith Krentz, were "irrationally irked[.]" ECF No. 79 at PageID.780. Plaintiffs allege that Defendant Krentz "utilized his connections to local government officials" and "gathered together several other neighbors to make anonymous complaints to [the District] Health Department No[.] 2 about the Skylar Trail Property" to "sen[d] [Plaintiffs] packing." *Id*. In total, four complaints were submitted to the District Health Department by Plaintiffs' neighbors, including Defendant Krentz, reporting concerns about sanitation, fire hazards, and the operation of an unlicensed campground. *See* ECF Nos. 85 at PageID.1263; 85-8 at PageID.1654; 85-10 at PageID.1695.

After the complaints were filed, Defendant Krentz coordinated a meeting with Defendants (1) Harry Harvey, an Alcona County Building Department Building Official; (2) David Schmidt, the Environmental Health Program Coordinator of District Health Department No. 2; and (3) Kenneth Gibson, the Zoning Administrator of Caledonia Township,[1] (collectively, the "Government Official Defendants") to escort them to Plaintiffs' property to observe the mini-cabins. *See* ECF Nos. 79 at PageID.781–82; 79-13 at PageID.825; 79-36 at PageID.912; 83 at PageID.1036; 85-6 at PageID.1615–16.

On June 2, 2021, Defendant Krentz drove the Government Official Defendants up Plaintiffs' driveway to show them a campground sign the Mockeridges erected. ECF No. 85-6 at PageID.1616. But Defendant Krentz then turned around and drove the Government Official Defendants to the property of Curtis Miller, one of Plaintiffs' neighbors and Defendant Krentz's godson. *See* ECF Nos. 79 at PageID.783; 79-36 at PageID.900. Miller's property shares a boundary

---

[1] Defendant Gibson resigned from his position as Caledonia Township Zoning Administrator on June 10, 2021. ECF No. 124 at PageID.2846 n. 4.

line with Plaintiffs' property such that Miller's property is immediately north of Plaintiffs'. *See* ECF No. 79 at PageID.783. Importantly, "there is no regular access to [Plaintiffs' property] from this northern side." *Id.* At the time of this site visit, the mini-cabins were unoccupied. *See* ECF No. 83 at PageID.1037.

Although Defendant Krentz asserts he had no intention to enter Plaintiffs' property, ECF Nos. 85-6 at PageID.1617, 1619; 97 at PageID.2404, he did so, along with the Government Official Defendants. *See* ECF Nos. 79-29; 79-30; 79-31. While standing on the Miller property, Defendant Gibson observed that one of the mini-cabins did not appear to adhere to Defendant Caledonia Township's setback requirements. ECF No. 102 at PageID.2500. This prompted Defendants Gibson, Harvey, Schmidt, and Krentz to physically enter Plaintiffs' property, ECF Nos. 85-9 at PageID.1686; 102 at PageID.2500; 85 at PageID.1264; 85-10 at PageID.1695, 1701. Defendant Harvey looked through the windows of the mini-cabins using a small flashlight and observed that each were outfitted with electricity and contained bunk beds. *See* ECF No. 85-8 at PageID.1636, 1655. Defendant Krentz took photos. *See* ECF No. 79 at PageID.783–84. Defendants did not obtain a warrant authorizing this "site visit" and Plaintiffs did not consent. *See* ECF Nos. 23 at PageID.278; 79 at PageID.783; 85 at PageID.1264; 85-10 at PageID.1696; 97 at PageID.2405.

On June 16, 2021, Defendant Schmidt mailed a letter to Plaintiffs on behalf of District Health Department No. 2 stating "[b]etween May 19, 2021 and May 26, 2021, [the Department] received several complaints stating that [Plaintiffs were] operating an unpermitted and unlicensed campground" and that "[o]n June 2, 2021, [Defendant Schmidt] visited the site (along with representatives from the Alcona County Building Department and Caledonia Township) to investigate the validity of these complaints." ECF No. 79-18 at PageID.835. The letter also classified Plaintiffs' property as a "campground," and informed Plaintiffs that they were in

violation of Section 12506(b)(1) of Part 125 of the Public Health Code, which states that a "person shall not operate a campground without a campground license issued by the department[.]" *See id.* The letter instructed Plaintiffs to begin the licensing process within 30 days. *Id.* at PageID.836. Plaintiffs dispute the assertions in this letter and contend that their mini-cabins are "not within the definition or legal scope of a campground under Michigan law." ECF No. 23 at PageID.275.

On July 14, 2021, Defendant Harvey once again visited the Plaintiffs' Property. ECF No. 79 at PageID.786. Plaintiffs' adult son consented to an inspection and then Defendant Harvey served a Stop Work Order which alleged that the mini-cabins were in violation of Section R105.1 of "the Building Code," Section R.114.1 of "the Code," and "Article ?, Section ?" of "the Zoning Ordinance." ECF No. 23-5 at PageID.313 (question marks in original). Accordingly, the order stated "IT IS HEREBY ORDERED . . . that all persons, cease, desist from, and STOP WORK at once pertaining to the construction, alterations, or repairs on [the Plaintiffs' Property]. *Id.* (emphasis in original). On July 16, 2021, Defendants later served the Stop Work Order to Plaintiffs by U.S. mail. *See id.* at PageID.312; ECF No. 85 at PageID.1265

On July 30, 2021, Plaintiff Michael Mockeridge applied for the building permits. ECF No. 79 at PageID.788. Soon after, Plaintiffs claim they were called by an Alcona County Building Department representative who stated that the County "would issue the permits but would be imposing a penalty," doubling the permit price of $1,490 to $2,980 due to "work being started before permits were purchased." *Id.* Plaintiff Michael Mockeridge "immediately complained to the Alcona County Board of Commissioners and called upon the Board members for help . . . to issue any possible permit with no fees." *Id.*

On August 11, 2021, the Alcona County Board of Commissioners conveyed a "special meeting to discuss the . . . Skylar Trail Property" without providing notice to Plaintiffs. *Id.* at

PageID.789; *see also* ECF No. 23 at PageID.280. At the meeting, Defendant Harvey, who was not

a member of the Alcona County Board of Commissioners, ECF No. 23 at PageID.280, "requested

the Board move into a closed session to discuss Building Department matters." ECF Nos. 79 at

PageID.789; 79-27 at PageID.866. The Board went into closed session at 3:06 PM and returned at

3:44 PM. ECF No. 79-27 at PageID.866. Immediately upon returning to the open session, the

Board approved a motion to "deny the request of [Plaintiff] Michael Mockeridge to waive the

building permit fees." *Id.* (emphasis omitted); *see also* ECF No. 79 at PageID.789.

