UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL J. MOCKERIDGE and
SUSAN J. MOCKERIDGE

                Plaintiffs,   Case No. 1:21-cv-12896

v.   Honorable Thomas L. Ludington
    United States District Judge

ALCONA COUNTY,
by its Board of Commissioners, et al.,

                                                       Honorable Patricia T. Morris
                Defendants.   United States Magistrate Judge
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO LIFT STAY AND GRANT RELIEF, AND DENYING WITHOUT PREJUDICE DEFENDANT KRENTZ'S MOTION IN LIMINE**

Relying on new, non-controlling, Ninth Circuit precedent in *Snitko v. United States*, Plaintiffs Michael and Susan Mockeridge seek to lift the stay in the above-captioned case to provide relief from this Court's September 2023 Opinion and Order which, in part, held that Plaintiffs lacked standing to pursue injunctive relief for their Michigan trespass claim. For the reasons explained below, Plaintiffs' Motion will be denied, the stay will remain in place, and Defendant Keith Krentz's Motion *in Limine* will be denied without prejudice to allow for later filing once the stay is lifted.

I.

A.

In September 2020, Plaintiffs Michael and Susan Mockeridge installed "mini-cabins" on their 40-acre property (the "Skylar Trail Property") in northern Michigan. ECF Nos. 79 at PageID.778–79; 83 at PageID.1033; 86 at PageID.1778. Plaintiffs allege that, before installation, they received "verbal preclearance" from Alcona County Building Department officials that no

permit was necessary given the small square footage of the mini-cabins. ECF Nos. 79 at PageID.779; 83 at PageID.1034–35; 83-1 at PageID.1110. But this is disputed by the officials and, thus, remains a genuine issue of material fact. *See* ECF Nos. 83 at PageID.1035; 83-3 at PageID.1178; 83-7 at PageID.1247; 103 at PageID.2695; 85-8 at PageID.1640.

After the mini-cabins were installed, Plaintiffs allege that that their neighbor, Defendant Keith Krentz, "utilized his connections to local government officials" and "gathered together several other neighbors to make anonymous complaints . . . about the Skylar Trail Property" to "sen[d] [Plaintiffs] packing." ECF No. 79 at PageID.780. In total, four complaints were submitted to the District Health Department by Plaintiffs' neighbors, including Defendant Krentz, reporting concerns about sanitation, fire hazards, and the operation of an unlicensed campground. *See* ECF Nos. 85 at PageID.1263; 85-8 at PageID.1654; 85-10 at PageID.1695.

After the complaints were filed, Defendant Krentz coordinated a meeting with Defendants (1) Harry Harvey, an Alcona County Building Department Building Official; (2) David Schmidt, the Environmental Health Program Coordinator of the District Health Department; and (3) Kenneth Gibson, the Zoning Administrator of Caledonia Township,[1] (collectively, the "Government Official Defendants") to escort them to Plaintiffs' property to observe the mini-cabins. *See* ECF Nos. 79 at PageID.781–82; 79-13 at PageID.825; 79-36 at PageID.912; 83 at PageID.1036; 85-6 at PageID.1615–16.

On June 2, 2021, Defendant Krentz drove the Government Official Defendants up Plaintiffs' driveway to show them a campground sign Plaintiffs had placed near the cabins. ECF No. 85-6 at PageID.1616. But Defendant Krentz then turned around and drove the Government

---

[1] Defendant Gibson resigned from his position as Caledonia Township Zoning Administrator on June 10, 2021. ECF No. 124 at PageID.2846 n. 4.

Official Defendants to the property of Curtis Miller, one of Plaintiffs' neighbors and Defendant Krentz's godson. *See* ECF Nos. 79 at PageID.783; 79-36 at PageID.900. Miller's property shares a boundary line with Plaintiffs' property such that Miller's property is immediately north of Plaintiffs'. *See* ECF No. 79 at PageID.783. Importantly, "there is no regular access to [Plaintiffs' property] from this northern side." *Id.* At the time of this site visit, the mini-cabins were unoccupied. *See* ECF No. 83 at PageID.1037.

While standing on the Miller property, Defendant Gibson observed that one of the mini-cabins violated Defendant Caledonia Township's setback requirements. ECF No. 102 at PageID.2500. This prompted Defendants Gibson, Harvey, Schmidt, and Krentz to physically enter Plaintiffs' property, ECF Nos. 85-9 at PageID.1686; 102 at PageID.2500; 85 at PageID.1264; 85-10 at PageID.1695, 1701. Defendant Harvey looked through the windows of the mini-cabins using a small flashlight and observed that each were outfitted with electricity and contained bunk beds. *See* ECF No. 85-8 at PageID.1636, 1655. Defendant Krentz took photos. *See* ECF No. 79 at PageID.783–84. Defendants did not obtain a warrant authorizing this "site visit" and Plaintiffs did not consent. *See* ECF Nos. 23 at PageID.278; 79 at PageID.783; 85 at PageID.1264; 85-10 at PageID.1696; 97 at PageID.2405.

On June 16, 2021, Defendant Schmidt mailed a letter to Plaintiffs on behalf of the District Health Department stating "[b]etween May 19, 2021 and May 26, 2021, [the Department] received several complaints stating that [Plaintiffs were] operating an unpermitted and unlicensed campground" and that "[o]n June 2, 2021, [Defendant Schmidt] visited the site (along with representatives from the Alcona County Building Department and Caledonia Township) to investigate the validity of these complaints." ECF No. 79-18 at PageID.835. The letter also classified Plaintiffs' property as a "campground," and informed Plaintiffs that they violated a

section of the Public Health Code, which states that a "person shall not operate a campground without a campground license issued by the department[.]" *See id.* The letter instructed Plaintiffs to begin the licensing process within 30 days. *Id.* at PageID.836. Plaintiffs dispute the assertions in this letter and contend that their mini-cabins are "not within the definition or legal scope of a campground under Michigan law." ECF No. 23 at PageID.275.

On July 14, 2021, Defendant Harvey once again visited the Plaintiffs' Property. ECF No. 79 at PageID.786. Plaintiffs' adult son consented to an inspection and Defendant Harvey served Plaintiffs' adult son with a Stop Work Order which alleged that the mini-cabins were in violation of building and zoning regulations. ECF No. 23-5 at PageID.313. Defendants later served the Stop Work Order to Plaintiffs by U.S. mail. *See id.* at PageID.312; ECF No. 85 at PageID.1265

On July 30, 2021, Plaintiff Michael Mockeridge applied for the building permits. ECF No. 79 at PageID.788. Soon after, the Alcona County Building Department told Plaintiffs that the County "would issue the permits but would be imposing a penalty," doubling the permit price of $1,490 to $2,980 due to "work being started before permits were purchased." *Id.* Plaintiff Michael Mockeridge "immediately complained to the Alcona County Board of Commissioners and called upon the Board members for help . . . to issue any possible permit with no fees." *Id.* On August 11, 2021, the Alcona County Board of Commissioners denied Plaintiffs' request to waive the building permit fees. ECF No. 79-27 at PageID.866; *see also* ECF No. 79 at PageID.789.

**B.**

In January 2022, Plaintiffs filed their Amended Complaint alleging various constitutional deprivations and Michigan torts against (1) Alcona County; (2) Caledonia Township; (3) Harry Harvey; (4) Kenneth Gibson; (5) David Schmidt; (6) Keith Krentz; (7) Carolyn Brummund; and

(8) Terry Small.[2] ECF No. 23. In January 2023, the Parties filed five motions for summary judgment, ECF Nos. 79; 80; 83; 85; 86, which were referred to Magistrate Judge Patricia T. Morris. ECF No. 107. Judge Morris issued a Report and Recommendation (R&R) in July 2023, ECF No. 124, and the Parties filed their objections the following month. ECF Nos. 126; 127.

On September 29, 2023, this Court issued an Opinion and Order resolving the Parties' objections and adopting the R&R in part. ECF No. 140; *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, No. 1:21-CV-12896, 2023 WL 6367687 (E.D. Mich. Sept. 29, 2023). The Opinion resolved Plaintiffs' claims as follows:

| Count | Claim | Defendant(s) | Status |
|---|---|---|---|
| I | Fourteenth Amendment Procedural Due Process | (1) Alcona County (2) Harry Harvey | Dismissed. |
| II | Equitable Estoppel / Vested Rights | (1) Alcona County (2) Harry Harvey | Dismissed. |
| III | Fourth Amendment | (1) Harry Harvey (2) Kenneth Gibson (3) David Schmidt (4) Alcona County (5) Caledonia Township | (1) Summary judgment in favor of Plaintiffs against Defendants Harvey, Gibson, and Schmidt, with the issue of damages reserved for trial (2) Dismissed as to Defendant Alcona County (3) Remaining triable claim as to Defendant Caledonia Township |
| IV | Michigan Trespass | (1) Harry Harvey (2) Kenneth Gibson (3) David Schmidt (4) Alcona County (5) Caledonia Township (6) Keith Krentz | (1) Summary judgment in favor of Plaintiffs against Defendant Krentz, with the issue of damages reserved for trial (2) Dismissed as to all other Defendants |
| V | Private Party § 1983 Conspiracy | (1) Keith Krentz | Dismissed. |

---

[2] Plaintiff later stipulated to Brummund's and Small's dismissal. *See* ECF No. 65.

This Court dismissed Plaintiffs procedural due process claim (Count I) because Plaintiffs could not show a legitimate property interest. *See generally* ECF No. 140 at PageID.3120–30. This Court rejected Plaintiffs' argument that "they have (and have *always* had) the right" to freely install their mini-cabins without a permit under applicable Michigan code, because this argument was untimely and never raised prior to objecting to the R&R. *Id.* at PageID.3121. In the alternative, this Court held that, "even if Plaintiffs' references to the code[] . . . somehow impliedly invoked this argument, Plaintiffs [did] not show[] they are entitled to summary judgement" because "the question remain[ed] whether Plaintiffs, in fact, ever needed a permit." *Id.* at PageID.3122–23. This Court also rejected Plaintiffs' *vested* property right argument because Michigan precedent requires a permit for property rights to vest and it is undisputed Plaintiffs lacked a permit when they began constructing their mini-cabins *Id.* at PageID.3124–26. Accordingly, this Court dismissed Count I in its entirety, and granted summary judgment in favor of Defendants. *Id.* at PageID.3178.

Turning to Plaintiffs' "Equitable Estoppel / Vested Rights" claim (Count II), this Court noted "equitable estoppel is not a distinct cognizable legal claim[,]" *id.* at PageID.3128 (collecting cases), and held that this claim failed for the same reasons Plaintiffs' due process "vested rights" argument failed: Michigan precedent requires an actual permit for this doctrine to apply. *Id.* at PageID.3129. More importantly, this Court noted genuine issues of material fact remained as to (1) whether any Defendant ever told Plaintiffs that no permit was needed and (2) whether Plaintiffs' subsequent reliance on this verbal clearance—if it occurred—was justified. *Id.* at PageID.3130. Accordingly, this Court dismissed Count II in its entirety and granted summary judgment in favor of Defendants. *Id.* at PageID.3179.

Regarding Plaintiffs' Fourth Amendment claim (Count III), this Court held that Plaintiffs' mini-cabins fell within the curtilage and were subject to Fourth Amendment protection. *Id.* at

PageID.3130–37. This Court further found that the Government Official Defendants unreasonably searched Plaintiffs' mini-cabins during the June 2, 2021 "site visit," depriving Plaintiffs of their Fourth Amendment rights, because the search was effectuated without a warrant and the administrative and "de minimis" exceptions did not apply to render the search reasonable. *Id.* at PageID.3142–48. This Court further held that the Government Official Defendants were not entitled to qualified immunity because their actions—entering Plaintiffs' property without a warrant by way of a neighbor's private property for the express purpose of avoiding detection—violated clearly established law. *Id.* at PageID.3148–54; *see also Bovat v. Vermont*, 141 S. Ct. 22 (2020); *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 563 (6th Cir. 2018). Accordingly, this Court granted summary judgment in favor of Plaintiffs against the Government Official Defendants, as to liability only. ECF No. 140 at PageID.3153, 3178. Defendant Alcona County was granted summary judgment because Plaintiffs did not show any "official policy" sufficient for *Monell* liability. *Id.* at PageID.3154–57. Plaintiffs' Fourth Amendment *Monell* claim against Defendant Caledonia Township remains outstanding because Plaintiffs survived the Township's motion for summary judgment by showing a genuine question of fact as to whether the Township trained its officers on key duties implicating constitutional rights. *Id.* at PageID.3157–59.

Turning to Plaintiffs' Michigan trespass claim (Count IV), this Court found clear error in Judge Morris's recommendation to decline supplemental jurisdiction because the trespass claim and Plaintiffs' Fourth Amendment claim shared a common nucleus of operative fact. *Id.* at PageID.3163–65; *see* also *Bates v. Am. Credit Acceptance*, LLC, No. 16-12239, 2016 WL 5477429, at *3 (E.D. Mich. Sept. 29, 2016). Plaintiffs sought an injunction prohibiting Defendants Harvey, Gibson, Schmidt, Alcona County, and Caledonia Township from trespassing onto Plaintiffs' property in the future, conceding that these Defendants were statutorily immune from

damages under MICH. COMP. LAWS § 691.1407 *et seq*. ECF No. 140 at PageID.3165; *see also* ECF No. 23 at PageID.290 ("[A]n injunctive order is sought against the government defendants together with defendant Keith Krentz against trespassing upon the Skylar Trail Property."). Plaintiffs sought damages from Defendant Krentz, who was unaffiliated with a government entity, but reserved this issue for trial—seeking summary judgement against him only as to liability. *Id.* Although this Court found that all Defendants trespassed on Plaintiffs' property on June 2, 2021, and granted summary judgment in favor of Plaintiffs as to Defendant Krentz, *id.* at PageID.3165–69, this Court granted summary judgement to all other Defendants because Plaintiffs lacked standing for their requested injunction. *Id.* at PageID.3170–72.

**C.**

Plaintiffs and Defendant Krentz sought reconsideration in October 2023. ECF Nos. 141; 142. But this Court denied reconsideration because neither Plaintiffs nor Defendant Krentz demonstrated any material mistake, or any new facts or controlling law to warrant reconsideration of this Court's non-final September 2023 Opinion under Local Rule 7.1(h)(2). ECF No. 153. The Government Official Defendants appealed, and Plaintiffs cross-appealed. ECF Nos. 143, 148. In February 2024, this Court granted the Government-Official Defendants' Motion to Stay Proceedings pending the resolution of these appeals. ECF No. 162; *see also Mockeridge, et al. v. Harvey, et al.*, 23-1942 (6th Cir.); *Mockeridge, et al. v. Harvey, et al.*, 23-1998 (6th Cir.).

But, on March 15, 2024, Plaintiffs filed a motion to lift the stay and provide relief from this Court's decision that they lacked standing to pursue an injunction for their trespass claim. ECF No. 164. Plaintiffs cite new, non-controlling, Ninth Circuit precedent in *Snitko v. United States* to argue they have standing to seek, and are entitled to, an injunction "ordering the government destroy notes, records, photographs, and any other documented information generated from" the

June 2, 2021 trespass on Plaintiffs' property. *Id.* at PageID.3559. Defendants Harvey and Schmidt responded on March 29, 2024, ECF No. 165, and Plaintiffs replied four days later. ECF No. 166.

**II.**

The authority for Plaintiffs' request is unclear. Plaintiffs first cite Civil Rule 60(b), which authorizes courts to relieve parties from final judgments in certain limited circumstances. ECF No. 164 at PageID.3542, 3544, 3554 (citing FED. R. CIV. P. 60(b)). But this Court's September 2023 Opinion was not a final order. *See* ECF Nos. 140 at PageID.3179 ("**This is not a final order and does not close the above-captioned case.**" (emphasis in original)); ECF No. 153 at PageID.3309 (noting the Parties sought "reconsideration of a nonfinal order").

Plaintiffs then pivot and characterize their motion as one for reconsideration. ECF No. 164 at PageID.3558–59. But Plaintiff already filed a motion for reconsideration, ECF No. 141, and more than 14 days have passed since this Court's non-final September 2023 Opinion. *See* Local Rule 7.1(h)(2) (requiring motions to reconsider non-final orders to be filed "within 14 days after entry of the order"). Even if Plaintiffs' Motion was timely, reconsideration is not warranted. The Local Rules instruct that motions to reconsider non-final orders "may be brought *only* upon the following grounds:

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
> (B) An intervening change in controlling law warrants a different outcome; or
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

*Id.* Plaintiffs do not argue this Court made a mistake or that new facts warrant a different outcome. *See* ECF No. 164. Instead, Plaintiffs rely on the Ninth Circuit's January 2024 decision in *Snitko v. United States* 90 F.4th 1250 (9th Cir. 2024). But *Snitko* is not controlling. And even if it was, it is distinguishable and does not warrant a different outcome.

The *Snitko* decision concerns a company called US Private Vaults ("USPV")—a California company which rented safe-deposit boxes to customers for storage and safekeeping. *Id.* at 1252–53. USPV prided itself on customer confidentiality, and did not require its customers to provide their names, social security numbers, or any form of identification to rent safe-deposit boxes. *Id.* But this confidentiality was often abused by USPV customers who used their safe-deposit boxes to store drug trafficking, illegal gambling, and prostitution proceeds. *See id.* at 1253. Concerned, federal law enforcement agencies began investigating USPV. *Id.* at 1253.

In March 2021, a federal grand jury indicted USPV for conspiracy to money launder, distribute controlled substances, structure financial transactions, and criminal forfeiture. *Id.* Less than two weeks later, a magistrate issued a warrant authorizing the seizure of the of 700 USPV safe-deposit boxes—but not the boxes' contents. *Id.* at 1254. On this point, the warrant noted that seizing agents "shall follow written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes . . . to identify their owners in order to notify them so they can claim their property." *Id.*

After the search was executed and the boxes were seized, numerous individuals reported that the FBI seized their non-elicit valuables and personal property. *Id.* at 1257. A group of these USPV customers filed claims with the FBI seeking the return of their property but the government did not oblige and explained it was seeking forfeiture. *Id.*

Accordingly, in June 2021, a group of safe-deposit renters filed a 42 U.S.C. § 1983 complaint against various government officials alleging the deprivation of their Fourth and Fifth Amendment rights. *Id.* at 1258. During the litigation, the government returned most of the plaintiffs' property, and accordingly filed a motion to dismiss contending the issue was moot. *Id.* The *Snitko* plaintiffs argued their action "was not moot because the government still retained

records of its search, including . . . notes and photos of box contents, and they sought an injunction ordering the government to 'sequester and return' 'or otherwise destroy' the records generated during the inventory of the USPV deposit boxes." *Id.* Indeed, the *Snitko* plaintiffs expressly included a separate count in their complaint seeking the "Return of Property Pursuant to [Federal Rule of Criminal Procedure] 41(g)," a criminal forfeiture rule which allows a "person aggrieved by an unlawful search and seizure" to move for their property's return. *Id.* This claim survived the government's motion to dismiss alongside the plaintiffs' Fourth Amendment claim. *Id.*; *see also id.* n. 7.

But, in September 2022, the Central District of California found for the government, holding that the seizing agents did not exceed the bounds of the search warrant, which the court classified as a standard inventory search. *Id.* at 1260. The Ninth Circuit reversed, holding that the FBI did *not* execute a standard inventory search because it created a custom set of Supplemental Instructions for the USPV search. *Id.* at 1262 (noting when "an agency is given the discretion to create customized inventory policies, based on the features of each [thing it seizes], the ensuing search stops looking like an 'inventory' meant to simply protect property, and looks more like a criminal investigation of that particular [thing], i.e., more like a 'ruse.'") Having reached this conclusion, the Ninth Circuit found that the FBI exceeded the scope of the USPV search warrant, which did not expressly authorize seizing safe-deposit box contents. *Id.* at 1263–65. The Ninth Circuit remanded "for the district court to order the FBI to dispose of the records" it made regarding the plaintiffs' deposit boxes. *Id.* at 1266.

Plaintiffs here argue *Snitko*'s injunctive remedy "would be highly appropriate for the current case" because Defendants took photos of Plaintiffs' property during their June 2021 trespass, and because Plaintiffs sought a broad over-arching injunction to "halt illegal processes

- 11 -

and procedures in violation of the Fourth Amendment to the United States Constitution and Michigan law[,]" ECF No. 23 at PageID.295. ECF No. 164 at PageID.3555. But even if *Snitko* was controlling on this Court—which it is not—the *Snitko* remedy is not appropriate here.

First, the *Snitko* plaintiffs expressly dedicated a count of their complaint to the return of the records and photographs taken by the FBI throughout the USPV raid. *Snitko v. United States*, 90 F.4th 1250, 1258 (9th Cir. 2024). Plaintiffs here did not. *See* ECF No. 23. Second, the injunctive remedy in *Snitko* was only issued by the Ninth Circuit because the government defendants agreed to it. *Snitko*, 90 F.4th at 1266 (remanding for the return of plaintiffs' records expressly "*[i]n light of the governments expressed willingness . . . to have the district court order*" such injunctive relief (emphasis added)). Defendants have expressed no similar willingness here. Further, *Snitko* stands for the proposition that Rule 41(g) relief may be available, when specifically sought by a plaintiff, to recover records and photos taken by defendants throughout an unlawful search and seizure in violation of the *Fourth Amendment*. *See Snitko*, 90 F.4th at 1259–60. But Plaintiffs here wield *Snitko* in an attempt to lift the stay and obtain relief from this Court's holding that Plaintiffs lacked standing to seek injunctive relief on their *Michigan trespass* claim. ECF No. 164 at PageID.3543 (framing the issue as whether this Court should relieve Plaintiffs from the September 2023 Opinion "that declined to provide injunctive relief denied to Plaintiffs from the warrantless trespass undertaken on June 2, 2021 by Defendants"), PageID.3557 (seeking to enjoin "ongoing retention of the fruits of trespass" (emphasis omitted)). The word "trespass" appears nowhere in the Ninth Circuit's opinion, let alone as it might relate to Michigan law. Although Plaintiffs *also* sought broad injunctive relief to "halt the illegal processes and procedures of Defendants in violation of the Fourth Amendment," ECF No. 23 at PageID.295, Plaintiffs explicitly reserved that issue for trial, seeking summary judgment only as to liability. ECF No. 79 at PageID.791.

In sum, Plaintiffs' Motion, ECF No. 164, will be denied. This Court's September 2023 Opinion was not a final order from which relief can be sought under Civil Rule 60(b). To the extent Plaintiffs' sought reconsideration of this Court's September 2023 Opinion, Plaintiff's motion is untimely, Plaintiff does not identify a change in *controlling* law, and *Snitko* would not alter the outcome here, even if it was controlling.

So, the stay will remain in place pending the Sixth Circuit's resolution of the Parties cross-appeals. In light of this stay, Defendant Krentz's Motion *in Limine* to Exclude Evidence Regarding Noneconomic Damages, ECF No. 147, will be denied without prejudice, allowing Krentz to refile the motion when the stay is lifted.

## III.

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Lift Stay and Provide Relief from the September 29, 2023 Opinion and Order of this Court Pursuant to Rule 60(b), ECF No. 164, is **DENIED.**

Further, it is **ORDERED** that Defendant Krentz's Motion *in Limine* to Exclude Evidence Regarding Noneconomic Damages, ECF No. 147, is **DENIED WITHOUT PREJUDICE.**

Dated: April 2, 2024                               s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge