# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 11, 2025

Ms. Katelyn Crysler
Warner, Norcross & Judd
2715 Woodward Avenue
Suite 300
Detroit, MI 48201

Mr. Douglas J. Curlew
Cummings, McClorey, Davis & Acho
17436 College Parkway
Third Floor
Livonia, MI 48152

Mr. Philip Lee Ellison
Outside Legal Counsel
P.O. Box 107
Hemlock, MI 48626

Mr. John Thomas Gemellaro
McGraw Morris
2075 W. Big Beaver Road
Suite 750
Troy, MI 48084

Mr. Matthew T. Nelson
Warner Norcross & Judd
150 Ottawa Avenue, N.W.
Suite 1500
Grand Rapids, MI 49503

Mr. William Paul Slough
Kirkpatrick, Slough, Duitsman-Coy & Mott
145 N. Otsego Avenue
Gaylord, MI 49735

Ms. Ashley Yuill
Warner Norcross & Judd
150 Ottawa Avenue, N.W.
Suite 1500
Grand Rapids, MI 49503

    Re: Case No. 23-1942/23-1998, *Michael Mockeridge, et al v. Harry Harvey, et al*
      Originating Case No. : 1:21-cv-12896

Dear Counsel,

 The court today announced its decision in the above-styled case.

 Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

      Yours very truly,

      Kelly L. Stephens, Clerk


      Cathryn Lovely
      Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0217p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MICHAEL MOCKERIDGE; SUSAN J. MOCKERIDGE,

     *Plaintiffs-Appellees/Cross-Appellants*,

  *v.*

HARRY HARVEY, in his personal capacity; DAVID SCHMIDT, in both his official and personal capacities; KENNETH GIBSON, in his personal capacity,

     *Defendants-Appellants/Cross-Appellees*,


ALCONA COUNTY, MICHIGAN, by its Board of Commissioners; KEITH KRENTZ; CALEDONIA TOWNSHIP, MICHIGAN,

     *Defendants-Appellees* (23-1998).

> Nos. 23-1942/1998

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:21-cv-12896—Thomas L. Ludington, District Judge.

Argued: July 23, 2025

Decided and Filed: August 11, 2025

Before: KETHLEDGE, MURPHY, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** John T. Gemellaro, MCGRAW MORRIS P.C., Troy, Michigan, for Kenneth Gibson and Caledonia Township. Matthew T. Nelson, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, for Harry Harvey and David Schmidt. Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Michael and Susan Mockeridge. **ON BRIEF:** Thomas R. Meagher, Daniel S. Zick, FOSTER, SWIFT, COLLINS & SMITH, P.C., Lansing, Michigan, for Kenneth Gibson. Matthew T. Nelson, Ashley L. Yuill, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, for Harry Harvey and David Schmidt. Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Michael and

Susan Mockeridge.  Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Alcona County.

—————————————

## OPINION

—————————————

MATHIS, Circuit Judge.   Michael and Susan Mockeridge claim that three local government officials violated their Fourth Amendment rights by searching the area surrounding mini-cabins they own, which are located on a clearing of their secluded 40-acre retreat in the Michigan woodlands.  The district court rejected the three officials' qualified-immunity defense, and the officials appealed.  We affirm.

## I.

In September 2020, Michael Mockeridge and Susan Mockeridge purchased 40 acres of land in northern Michigan for "cabining, enjoying nature, and family gatherings."  R. 79-2, PageID 805.  The property is remote.  To access it, one leaves Hubbard Lake Trail—the nearest public road—and traverses Skylar Trail before reaching the Mockeridges' 7,200-square-foot "driveway" at the east of the property.  *Id.* at 805.  Their one-story, 696-square-foot residential cabin is at the end of the driveway, in the northwest corner of the property.

Shortly after purchase, the Mockeridges and their adult children decided to install five prefabricated 200-square-foot "mini-cabins" near the original cabin as "sleeping quarters" for family members.  R. 85-2, PageID 1483.  The Mockeridges claim that before purchasing the mini-cabins, they spoke with two Alcona County officials, including Harry Harvey—the building inspector—who advised them that they did not need permits for their project.  Harvey denied this.

In any event, the Mockeridges ordered and set up the five mini-cabins on their property, installed a sign along the driveway which read, in part, "Mockeridge Family Campground," and began sleeping in the mini-cabins.  The mini-cabins are clustered at least 80 feet from the original cabin, abutting the neighboring property to the north, on cleared land relative to the dense surrounding forest.  Each mini-cabin has at least one bed and closet, a loft, an electrical

circuit-breaker box and electrical outlets, but no plumbing. The roofs are insulated, and the walls are "solid logs." *Id.* at 1405. The mini-cabins have small porches and multiple windows.

Keith Krentz, an owner of adjacent property, saw the Mockeridge Family Campground sign and became concerned that the Mockeridges planned to operate a public campground. In May 2021, Krentz and three other neighbors submitted complaints to the Alcona County health department reporting this concern, as well as concerns about licensing, sanitation, and fire hazards.

On June 2, 2021, Krentz escorted three government officials—Harvey, David Schmidt, the environmental health program coordinator of District Health Department No. 2 for Alcona County, and Kenneth Gibson, the Caledonia Township zoning administrator—to the Mockeridges' property to see the mini-cabins. Krentz first drove Harvey, Schmidt, and Gibson up Skylar Trail and the Mockeridges' driveway. They observed the Family Campground sign along the driveway, and then Krentz turned around and drove the group to his godson's property, which abuts the Mockeridges' property to the north. There is no regular access to the Mockeridges' property from the north. Nonetheless, through dense woods, the group observed the Mockeridges' cabins beyond the northern property line. At the time, the cabins were unoccupied.

Gibson observed that one of the mini-cabins appeared to violate Caledonia Township's setback requirements. He then entered the Mockeridges' property to measure the setback from the mini-cabin closest to the property line.

Harvey and Schmidt then came onto the Mockeridges' property and inspected the mini-cabins and the surrounding area. Harvey used a flashlight, looked in the windows of the mini-cabins, and observed that they had bunk beds and electricity, but he believed they did not have smoke detectors. Gibson did not enter any of the cabins or look in their windows.

Krentz followed Gibson, Harvey, and Schmidt onto the property and took photographs, including one capturing all three officials near one of the mini-cabins. The officials did not obtain a warrant or the Mockeridges' consent for the visit.

On June 16, 2021, Schmidt mailed a letter to the Mockeridges informing them that the County had received complaints about an unlicensed campground at their property, and that he and other representatives of Alcona County and Caledonia Township had visited the Mockeridges' property to investigate. The letter detailed the officials' findings from the site visit, classified the Mockeridges' property as a campground, and advised that they needed to begin the licensing process. On July 30, 2021, the Mockeridges applied for the requisite building permits. Upon being informed that Alcona County would approve the permits, but with a penalty for starting work before obtaining the permits, the Mockeridges sued.

Pertinent here, the Mockeridges brought a Fourth Amendment claim under 42 U.S.C. § 1983 against Harvey, Schmidt, and Gibson, asserting that the officials had conducted an unreasonable search during the site visit.

The Mockeridges and the government officials cross-moved for summary judgment. The Mockeridges asserted that they were entitled to summary judgment as to liability on their Fourth Amendment claim; Harvey, Schmidt, and Gibson countered that they were entitled to qualified immunity on that claim. The district court granted the Mockeridges' motion and denied qualified immunity to Harvey, Schmidt, and Gibson.

Harvey, Schmidt, and Gibson timely appealed the district court's denial of qualified immunity.

## II.

Harvey, Schmidt, and Gibson argue that they are entitled to summary judgment because qualified immunity shields them from suit. "We review de novo the district court's decision to deny qualified immunity." *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024) (citation omitted). "A public official is entitled to qualified immunity at summary judgment when, viewing the facts in the light most favorable to the plaintiff, the challenged conduct did not violate clearly established constitutional rights of which a reasonable person would have known." *Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024) (citation modified). Summary judgment is appropriate where "the movant shows that there is no genuine dispute [of] material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We may

affirm the district court's judgment on any ground supported by the record." *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011) (citation modified).

## A.

Before reaching the merits, we must address our jurisdiction. The Mockeridges move to dismiss the appeal, arguing that we lack jurisdiction because the officials do not concede the Mockeridges' version of the facts.

We have authority to exercise jurisdiction over a final decision of the district court, 28 U.S.C. § 1291, which is a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *Catlin v. United States*, 324 U.S. 229, 233 (1945). That said, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We can thus "hear interlocutory appeals considering the legal question of qualified immunity, i.e., whether a given set of facts violates clearly established law." *Moldowan v. City of Warren*, 578 F.3d 351, 369 (6th Cir. 2009) (citation modified). But a defendant raising a qualified-immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). In short, our jurisdiction in considering the denial of a government official's claim of qualified immunity "is limited to resolving pure questions of law." *Moldowan*, 578 F.3d at 369.

The district court granted summary judgment to the Mockeridges with respect to their Fourth Amendment claim. In doing so, it determined that the officials were not entitled to qualified immunity and were liable as a matter of law for violating the Mockeridges' Fourth Amendment rights. The district court specified that the only triable issue on that claim was damages. We have jurisdiction over the officials' interlocutory appeal of the denial of qualified immunity because it presents a pure question of law. *See id*.

The Mockeridges argue that the officials "must specifically concede they warrantlessly searched the Skylar Trail Property's curtilage without any permission or consent of the

Mockeridge Plaintiffs." D. 39 at p.12. We disagree. We have reviewed whether a government official has conducted an unreasonable search of a house, including a house's curtilage, as a question of law. *See Widgren v. Maple Grove Township*, 429 F.3d 575, 582–86 (6th Cir. 2005); s*ee also Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998); *Morgan v. Fairfield County*, 903 F.3d 553, 560–62 (6th Cir. 2018).

Harvey, Schmidt, and Gibson challenge only the district court's legal conclusions related to the alleged search of the Mockeridges' property. They do not dispute the Mockeridges' version of the material facts. As such, the appeal is properly before us.

### B.

Turning to the merits, Harvey, Schmidt, and Gibson assert that qualified immunity bars the Mockeridges' § 1983 Fourth Amendment claim for damages against them in their personal capacities. "To succeed on a § 1983 claim, a plaintiff must first identify a constitutional right, then show that a person acting under the color of state law deprived him of that right." *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 870 (6th Cir. 2024) (citation omitted). Qualified immunity shields government officials sued in their personal capacity from liability for civil damages unless: "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation modified). "For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation modified). The burden falls on the plaintiff to show "that the defendant is not entitled to qualified immunity." *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024) (citation omitted).

### 1. Fourth Amendment Violation

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; *Lanza v. New York*, 370 U.S. 139, 142 (1962). To determine whether Harvey, Schmidt, and Gibson committed a Fourth Amendment violation, we must answer two questions. First, did they search

the Mockeridges' house(s)?  *See Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019).  If so, was the search reasonable?  *See id.*

*The Search*.  The Supreme Court has adopted two approaches to determine when a government official engages in conduct that constitutes a search—the property-based approach and the reasonable-expectation-of-privacy approach.  Under the property-based approach, a search occurs when a government official "obtains information by physically intruding on persons, houses, papers, or effects."  *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (citation modified).  Under the reasonable-expectation-of-privacy approach, a search occurs when a government official intrudes into a person's "private sphere."  *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (citation omitted).  Specifically, the person must "seek[] to preserve something as private, and his expectation of privacy" must be "one that society is prepared to recognize as reasonable."  *Id.* (citation modified).  We analyze the Mockeridges' Fourth Amendment claim using the property-based approach.

"When it comes to the Fourth Amendment, the home is first among equals.  At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."  *Jardines*, 569 U.S. at 6 (citation modified).  "People call a house 'their' home when legal title is in the bank, when they rent it, and even when they merely occupy it rent free."  *Minnesota v. Carter*, 525 U.S. 83, 95–96 (1998) (Scalia, J., concurring).  A home, or a house, includes a "secluded cabin," *United States v. Knotts*, 460 U.S. 276, 277, 282 (1983), or "a hunting and fishing cabin," *California v. Carney*, 471 U.S. 386, 407 (1985) (Stevens, J., dissenting).  As the Supreme Court has noted, "the most frail cottage" receives the same protection "as the most majestic mansion."  *United States v. Ross*, 456 U.S. 798, 822 (1982).

A person does not lose Fourth Amendment protection by not continuously occupying a house or by owning multiple houses.  "A home does not lose its character as a home because it may be temporarily unoccupied.  The fact that a dwelling house may be unoccupied at the time of the search does not permit a search without a warrant."  *Roberson v. United States*, 165 F.2d 752, 754 (6th Cir. 1948) (citations omitted).  Nor does the Fourth Amendment "limit its protection to a single house or home."  *Id.*

The Mockeridges are entitled to Fourth Amendment protection because their mini-cabins are "houses" as the Amendment uses that term. The mini-cabins are more robust than "the most frail cottage." *Ross*, 456 U.S. at 822. Their walls are solid logs; their roofs are insulated; and each mini-cabin has at least a bed and closet, a loft, an electrical circuit-breaker box and electrical outlets, a small porch, and multiple windows. The windows have blinds, and on the date of the search at issue, at least some blinds were completely drawn. Each cabin has an external lock with its own set of keys, and at least one has a firepit in front. The cabins are also in a remote area, secluded by dense forest, and are not visible from any public area.

The Mockeridges' Fourth Amendment protection extends to the curtilage of the mini-cabins. The curtilage is "the land immediately surrounding and associated with the home," which is "considered part of [the] home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984). We consider four factors in determining whether land near a house is part of the house's curtilage:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 301 (1987). The "centrally relevant consideration" is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* Notably, there is no "fixed distance at which curtilage ends." *Daughenbaugh*, 150 F.3d at 598–99 (quotation omitted). In fact, we have held that various distances from a house constitute curtilage. *See, e.g.*, *United States v. Bennett*, 170 F.3d 632, 638–39 (6th Cir. 1999) (60 to 100 feet); *Morgan*, 903 F.3d at 561 (five to seven feet).

During the subject site visit, Harvey, Schmidt, and Gibson entered the curtilage of the mini-cabins. Krentz took a photograph that shows all three officials standing a few feet from a mini-cabin during the visit. The officials therefore trespassed upon the constitutionally protected area of the mini-cabins.

Not only did Harvey, Schmidt, and Gibson trespass on the Mockeridges' property, but they did so to obtain information regarding compliance with local housing, zoning, and sanitation regulations.  So they conducted a search.  *See United States v. Jones*, 565 U.S. 400, 406–07 & n.3 (2012).  Harvey "looked in three of [the mini-cabins] and [] definitely did not see any smoke detectors" in them.  R. 85-8, PageID 1636.  He also saw that "there were beds, there were bunks" and that "they were very nice cabins."  *Id*.  When Gibson entered the property, he used a measuring tape to measure the setback of one of the mini-cabins from the property line.  Schmidt told Mr. Mockeridge during a phone call that he "entered his property from a neighboring property to investigate the complaint[s]."  R. 90-10, PageID 2181.

Schmidt claims that he only walked from the property line to the front door of the original cabin, knocked, and then retreated beyond the property line when there was no answer.  But the evidentiary record belies this claim.  Krentz photographed Schmidt standing a few feet from one of the mini-cabins, looking directly at it, close enough to peer into the windows.  Schmidt also admitted to taking "a few photos of the cabins."  R. 85-10, PageID 1709.  And he sent the Mockeridges a letter explaining the information the officials obtained during the search of the property.

Gibson, relying on *Widgren v. Maple Grove Township*, argues that he did not conduct a search.  In *Widgren*, we applied only the reasonable-expectation-of-privacy approach to hold that "a property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked-eye observations of the house's plainly visible exterior attributes and dimensions—all without touching, entering or looking into the house."  429 F.3d at 585–86.  But Gibson is not a property assessor.  And he did not enter the curtilage of the mini-cabins for a tax purpose.  Instead, Gibson walked right up to a mini-cabin and used a measuring tape to measure the setback distance from the adjacent property.

Moreover, *Widgren*'s rationale likely does not survive the Supreme Court's reinvigoration of the property-based approach, under which a search occurs when a government official "physically intrudes on the curtilage to gather evidence."  *Collins v. Virginia*, 584 U.S. 586, 593 (2018).  That is exactly what Gibson did.

*The Reasonableness of the Search*. The Fourth Amendment bars "unreasonable" searches. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). It "does not proscribe all state-initiated searches." *Id.* "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted). "The government bears the burden of demonstrating an exception to the warrant requirement." *Taylor*, 922 F.3d at 334 (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)).

Harvey, Schmidt, and Gibson do not offer much in the form of an exception. Schmidt alludes to the de minimis exception by characterizing his intrusion into the mini-cabin curtilage as "minimal." D. 35 at p.46. The de minimis exception to the search-warrant requirement permits minor, warrantless government intrusions only when "substantial" government interests are at stake. *United States v. Jacobsen*, 466 U.S. 109, 125 (1984). In assessing the reasonableness of such a search, "we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (citation modified). The balance favors the Mockeridges.

Harvey, Schmidt, and Gibson intruded significantly on the Mockeridges' property. A government official, like a private citizen, may "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. He cannot, however, "traipse through the garden, meander into the backyard, or take other circuitous detours that veer from the pathway that a visitor would customarily use." *Morgan*, 903 F.3d at 563 (quotation omitted). But that is what the officials did. Rather than proceed up the Mockeridges' driveway to the original cabin, they entered the property through the woods from the adjacent private lot, foregoing any recognizable or acceptable path to the cabins.

The officials' interest in intrusion was insubstantial. Its minimal interest in identifying potential housing-code violations for fully constructed mini-cabins on a secluded clearing of remote private property that exhibited no immediate danger pales in comparison to, for example,

the substantial interest, recognized by *Jacobsen*, in identifying and seizing cocaine before it is shipped in interstate commerce. *See* 466 U.S. at 111–12, 125–26.

Accordingly, Harvey, Schmidt, and Gibson unreasonably searched the Mockeridges' property in violation of the Mockeridges' Fourth Amendment rights.

### 2. Clearly Established Right

Harvey, Schmidt, and Gibson argue that even if they committed a Fourth Amendment violation, the Mockeridges failed to show a clearly established right.

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014) (citation omitted). "In determining the contours of the right, there is a tension between defining the right at too high a level of generality, on one hand, and too granular a level, on the other." *Morgan*, 903 F.3d at 564. There need not be "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "The general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* at 742. The key question is whether a reasonable government officer would have "fair warning" that the challenged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Harvey, Schmidt, and Gibson violated the Mockeridges' clearly established Fourth Amendment rights. As discussed, the Supreme Court acknowledged in *Jardines* that government officials can approach a home's front entrance, knock, wait briefly for a response, and then leave. 569 U.S. at 8. But not more. *See id.* at 19 (Alito, J., dissenting); *Morgan*, 903 F.3d at 563.

We followed *Jardines* in *Morgan*. There, we held that police officers violated the Fourth Amendment by entering the curtilage of a home—a backyard and side yard—without a warrant before informing the plaintiff of their presence during a "knock and talk" of the sort

contemplated in *Jardines*. 903 F.3d at 563. Although we granted qualified immunity to the officers—because the scope of the implied license to "knock and talk" was not clearly established at the time—we were careful to clarify that our holding "put officers on notice that principles of *Jardines* and *Collins* . . . should guide their actions going forward." *Id.* at 565.

A year later, in *Watson v. Pearson*, we denied qualified immunity to police officers who conducted a warrantless search of curtilage—the rear and side yards of a home. 928 F.3d 507, 512–13 (6th Cir. 2019). We held specifically that the officers should have known that deviating from the front path to enter the side and rear yards to obtain information violated the Fourth Amendment. *Id.*

Additionally, "the right to be free from a warrantless code-compliance search with no alternative pre-compliance review was clearly established" as early as 2009. *Gardner v. Evans*, 920 F.3d 1038, 1044, 1056 (6th Cir. 2019).

The Fourth Amendment rights at issue were clearly established by 2019, at the very latest. That is two years before Harvey, Schmidt, and Gibson conducted the June 2021 search. Thus, Harvey, Schmidt, and Gibson should have known that their inspection of the Mockeridges' secluded mini-cabins to discover possible housing- and zoning-code violations would violate the Mockeridges' Fourth Amendment rights.

### III.

Because Harvey, Schmidt, and Gibson unreasonably searched the Mockeridges' mini-cabins in violation of clearly established law, we **AFFIRM** the district court's denial of qualified immunity. We **DISMISS** the Mockeridges' cross-appeal as moot. And we **DENY** Alcona County's motion to be dismissed from this appeal as moot.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 23-1942/1998

MICHAEL MOCKERIDGE; SUSAN J. MOCKERIDGE,

    Plaintiffs - Appellees/Cross - Appellants,


       v.

HARRY HARVEY, in his personal capacity; DAVID
SCHMIDT, in both his official and personal capacities;
KENNETH GIBSON, in his personal capacity,

    Defendants - Appellants/Cross - Appellees,


ALCONA COUNTY, MICHIGAN, by its Board of
Commissioners; KEITH KRENTZ; CALEDONIA
TOWNSHIP, MICHIGAN,

    Defendants - Appellees (23-1998).

```
┌─────────────────────────────┐
│            FILED            │
│         Aug 11, 2025        │
│    KELLY L. STEPHENS, Clerk │
└─────────────────────────────┘
```

Before:  KETHLEDGE, MURPHY, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

    IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of qualified immunity is AFFIRMED and the Mockridges's cross-appeal is DISMISSED AS MOOT.  IT IS FURTHER ORDERED that Alcona County's motion to be dismissed from the appeal is DENIED AS MOOT.


**ENTERED BY ORDER OF THE COURT**

*Kelly A. Stephens*

_____
Kelly L. Stephens, Clerk