**B.**

On January 21, 2022, Plaintiffs filed their Amended Complaint, ECF No. 23, which

contained the following claims:

| Count | Claim | Defendant(s) |
|-------|-------|--------------|
| I | Deprivation of Fourteenth Amendment procedural due process by issuing the July 14, 2021 Stop Work Order without pre-deprivation notice nor hearing | (1) Alcona County (2) Harry Harvey |
| II | Equitable estoppel because Plaintiffs relied on Defendant Harvey's representations that no permit was needed and were prejudiced as a result | (1) Alcona County (2) Harry Harvey |
| III | Deprivation of Fourth Amendment rights by searching the Skylar Trail Property on June 2, 2021 without a warrant or Plaintiffs' consent | (1) Harry Harvey (2) Kenneth Gibson (3) David Schmidt (4) Alcona County (5) Caledonia Township |
| IV | Trespass under Michigan law by physically intruding on the Skylar Trail Property on June 2, 2021 without Plaintiffs' consent | (1) Harry Harvey (2) Kenneth Gibson (3) David Schmidt (4) Alcona County (5) Caledonia Township (6) Keith Krentz |
| V | Private party conspiracy with Defendants Harvey, Gibson, Schmidt, Alcona County, and Caledonia Township to deprive Plaintiffs of rights, in violation of 42 U.S.C. § 1983 | (1) Keith Krentz |
| VI | Violating the Michigan Open Meetings Act by going into closed session on August 11, 2021 | (1) Carolyn Brummund (2) Terry Small |

| | | (3) Dan Gauthier<br>(4) William Thompson<br>(5) Adam Berge |
|---|---|---|
| VII | Violating the Michigan Open Meetings Act by going into closed session on August 11, 2021 | (1) Alcona County |

*See* ECF No. 23 at PageID.282–95. On June 27, 2022, Counts VI and VII were dismissed with prejudice based on the Parties' stipulation. ECF No. 65.[2]

In January 2023, the Parties filed the following five motions for summary judgment:

| ECF No. | Motion | Relevant Claims |
|---|---|---|
| 79 | Plaintiffs' Motion for Partial Summary Judgment | (a) Count I—Procedural Due Process<br>(b) Count II—Equitable Estoppel/Vested Rights<br>(c) Count III—Fourth Amendment, as to the Government Official Defendants (Harvey, Gibson, and Schmidt)[3]<br>(d) Count IV—Michigan Trespass[4] |
| 80 | Defendant Krentz's Motion for Partial Summary Judgment | (a) Count V—Private Party § 1983 Conspiracy |
| 83 | Defendant Alcona County's Motion for Summary Judgment | (a) Count I—Procedural Due Process<br>(b) Count II—Equitable Estoppel/Vested Rights<br>(c) Count III—Fourth Amendment<br>(d) Count IV—Michigan Trespass |
| 85 | Defendants Harvey and Schmidt's Motion for Summary Judgment | (a) Count I—Procedural Due Process<br>(b) Count II—Equitable Estoppel/Vested Rights<br>(c) Count III—Fourth Amendment<br>(d) Count IV—Michigan Trespass |
| 86 | Defendants Gibson and Caledonia Township's Motion for Summary Judgment | (a) Count III—Fourth Amendment<br>(b) Count IV—Michigan Trespass |

On March 17, 2023, this Court referred all five summary judgment motions to Magistrate Judge Patricia T. Morris. *See* ECF No. 107. On July 26, 2023, Judge Morris issued a report

---

[2] The Stipulation and Order erroneously states that "Count V and VI of the Amended Complaint . . . will be dismissed with prejudice[.]" *See* ECF No. 65 at PageID.715.

[3] On this claim, Plaintiffs only sought summary judgment as to liability, reserving the issue of damages for trial. ECF No. 79 at PageID.791.

[4] On this claim, as to Defendant Krentz only, Plaintiffs seek summary judgment as to liability, reserving the issue of damages for trial. ECF No. 79 at PageID.794

recommending that Plaintiffs' Motion for Summary Judgment be denied and that all Defendants' Motions for Summary Judgment be granted (the "R&R"). ECF No. 124. On August 9, 2023, Plaintiffs filed twelve Objections to the R&R, ECF No. 126, and Defendants Gibson and Caledonia Township filed one joint Objection to the R&R, ECF No. 127. On September 29, 2023, this Court issued an Opinion and Order (the "Opinion") adopting the R&R in part; sustaining five of Plaintiffs' objections; and overruling Defendants Gibson and Caledonia Township's objection. ECF No. 140; *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, No. 1:21-CV-12896, 2023 WL 6367687 (E.D. Mich. Sept. 29, 2023).

This Court agreed with Judge Morris that Plaintiffs procedural due process claim (Count I) should fail because Plaintiffs could not show a legitimate property interest. *See generally* ECF No. 140 at PageID.3120–30. Specifically, this Court rejected Plaintiffs' argument that "they have (and have *always* had) the right" to freely install their mini-cabins without a permit under applicable Michigan code, because this argument was untimely and never raised prior to objecting to Judge Morris's R&R. *Id.* at PageID.3122. In the alternative, this Court held that, "even if Plaintiffs' references to the code[] . . . somehow impliedly invoked this argument, Plaintiffs have not shown they are entitled to summary judgement" because "the question remains whether Plaintiffs, in fact, ever needed a permit." *Id.* at PageID.3122–23. This Court also rejected Plaintiffs' *vested* property right argument because Michigan precedent requires a permit for property rights to vest and it is undisputed Plaintiffs lacked a permit when they began constructing their mini-cabins *Id.* at PageID.3124–26. Accordingly, this Court dismissed Count I in its entirety, and granted summary judgment in favor of Defendants.

Regarding Plaintiffs' "Equitable Estoppel / Vested Rights" claim (Count II), this Court noted that "Michigan Courts have routinely emphasized that equitable estoppel is not a distinct

cognizable legal claim[,]" *id.* at PageID.3128 (collecting cases), and held that this claim failed for the same reasons Plaintiffs' due process "vested rights" argument failed: Michigan precedent requires an actual permit for this doctrine to apply. *Id.* at PageID.3129. And, more importantly, this Court agreed with Judge Morris that genuine issues of material fact remained as to (1) whether any Defendant ever told Plaintiffs that no permit was needed and (2) whether Plaintiffs' subsequent reliance on this verbal clearance—if it occurred—was justified.[5] *Id.* at PageID.3130. Accordingly, this Court dismissed Count II in its entirety and granted summary judgment in favor or Defendants.

Turning to Plaintiffs' Fourth Amendment claim (Count III), this Court held that Plaintiffs' mini-cabins fell within the curtilage and were subject to Fourth Amendment protection. *Id.* at PageID.3132–37. This Court further found that Defendants Harvey, Gibson, and Schmidt unreasonably searched Plaintiffs' mini-cabins during the June 2, 2021 "site visit," depriving Plaintiffs of their Fourth Amendment rights, because the search was effectuated without a warrant and the administrative and "de minimis" exceptions did not apply to render the search reasonable. *Id.* at PageID.3142–48. Having found a Fourth Amendment violation, this Court held that the Government Official Defendants were not entitled to qualified immunity because their actions— entering Plaintiffs' property without a warrant by way of a neighbor's private property for the

---

[5] In Plaintiffs' Objections to the R&R, Plaintiffs' Counsel remarked that this finding "left [him] with some confusion" because it is "totally incongruous" that Judge Morris could, simultaneously, recommend denying Plaintiffs' motion for summary judgment on this issue due to these genuine issues of material fact but also recommend granting the Defendants' motions for summary judgment on this issue. ECF No. 126 at PageID.2951. It is not. The genuine issue of material fact as to whether Defendant Harvey, or any other Defendant, told Plaintiffs they needed no permit is fatal to Plaintiffs' summary judgment motion because, if no Defendant told Plaintiffs they did not need a permit, Plaintiffs have no vested property right as there was nothing for them to rely on in the first instance. However, at the same time, summary judgment for Defendants on this claim is warranted because, even if a Defendant gave Plaintiffs verbal preclearance, such preclearance is not a permit—which is a precedential requirement for a vested right under both due process and equitable estoppel theories. *See* ECF No. 140 at PageID.3130 n. 12.

express purpose of avoiding detection—violated clearly established law.[6] *Id.* at PageID.3148–54; *see also Bovat v. Vermont*, 141 S. Ct. 22 (2020); *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 563 (6th Cir. 2018). Accordingly, this Court granted summary judgment in favor of Plaintiffs. ECF No. 140 at PageID.3153, 3178. But this court granted summary judgement in favor of Defendant Alcona County because Plaintiffs did not show any "official policy" sufficient for *Monell* liability. *Id.* at PageID.3154–57. And Plaintiffs' Fourth Amendment *Monell* claim against Defendant Caledonia Township remains outstanding because Plaintiffs survived the Township's motion for summary judgment by showing a genuine question of fact as to whether the Township trained its officers on key duties implicating constitutional rights. *Id.* at PageID.3157–59.

Regarding Plaintiffs' Michigan Trespass claim (Count IV), this Court found clear error in Judge Morris's recommendation to decline supplemental jurisdiction because the trespass claim and Plaintiffs' Fourth Amendment claim shared a common nucleus of operative fact. *Id.* at PageID.3163–65; *see* also *Bates v. Am. Credit Acceptance*, LLC, No. 16-12239, 2016 WL 5477429, at *3 (E.D. Mich. Sept. 29, 2016). Plaintiffs sought an injunction prohibiting Defendants Harvey, Gibson, Schmidt, Alcona County, and Caledonia Township from trespassing onto Plaintiffs' property in the future, conceding that these Defendants were immune from damages under the Michigan Governmental Tort Liability Act, MICH. COMP. LAWS § 691.1407 *et seq*. ECF No. 140 at PageID.3165. Plaintiffs sought damages from Defendant Krentz, who was unaffiliated with a government entity, but reserved this issue for trial—seeking summary judgement only as to liability. *Id.* Although this Court found that all Defendants trespassed on Plaintiffs' property on June 2, 2021, and granted summary judgment in favor of Plaintiffs as to Defendant Krentz, *id.* at

---

[6] The Government Official Defendants (Harvey, Schmidt, and Gibson) filed their notice of appeal on this issue on October 18, 2023. ECF No. 143. Plaintiffs filed notice of cross-appeal on November 6, 2023. ECF No. 148.

PageID.3165–69, this Court granted summary judgement to all other Defendants because Plaintiffs lacked standing for their requested injunction. *Id.* at PageID.3170–72.

Lastly, this Court granted summary judgment in favor of Defendant Krentz and dismissed Plaintiffs' private party § 1983 conspiracy claim (Count V) because the record, even when viewed in a light most favorable to Plaintiffs, did not establish any shared conspiratorial objective between Defendant Krentz—a private party—and any of the government Defendants to violate Plaintiffs' rights. *Id.* at PageID.3159–63. The effect of this Court's Opinion is summarized below:

| Count | Claim | Defendant(s) | Status |
|-------|-------|--------------|--------|
| I | Fourteenth Amendment Procedural Due Process | (1) Alcona County<br>(2) Harry Harvey | Dismissed. |
| II | Equitable Estoppel / Vested Rights | (1) Alcona County<br>(2) Harry Harvey | Dismissed. |
| III | Fourth Amendment | (1) Harry Harvey<br>(2) Kenneth Gibson<br>(3) David Schmidt<br>(4) Alcona County<br>(5) Caledonia Township | (1) Summary judgment in favor of Plaintiffs against Defendants Harvey, Gibson, and Schmidt, with the issue of damages reserved for trial<br>(2) Dismissed as to Defendant Alcona County<br>(3) Remaining triable claim as to Defendant Caledonia Township |
| IV | Michigan Trespass | (1) Harry Harvey<br>(2) Kenneth Gibson<br>(3) David Schmidt<br>(4) Alcona County<br>(5) Caledonia Township<br>(6) Keith Krentz | (1) Summary judgment in favor of Plaintiffs against Defendant Krentz, with the issue of damages reserved for trial<br>(2) Dismissed as to all other Defendants |
| V | Private Party § 1983 Conspiracy | (1) Keith Krentz | Dismissed. |

Plaintiffs filed a Motion for Reconsideration, ECF No. 141 on October 3, 2023, and Defendant Krentz filed a Motion for Reconsideration, ECF No. 142, on October 13, 2023.

## II.

Local Rule 7.1(h) distinguishes the standard of review for motions for reconsideration of final orders, E.D. MICH. LR 7.1(h)(1), as opposed to nonfinal orders, E.D. MICH. LR 7.1(h)(2). Plaintiffs and Defendant Krentz seek reconsideration of a nonfinal order. *See* ECF No. 140 at PageID.3179.

Local Rule 7.1(h)(2) provides that:

Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:
    (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
    (B) An intervening change in controlling law warrants a different outcome; or
    (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).

Plaintiffs and Defendant Krentz have not presented any new facts or controlling law in their motion. Therefore, only Local Rule 7.1(h)(2)(A) applies to their Motion. Local Rule 7.1(h)(2)(A) requires the movant to demonstrate (1) that the court made a mistake, (2) that correcting the mistake changes the outcome of the prior decision, and (3) that the mistake was based on the record and law before the court at the time of its prior decision. *Hillman Power Co. v. On-Site Equip. Maint., Inc.*, No. 1:19-CV-11009, 2022 WL 193598, at *3 (E.D. Mich. Jan. 21, 2022) (citing E.D. MICH. LR 7.1(h)(2)(A)). Each Motion for Reconsideration will be addressed in turn.

### III. Plaintiffs' Motion for Reconsideration

Plaintiffs' Motion for Reconsideration alleges three "mistakes" within the Opinion warrant reconsideration. First, Plaintiffs argue this Court should not have granted summary judgment in

favor of Defendant Alcona County because "Alcona County never affirmatively sought relief on this basis." ECF No. 141 at PageID.3184. Second, Plaintiffs argue this Court mistakenly failed to analyze the liability of District Health Department No. 2 when Defendant Schmidt—a District Health Department No. 2 official—was sued in both his individual and official capacity. *Id.* at PageID.3187–88. Third, Plaintiffs request this Court to "re-review" the Opinion's holding that Plaintiffs were not deprived of due process nor equitably estopped and clarify whether the "code" Defendant Harvey attempted to enforce was the Michigan *Residential* Code or the Michigan *Building* Code. *Id.* at PageID.3189–93. Each alleged mistake will be addressed in turn below.

### A. Alcona County's *Monell* Liability

Plaintiffs first argues that this Court, after finding an underling Fourth Amendment violation in favor of Plaintiffs, erred by turning to whether Plaintiffs had met their *Monell* obligations to show, at the very least, that a genuine question of fact existed as to whether Defendant Alcona County had an "official policy" to deprive constitutional rights because, according to Plaintiff, Defendant "Alcona County never affirmatively sought relief on this basis[.]" ECF No. 141 at PageID.3185. But Plaintiffs misconstrue Defendant Alcona County's motion for summary judgment and attributes error to this Courts' analysis when no error existed. Accordingly, Plaintiffs have not shown sufficient grounds for reconsideration.

### 1.

Additional context is helpful here. In their Amended Complaint, Plaintiffs alleged that Defendant Alcona County was liable as a municipality under *Monell* for having a custom, policy, or practice which officers acted under to deprive Plaintiffs of their Fourteenth Amendment due process rights—related to the July 14, 2021 stop work order—and their Fourth Amendment rights—related to the June 2, 2021 warrantless search. *See* ECF No. 23 at PageID.283–84, 287–

88. Importantly, although Plaintiffs never explicitly mentioned *Monell* in their Motion, Plaintiffs sought summary judgement against Defendant Alcona County only on their Fourteenth Amendment claim. *See* ECF No. 79 at PageID.800 (arguing "[i]t was the policy and practice of Alcona County" to issue stop work orders without a prior hearing and notice). Plaintiffs did not seek summary judgement against Defendant Alcona County, or any other municipal Defendant, on their Fourth Amendment claim, choosing to only seek summary judgement on this claim against the individual Government Defendants. *See Id.* at PageID.790–91. But Defendant Alcona County sought summary judgement on all of Plaintiffs' claims. ECF No. 83.

As explained in the Opinion, municipal liability under *Monell* demands a plaintiff prove that the municipal defendant had an "official policy" which caused an employee to violate another's constitutional right. ECF No. 140 at PageID.3155 (*citing Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)). And while there are four general "avenues" a plaintiff can take to meet this proof,[7] a municipal defendant will not be liable "if their officers commit no constitutional violation in the first place." *Id.* at PageID.3154–55 (citing *Roell v. Hamilton Cnty.*, 870 F.3d, 471, 487 (6th Cir. 2017)). Cognizant of this analysis, Defendant Alcona County decided to focus its summary judgement argument on contesting the alleged underlying constitutional violations—not the *additional* hurdles Plaintiffs must overcome to show Defendant Alcona County had an "official policy" subjecting them to *Monell* liability. *See* ECF No. 83 at PageID.1041–49.

---

[7] These "avenues" include: (1) the defendant's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Judge Morris, also cognizant of the fact that municipal *Monell* liability will not lie when a municipality's officers commit no underlying constitutional violations, recommended granting Defendant Alcona County's motion for summary judgement in its entirety because Judge Morris found no underlying constitutional violations.[8] ECF No. 124 at PageID.2885. But this Court found clear error in the R&R and held that Defendant Harvey, an Alcona County official, violated the Fourth Amendment when he and the individual Government Defendants searched Plaintiffs' property on June 2, 2021 without a warrant and without exception. *See* ECF No. 140 at PageID.3130–54.

Having found an underlying constitutional violation, this Court proceeded to analyze whether Plaintiffs had established, at the very least, a genuine issue of material fact as to whether Defendant Alcona County had an "official policy" under *Monell* to survive Defendant Alcona County's motion for summary judgment. *Id.* at PageID.3156–57. This Court found that no genuine issue of material fact existed as the only proof Plaintiffs had to support their "customary practice" *Monell* claim was that Defendant Harvey testified that he entered private property to inspect for permit compliance without warrants "probably a dozen times" since 2011. *Id.* at PageID.3156 (citing ECF Nos. 83-3 at PageID.1175–76; 91 at PageID.2258–59). As the Opinion explained, this showing is insufficient because, even when viewed in a light most favorable to Plaintiffs, the mere

---

[8] As stated in the Opinion, the R&R was slightly unclear as to why, precisely, Judge Morris recommended granting summary judgment in favor of Defendant Alcona County. ECF No. 140 at PageID.3155. Judge Morris merely stated that its motion for summary judgment should be granted "for the reasons discussed above as to Defendant Harvey[.]" ECF No. 124 at PageID.2855. But Judge Morris found *both* that Defendant Harvey committed no constitutional violations *and*, even if he did, he would otherwise be entitled to qualified immunity. *See generally* ECF No. 124. This Court's Opinion noted that "Judge Morris's recommendation to grant Defendant[] Alcona County['s] motion[] for summary judgment . . . likely turned on [her] finding of no [constitutional] violation in the first place" because this reasoning—unlike qualified immunity—is in line with the *Monell* framework.

fact that Harvey entered private property without a warrant does not mean each entrance was necessarily unconstitutional because exceptions to the warrant requirement may have applied and Plaintiffs had not shown otherwise. *Id.* at PageID.3156–57. And, even assuming the "dozen" entrances were unconstitutional, Plaintiffs had not shown that Defendant Alcona County knew of those instances—let alone acquiesced in them—and twelve instances of unconstitutional conduct over an eleven-year period does not create a pattern "so permanent and well settled as to constitute a custom or usage within the force of the law." *Id.* (citing *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 n.3 (6th Cir. 2007) (*quoting Monell*, 436 U.S. at 691).

**2.**

Turning to Plaintiffs' Motion for Reconsideration, Plaintiffs argue this Court should not have taken up the *Monell* "official policy" question after holding that the individual Government Defendants deprived Plaintiffs of their Fourth Amendment Rights. ECF No. 141 at PageID.3184–87. According to Plaintiff, despite filing a motion for summary judgment on Plaintiffs' *Monell* claims, Defendant Alcona County's decision to focus its argument on the underlying constitutional violations precluded this Court's consideration of *Monell* liability altogether.[9] *See id.* Plaintiffs argue that this Court should have denied Alcona County's motion for summary judgement and, "instead[,] direct[ed] Alcona County . . . to defend itself at the forthcoming trial." *Id.* at PageID.3187. But this Court properly applied the summary judgement standard and dismissed Alcona County as a party because Plaintiffs could not show that a genuine issue of material fact existed as to whether the County had an "official policy" sufficient for *Monell* liability.

---

[9] Plaintiffs continue to assert that Defendant Alcona County, by limiting its argument to the underlying constitutional violation question, failed to assert a "*Monell* defense." ECF Nos. 91 at PageID.2248 (fn.8); 136 at PageID.3066- 3067; 141 at PageID.3186 (emphasis added). There is no such thing.

Plaintiffs' repeated assertion that Defendant Alcona County did not argue whether Plaintiffs met their *Monell* obligations is inaccurate. First, Defendant Alcona County expressly sought summary judgment on *all* of Plaintiffs' claims, including Plaintiffs' *Monell* claims for Fourteenth Amendment and Fourth Amendment deprivations. *See* ECF Nos. 83; 23. This alone should have put Plaintiffs on notice of their need to, as Plaintiffs state, "put up or shut up." ECF No. 141 at PageID.3185. And, although the County focused its summary judgment argument on the underlying alleged constitutional violations, it still clearly and correctly recited the *Monell* analysis. ECF No. 83 at PageID.1040. Indeed, Defendant Alcona County's entire argument section within its brief in support began by citing *Monell* and stating:

> [P]laintiff[s] must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [Plaintiffs'] particular injury was incurred due to the execution of that policy. If the record fails to demonstrate that any individual officer actually violated the plaintiff's rights, the municipality cannot be found liable, regardless of its policies.

*Id.* at PageID.1041 (internal citations omitted). Further still, Defendant Alcona County dedicated an entire argument section within its Reply in support of its summary judgment motion to addressing why Plaintiffs failed to establish an "official policy" under a "customary practice theory" sufficient for *Monell*. *See* ECF No. 110 at pageID.2757–59.

Plaintiffs repeated assertion that they never argued Alcona County's *Monell* liability, ECF No. 141 at PageID.3187, is also inaccurate. In their Response to Alcona County's motion for summary judgment, Plaintiffs expressly argued that the June 2, 2021 warrantless search and site visit was "a *customary practice* of Alcona County." ECF No. 91 at PageID.2258 (emphasis added). Indeed, Plaintiffs went on to cite the very same portions of Defendant Harvey's deposition— regarding the probable "dozen" instances of warrantless entrances over the past eleven years—that Plaintiffs now fault this court for considering insufficient when granting summary judgment in

favor of Alcona County. *Compare Id.* at PageID.2258–59 (making the argument) *with* ECF No.141 at PageID.3186 (denying ever making the argument).

Ultimately, as the Opinion noted, when Defendant Alcona County moved for summary judgment on all claims, it had the initial burden of identifying "where to look in the record for evidence which it believes demonstrate[s] the absence of a genuine issue of material fact." ECF No. 140 at PageID.3118 (internal citations omitted). This burden was satisfied. Accordingly, the burden shifted to Plaintiffs to establish "a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). This burden was not satisfied. Plaintiffs did not identify any Alcona County official policy or customary practice sufficient to support its *Monell* claim and survive the County's motion for summary judgment.[10] Thus, Plaintiffs have failed to identify any mistake in the Opinion which warrants a different outcome.

### B. District Health Department No. 2's Liability

Second, Plaintiffs assert this court erred in not considering District Health Department No. 2's (the "Health Department's") liability as a municipality when one of its employees—Defendant Schmidt—was sued in his official capacity. Plaintiffs' note that "[t]echnically speaking, this Court did not rule at all on the liability of [the] Health Department[.] So, it is possible that reconsideration

---

[10] As a final note, Defendant Caledonia Township took the same approach as Defendant Alcona County and focused on its summary judgment argument on the underlying alleged constitutional questions, rather than whether Plaintiffs could establish an "official policy" sufficient for *Monell* liability. Judge Morris took the same approach in recommending this Court grant the Township's summary judgement motion because she found no underlying constitutional violation. And this Court took the same approach, after finding clear error and a Fourth Amendment violation, in turning to whether Plaintiffs established a genuine issue of material fact as to Defendant Caledonia Township's "official policy" to survive its motion for summary judgment. But after this Court denied Caledonia Township's motion for summary judgment because—as Plaintiffs state—the Township had an "unquestionable policy of failing to train," ECF No. 141 at PageID.3187 n. 1, Plaintiffs do not complain. Plaintiffs cannot have their cake and eat it, too. It cannot be erroneous for this Court to "analyze what Judge Morris did not reach" as to Defendant Alcona County but, simultaneously, not erroneous to employ this same approach as to Defendant Caledonia Township.

is not the correct label[.] As such, Plaintiffs are seeking . . . clarification on the matter[.]" ECF No. 141 at PageID.3188 n. 2. The Opinion did not address the Health Department's liability because the Parties presented no arguments and the record contained no evidence to allow any analysis. Accordingly, reconsideration will be denied on this ground, and clarification will be provided.

A suit against an individual in their official capacity "is the equivalent of a suit against the governmental entity" that employs the individual. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). But simply bringing a claim against individual officers in their "official capacity" does not render the requirements of *Monell* municipality liability inapplicable. Indeed, the municipal employer of an individual sued in their official capacity can only be liable if the plaintiff can demonstrate that their constitutional injuries—if any—"were the result of an unconstitutional policy or custom of the" municipal employer. *Id.* (citing *Monell*, 436 U.S. 658); *see also Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (noting "'[m]ore is required in an official-capacity action.... [T]he entity's 'policy or custom' must have played a part in the violation of federal law.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, (1985))).

Unlike the other Government Official Defendants, Defendant Schmidt was sued in both his official and individual capacities, as an employee of the Health Department. ECF Nos. 1 at PageID.3; 23 at PageID.272. The Opinion found that Defendant Schmidt's "site visit" to Plaintiffs' property on June 2, 2021 deprived Plaintiffs of their Fourth Amendment Rights and constituted a trespass under Michigan law. *See generally* ECF No. 140. The Opinion did not discuss whether the Health Department was liable under *Monell* for the Fourth Amendment deprivation or vicariously liable for the trespass. *Id.*

If the Opinion had analyzed the Health Department's trespass liability, the Health Department would be dismissed for the same reasons as Defendants Alcona County and Caledonia

Township—because municipalities are economically immune from trespass liability under Michigan's Governmental Tort Liability Act (GTLA) and Plaintiffs lack standing to seek their requested injunction. *See* ECF No. 140 at PageID.3170–72.

Turning to the Health Department's liability for Defendant Schmidt's Fourth Amendment deprivation, the Parties—including Plaintiffs—have not presented *any* arguments or evidence as to the Health Department's liability under *Monell*.[11] Judge Morris's R&R did not discuss the Health Department's liability, likely because she found no underlying Fourth Amendment violation. *See* ECF No. 124. Plaintiffs filed twelve objections to the R&R. ECF No. 126. No objection discussed the Health Department's liability. *See id.* Nor did Defendant Schmidt's response to Plaintiffs' objections. ECF No. 131. Nor did Plaintiffs' Reply. ECF No. 137. This Court cannot analyze what is not raised or argued by the Parties. To the extent that the Parties may have attempted to argue the Health Department's *Monell* liability on the Fourth Amendment claim at the summary judgment stage, summary judgement would be denied for both Plaintiffs and Defendant Schmidt, as a genuine issue of material fact exists: whether the Health Department had an official policy which caused the unconstitutional June 2, 2021 search. But this does not change the outcome of the Opinion and is thus not grounds for reconsideration.[12]

---

[11] *See* ECF No. 23 (Amended Complaint); ECF No. 31 (Defendant Schmidt's Answer); ECF No. 37 (Defendant Schmidt's Amended Answer); ECF No. 79 (Plaintiffs' Motion for Partial Summary Judgment); ECF No. 85 (Defendants Harvey and Schmidt's Motion for Summary Judgment); ECF No. 98 (Plaintiffs' Response to Defendant Harvey and Schmidt's Motion for Summary Judgement); ECF No. 101 (Defendants Harvey and Schmidt's Response to Plaintiffs' Motion for Partial Summary Judgment); ECF No. 104 (Plaintiffs' Reply to Defendants Harvey and Schmidt's Response); ECF No. 112 (Defendants Harvey and Schmidt's Reply to Plaintiffs' Response).

[12] Plaintiffs are still free to argue that the Health Department is liable under *Monell* for having an official policy which caused Defendant Schmidt's Fourth Amendment deprivation. Indeed, this mirrors the outstanding *Monell* claim Plaintiffs may pursue against Defendant Caledonia Township, for the Fourth Amendment deprivations of Defendant Gibson.

## C. Code Confusion and Vested Rights

Plaintiffs' third and final asserted ground for reconsideration is somewhat unclear. First, Plaintiffs argue that this court confused the Michigan *Building* Code and the Michigan *Residential* Code when analyzing Plaintiffs' due process claim. ECF No. 141 at PageID.3189–90. But Plaintiffs then state this argument is just "lead-up and background because Plaintiffs have a vested right" and proceed to "assert error in the non-recognition of their vested property rights when Michigan's highest court does recognize vested property rights without the existence of an issued permit." *Id.* at PageID.3190–93. Plaintiffs' assertion that this Court confused the codes is mistaken and, regardless of whether the Michigan *Residential* or *Building* Code applies, the Opinion's outcome is the same. Further, this Court's conclusion that the doctrine of vested property rights requires a permit under Michigan law was not in error. Reconsideration will be denied.

This Court discussed the Michigan *Residential* Code and the Michigan *Building* Code when rejecting Plaintiffs' argument that they had a property right, for due process purposes, to construct their mini-cabins because no permits were required under local codes. *See* ECF No. 140 at PageID.3121–24. This Court found a genuine issue of material fact as to whether Plaintiffs needed a permit to construct their mini-cabins under applicable codes. *Id.* at PageID.3122 ("the question remains whether Plaintiffs, in fact, ever needed a permit" under local codes because "[i]t is unclear whether the Michigan *Building* Code or the Michigan *Residential* Code applies and the Pieties seem to conflate the two." (emphasis in original)), 3123 (noting the Michigan Public Health Code may have required Plaintiffs to obtain a permit). But this finding was not necessary for this Court to reject Plaintiffs' "right-in-fact" argument because Plaintiffs never raised this argument prior to objecting to Judge Morris' R&R—thus, the argument was waived. *Id.* at PageID.3122.

Accordingly, even if this Court confused the codes,[13] and even if Plaintiffs did not need a permit to construct their mini-cabins under applicable codes, the Opinion's outcome would be the same.

Plaintiffs "vested rights / equitable estoppel" reconsideration argument meets the same fate. Plaintiffs argue that this Court erred by not addressing *Pittsfield Twp v. Malcolm*, 134 N.W.2d 166 (Mich. 1965), which Plaintiffs interpret as recognizing a "ripened vested property right by a property owner without the prior use of a permit[.]" ECF No. 141 at PageID.3192. But this Court *did* analyze *Pittsfield* in its Opinion, just not in the same way as Plaintiffs. In the Opinion, this Court expressly distinguished *Pittsfield* from Plaintiffs' case because, in *Pittsfield*, the Michigan Supreme Court equitably estopped a municipality from enforcing zoning regulations against a kennel owner after the kennel owner was erroneously *issued a permit and constructed the kennel in reliance*. ECF No. 140 at PageID.3129; *see also Pittsfield*, 134 N.W.2d at 171–73. Plaintiffs continue to assert that the kennel-owner in *Pittsfield* did not have a permit and that this case accordingly supports the vesting of a property right without prior permit issuance. ECF No. 141 at PageID.3192. This assertion is in error. *Pittsfield*, 134 N.W.2d at 137 (noting that the kennel-owner's permit "application was approved May 8, 1962, by the building inspector who thereupon issued a building permit" and that, although "building inspector issued the permit to [the kennel-owner], the township municipal corporation brought suit against [the kennel-owner] some 10 1/2 months after the [kennel] had been completed[.]").[14]

---

[13] Plaintiffs criticize this Court for using the term "Michigan Residential Building Code" when there is "no such thing under Michigan law." ECF No. 141 at PageID.3189. Ironically, Plaintiffs ignore the fact that this Court was largely quoting Plaintiffs' own briefing. *See* ECF No. 140 at PageID.3108, 3121,3122, 3123.

[14] Importantly, even if this Court's holding that permits are required, under Michigan law, for the doctrine of vested property rights to apply, this Court still would have denied Plaintiffs' motion for summary judgment on this claim because a genuine question of material fact exists as to whether the "verbal clearance" Plaintiffs assert they were given to build their mini-cabins without obtaining permits ever actually occurred. *See* ECF No. 140 at PageID.3130.

In sum, none of Plaintiffs' three arguments for reconsideration show that this Court made a mistake that would alter the outcome of its Opinion, so Plaintiffs Motion for Reconsideration, ECF No. 141, will be denied. *See Hillman Power Co. v. On-Site Equip. Maint., Inc.*, No. 1:19-CV-11009, 2022 WL 193598, at *3 (E.D. Mich. Jan. 21, 2022) (citing E.D. MICH. LR 7.1(h)(2)(A)).

### IV. Defendant Krentz's Motion for Reconsideration

Defendant Krentz alleges a single mistake in his Motion for Reconsideration: that this Court erred in granting summary judgement in favor of Plaintiffs on their trespass claim against Krentz because there is a genuine question of fact as to whether Krentz was acting as a government "volunteer" during the June 2, 2021 search and, thus, is immune from trespass damages like Defendants Harvey, Gibson, and Schmidt. ECF No. 142 at PageID.3207–08. Defendant Krentz argues that he raised a "volunteer" immunity defense under the GTLA in his Response, ECF No. 97, to Plaintiffs' Motion for Summary Judgement, that this Court erred by not addressing the argument, and that "at least a question of fact exists regarding Defendant Krentz's governmental immunity." ECF No. 142 at PageID.3207–08. True, Defendant Krentz argued that he was immune from damages on Plaintiffs' Michigan Trespass claim because he was acting as a government "volunteer" when he physically entered Plaintiffs' property on June 2, 2021. *See* ECF No. 97 at PageID.2405–08. And true, this Court's Opinion did not address this argument. *See generally* ECF No. 140 at PageID.3164–72. But this was not a mistake that warrants a different outcome because Defendant Krentz's argument fails as a matter of law—he was not acting as a government volunteer when trespassed on Plaintiffs' property on June 2, 2021, and is thus not entitled to immunity. Accordingly, Defendant Krentz has not identified any mistake warranting a different outcome and his Motion for Reconsideration, ECF No. 142, will be denied.

Generally, the GTLA shields government officials and agencies from tort liability to different extents, depending on the type of Defendant alleged to have committed a tort. *See* MICH. COMP. LAW § 691.1407(1) (providing absolute tort immunity to "governmental agencies"); *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008) (summarizing GTLA immunity analysis for government officials). Defendants bear the burden of proving entitlement to GTLA immunity. *Odom*, 760 N.W.2d at 228. As Defendant Krentz emphasizes, the GTLA expressly provides:

> [E]ach *volunteer acting on behalf of a governmental agency* . . . is immune from tort liability for an injury to a person or damage to property caused by . . . the volunteer while acting on behalf of a governmental agency if all of the following are met:
> (a) The . . . volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The . . . volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS § 691.407(2) (emphasis added). But, importantly, GTLA defines "volunteer" as "an individual who is *specifically designated* as a volunteer and who is *acting solely on behalf of a governmental agency*." MICH. COMP. LAWS § 691.1401(i) (emphasis added).

Defendant Krentz falls outside this statutory definition of "volunteer." The record is devoid of any evidence that Defendant Krentz was ever "specifically designated" as a volunteer when he trespassed on Plaintiffs' property on June 2, 2021.[15] And Defendant Krentz cannot be said to have

---

[15] The GTLA and relevant precedent do not clarify *who* may "specifically designate" a volunteer for the purposes of immunity. One could read the GTLA's text as implying the designation necessary to act as a governmental volunteer must come from a governmental *agency*—not an *official*. *See* MICH. COMP. LAWS § 691.1401(i); *see also* § 691.401(a) (defining "governmental agency" as the state "or a political subdivision"); § 691.401(c) (defining "political subdivision" as "a municipal corporation, county, county road commission, school district, community college district, port district, metropolitan district, or transportation authority or a combination of 2 or more of these when acting jointly; a district or authority authorized by law or formed by 1 or more political subdivisions; or an agency, department, court, board, or council of a political subdivision"). Regardless, Defendant Krentz has not identified, and this Court has not found, any

acted solely on his own behalf when organizing the June 2, 2021 site visit and trespassing on Plaintiffs' property. Defendant Krentz ignores both statutory requirements for volunteer status under the GTLA and conclusively claims that his "text messages" to the Government Official Defendants and his "testimony establish that [he] volunteered[.]" ECF No. 97 at PageID.2405. But Krentz's texts and testimony establish just the opposite: that he was acting in his own self-interest, and not on behalf of any governmental agency.

Relevantly, Defendant Krentz texted the Government Official Defendants, before the June 2, 2021 trespass, that Plaintiffs' mini-cabins were a "circus[,]" that he "would love to see [Plaintiffs] sent packing[,]" and that, he didn't want Plaintiffs to know the Defendants were coming. ECF Nos. 79–12 at PageID.824; 90-3 at PageID.2171. And although Defendant Krentz testified, at one point, that he organized the June 2 site visit to provide the Government Official Defendants with an opportunity to inspect Plaintiffs' mini-cabins for code compliance, ECF No. 79-6 at PageID.908, 914, this statement does not, by itself, demonstrate that Defendant Krentz was acting "solely on behalf of a governmental agency." For example, Defendant Krentz also testified that one of the "big" concerns he had with the Plaintiffs' mini-cabins, from their inception, was their interference with deer hunting, which he described as his "passion." ECF No. 79–36 at PageID.904. Further, Defendant Krentz was expressly asked about his volunteer status on June 2, 2021 during deposition and his responses belie his current argument. When asked whether he was "working for the government on June 2nd, 2021[,]" Defendant Krentz said "no." ECF No. 79–36 at PageID.894. When asked whether he was ever "directed . . . to do any sort of activities *on behalf*

---

precedent that individual government officials can, *over text*, "specifically designate" a non-government actor as a "volunteer" on behalf their respective governmental agencies for the purposes of GTLA immunity, let alone can do so without ever using the words "designate" or "volunteer" throughout communications. *See generally* ECF Nos. 97; 142.

*of any of the governmental defendants* in this case on June 2nd, 2021[,]" Defendant Krentz

responded, "[n]o[.]" *Id.* at PageID.895 (emphasis added). When asked, more directly, whether he

was "acting on behalf of any particular government in this case[,]" Defendant Krentz responded

"[n]o." *Id.* Lastly, when asked if he "was acting as a private citizen on June 2nd, 2021," Defendant

Krentz responded "[c]orrect." *Id.*

In sum, Defendant Krentz's argument that he is entitled to GTLA immunity because he

was a government volunteer during his June 2, 2021 trespass fails at the first step. Even viewing

the record in a light most favorable to Defendant Krentz, he was not acting as a "volunteer," as

defined by the GTLA.[16] Accordingly, even if this Court analyzed this argument in its Opinion, the

outcome would not be altered and Defendant Krentz would still be liable for trespass under

Michigan Law. Defendant Krentz's Motion for Reconsideration, ECF No. 142, will be denied.

---

[16] In the alternative, even if Defendant Krentz was a governmental "volunteer" as defined under
the GTLA, he may still not be economically immune for his June 2, 2023 trespass. Defendant's
argument—looking only to the text of the GTLA and focusing on the elements enumerated in
MICH. COMP. LAWS § 691.407(2), ignores Michigan Supreme Court precedent. In *Odom v. Wayne
County*, the Michigan Supreme Court clarified that individual defendants like Krentz are only
immune under the GTLA from *intentional* torts when (a) the acts were undertaken during the
course of employment (or, in this case, volunteering) and the individual reasonably believed to be
acting within their scope of authority; (b) the individual acted in good faith or without malice, and
(c) the acts were discretionary, as opposed to ministerial. *See Odom*, 760 N.W.2d at 228. Michigan
recognizes trespass as an intentional tort. *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 683 (Mich.
App. 2010); *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 302 (Mich. App.
1995) (finding no trespass because plaintiffs could not allege that defendant intended the physical
intrusion and noting that "the [defendant] must intend to intrude on the property of another without
the authorization to do so" for trespass liability to lie). And, as cited above, Defendant Krentz's
texts and testimony do not support a conclusion that he acted in good faith when trespassing on
Plaintiffs' property on June 2, 2021. ECF Nos. 79–12 at PageID.824; 90-3 at PageID.2171; *see
generally* ECF No. 79-36.

## V.

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Reconsideration, ECF No. 141, is **DENIED**.

Accordingly, it is **ORDERED** that Defendant Krentz's Motion for Reconsideration, ECF No. 142, is **DENIED**.

Dated: November 17, 2023          <u>s/Thomas L. Ludington</u>
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge